**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorney for Plaintiff*
*HUMC Opco LLC, d/b/a*
*CarePoint Health -- Hoboken University Medical Center*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUMC OPCO LLC, d/b/a CAREPOINT HEALTH - HOBOKEN UNIVERSITY MEDICAL CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED BENEFIT FUND, AETNA HEALTH INC., and OMNI ADMINISTRATORS INC.,<br><br>    Defendants. | **COMPLAINT** |

Plaintiff HUMC Opco LLC, d/b/a CarePoint Health -- Hoboken University Medical Center ("Plaintiff" or "HUMC"), through its attorneys, K&L Gates LLP, bring these claims against Defendants, United Benefit Fund ("UBF"), Aetna Health Inc. ("Aetna"), and Omni Administrators Inc. ("Omni") (collectively, "Defendants"), and hereby alleges:

## SUMMARY OF CLAIMS

1.      HUMC operates a community hospital located at 308 Willow Avenue, Hoboken, New Jersey  07030.

2.      From May 29, 2014, until May 22, 2015, HUMC provided extensive emergent medical treatment to a patient insured by UBF (hereinafter "Patient 1"). Patient 1 presented himself to HUMC's Emergency Department, was admitted to the hospital, and continued to receive medically necessary treatment from HUMC for 358 consecutive days thereafter.

3.      For his lengthy in-patient stay and the medically necessary care he received at HUMC, Patient 1 incurred total charges in the amount of $7,702,491.32.

4.      Of that amount, UBF, as Patient 1's insurer, is liable to HUMC, as Patient 1's assignee, in the total amount of at least $789,446.88, representing the benefits amounts payable under the Plan of Benefits sponsored by UBF ("Plan"). If the Plan is not a grandfathered plan under the Patient Protection and Affordable Care Act ("ACA") -- a fact that Defendants have, to date, refused to confirm, and about which they Defendants refused to supply relevant documentation -- then the amounts payable under the Plan are even higher.

5.      However, to date, UBF, through Omni (the Plan Administrator), and Aetna (the Plan's third-party claims administrator), has refused to reimburse

HUMC more than $12,907.18, leaving an unpaid balance due under the Plan of at least $776,539.70.

6.    Moreover, as set forth more fully below, Defendants have refused to provide HUMC any meaningful avenue of review of UBF's underpayments.

7.    Even worse, Aetna has sent HUMC two separate demands for alleged overpayment relating to the treatment HUMC provided to Patient 1 in the amounts of $4,366.44 and $4,270.37, which would leave the total reimbursement amount to HUMC at $4,270.37.

8.    Defendants' conduct, described more fully below, violates the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

## THE PARTIES

9.    Plaintiff HUMC is a limited liability company organized under the laws of the State of New Jersey.  HUMC operates a licensed general acute care hospital doing business as CarePoint Health -- Hoboken University Medical Center, located at 308 Willow Avenue, Hoboken, New Jersey  07030.

10.    Defendant UBF is an employee welfare benefits plan within the meaning of 29 U.S.C. § 1002(2)(A), with its principal place of business located at 150-28 Union Turnpike, Suite 250 Flushing, New York 11367.  UBF's Plan provides medical benefits, dental benefits, and vision benefits for its members.

11.    Defendant Omni is a corporation of the State of New York with its principal place of business located at 1430 Broadway, Suite 1303, New York, New York 10018.  Omni is the Plan Administrator for the UBF Plan.

12.    Defendant Aetna is a corporation of the State of New York with its principal place of business located at 100 Park Avenue, 12th Floor, New York, New York, and a registered agent located at CT Corporation System, 11 Eighth Avenue, New York, New York   10011.   Aetna is the third-party claims administrator for the Plan and, together with Omni, jointly administers the UBF Plan.

## **JURISDICTION AND VENUE**

13.    The Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(a), as this is a civil enforcement action under ERISA.

14.    This Court has personal jurisdiction over the Defendants because, at all times material hereto, Defendants carried on one or more businesses or business ventures in this judicial district; there is the requisite nexus between the business(es) and this action; and Defendants engaged in substantial and not isolated activity within this judicial district.

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial portion of the events giving rise to this action arose in this judicial district.

## FACTUAL ALLEGATIONS

### A.    Patient 1 Receives Extensive Inpatient Treatment at HUMC for 358 Continuous Days

16.    Patient 1 presented to HUMC's Emergency Department on or about May 29, 2014.  Due to the severity of his condition, Patient 1 was admitted to HUMC as an inpatient with a primary diagnosis code of 434.91, cerebral artery occlusion.

17.    Patient 1 was an inpatient at HUMC for 358 continuous days, until May 22, 2015, during which time he received extensive and medically necessary care, and incurred total charges in the amount of $7,702,491.32.

### B.    Defendants Substantially Underpay HUMC for the Treatment it Provided to Patient 1

18.    Patient 1 is a beneficiary of UBC's Plan.  The Plan expressly provides coverage for "in-network benefits" using the "Preferred Provider Organization ('PPO')" network for Aetna, and for "out-of-network benefits" for "non-PPO providers."  HUMC is an out-of-network provider with respect to Aetna and a "non-PPO provider" within the meaning of the Plan.

19.     The Plan document for UBF's Plan expressly provides that claims for reimbursement submitted by out-of-network providers such as HUMC are reimbursed "at the Medicare Rate developed by the Centers for Medicare and Medicaid Services used to reimburse physicians and other Providers on a fee-by-fee basis."   The Plan document further provides that for non-PPO providers, "covered expenses are payable at 100% of the Medicare Rate."

20.     The Social Security Amendments of 1983 (Public Law 98-21) established the Prospective Payment System ("PPS") for hospital inpatient services provided to Medicare beneficiaries.  Under this system, a hospital is paid a fixed amount for each patient discharged in a particular treatment category or Diagnosis Related Group ("DRG"). This fixed amount is intended to cover the cost of treating a typical patient for a particular DRG. The reimbursement amount is calculated using the Centers for Medicare and Medicaid Services ("CMS's") PPS Pricer system.

21.     In the case of the extensive treatment that HUMC provided to Patient 1 between May 29, 2014, and May 22, 2015, the total reimbursement amount, as calculated by CMS's PPS Pricer system, is $789,446.88.  Thus, the "Medicare Rate" for this treatment under the UBF Plan is at least $789,446.88.

22.     However, to date, UBF, through Omni (the Plan Administrator), and Aetna (the Plan's third-party claims administrator), has refused to reimburse

HUMC more than $12,907.18, leaving an unpaid balance due under the terms of the Plan of at least $776,539.70.

23.    In an explanation of benefits ("EOB") issued by Aetna dated September 5, 2015, Aetna provided no explanation for the low reimbursement rate other than the claim was supposedly reimbursed at the "reasonable and customary rate."    There is no indication on the EOB of any denied charges, authorization issues, or level of care problems.

24.    Aetna's contention in its EOB, that the $12,907.18 represents the "reasonable and customary rate" to Patient 1, is demonstrably false.  Indeed, it would be impossible to find another Northern New Jersey acute care hospital that charges a mere $12,907.18 for a 358-day hospital stay, particularly one involving the extensive and medically-necessary treatment provided to Patient 1.

**C.    HUMC Receives a Complete Assignment of Health Insurance Benefits for the Treatment Provided to Patient 1**

25.    The Plan document expressly provides that "[b]enefits for medical expenses covered under this Plan may be assigned by a Covered Person to the provider."

26.    Upon Patient 1's registration at HUMC, Patient 1's wife executed an "Assignment of Benefits" form, in which she assigned to HUMC the right to benefits under the Plan for the services that HUMC provided to Patient 1.

27.    Among other things, the "Assignment of Benefits" form executed on

behalf of Patient 1 states as follows:

> I HEREBY ASSIGN TO THE HOSPITAL, ALL OF MY RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTION, INTERESTS OR RECOVERY, TO ANY AND ALL RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTIONS, INTERESTS, OR RECOVERY OF ANY TYPE WHATSOEVER RECEIVABLE BY ME OR ON MY BEHALF ARISING OUT OF ANY POLICY OF INSURANCE, PLAN, TRUST, FUND, OR OTHERWISE PROVIDING HEALTH CARE COVERAGE OF ANY TYPE TO ME (OR TO ANY OTHER THIRD PARTY RESPONSIBLE FOR ME) FOR THE CHARGES FOR SERVICE RENDERED TO ME BY THE HOSPITAL. THIS INCLUDES, WITHOUT LIMITATION, ANY PRIVATE OR GROUP HEALTH/HOSPITALIZATION PLAN. AUTOMOBILE LIABILITY, GENERAL LIABILITY, PERSONAL INJURY PROTECTION, MEDICAL PAYMENTS, UNINSURED OR UNDERINSURED MOTOR VEHICLES BENEFITS, SETTLEMENTS/JUDGMENTS/VERDICTS, SELF FUNDED PLAN, TRUST, WORKERS COMPENSATION, MEWA, COLLECTIVE, OR ANY OTHER THIRD-PARTY [COLLECTIVELY, 'COVERAGE SOURCE'].
>
> I AUTHORIZE AND DIRECT PAYMENT BE MADE BY ANY AND ALL COVERAGE SOURCE DIRECTLY TO THE HOSPITAL OF ALL BENEFITS, PAYMENTS, MONIES, CHECKS, FUNDS, WIRE TRANSFERS OR RECOVERY OF ANY KIND WHATSOEVER FROM ANY COVERAGE SOURCE. I ALSO AGREE TO ASSIST THE HOSPITAL IN PURSUING PAYMENT FROM ANY COVERAGE SOURCE. THIS INCLUDES, WITHOUT LIMITATION, SIGNING DOCUMENTS REQUESTED OR NEEDED TO PURSUE CLAIMS AND APPEALS, GETTING DOCUMENTS FROM COVERAGE SOURCE, OR OTHERWISE TO SUPPORT PAYMENT TO THE HOSPITAL. I ALSO DIRECT AND AGREE THAT ANY PAYMENTS OF ANY KIND (E.G., CHECKS, FUNDS, PAYMENTS, MONIES, BENEFITS OR RECOVERY FOR COVERAGE OF SERVICES BY THE HOSPITAL THAT IS SENT

DIRECTLY TO ME (OR TO ANOTHER THIRD PARTY RESPONSIBLE FOR ME) WILL BE SENT AND TURNED OVER IMMEDIATELY BY ME TO THE HOSPITAL, THROUGH WHATEVER MEANS NECESSARY. THIS INCLUDES, WITHOUT LIMITATION, ME AND IF NEEDED ANY GUARDIAN ENDORSING OVER ANY CHECKS AND/OR OTHER DOCUMENTS TO THE HOSPITAL. I ALSO UNDERSTAND THAT I AM FINANCIALLY RESPONSIBLE FOR CHARGES NOT PAID ACCORDING TO THIS PROVISION. TO THE FULL EXTENT PERMITTED BY LAW.

I HEREBY AUTHORIZE AND DESIGNATE THE HOSPITAL, AS MY AUTHORIZED AGENT AND REPRESENTATIVE TO ACT ON MY BEHALF WITH RESPECT TO ALL MATTERS RELATED TO ALL OF MY RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTION, INTERESTS OR RECOVERY ARISING OUT OF ANY COVERAGE SOURCE. THIS INCLUDES, WITHOUT LIMITATION, THE HOSPITAL REQUESTING VERIFICATION OF COVERAGE/PRE-CERTIFICATION/AUTHORIZATION, FILING PRE-SERVICE AND POST-SERVICE CLAIMS AND APPEALS, RECEIVING ALL INFORMATION, DOCUMENTATION, SUMMARY PLAN DESCRIPTIONS, BARGAINING AGREEMENTS, TRUST AGREEMENTS, CONTRACTS, AND ANY INSTRUMENTS UNDER WHICH THE PLAN IS ESTABLISHED OR OPERATED, AS WELL AS RECEIVING ANY POLICIES, PROCEDURES, RULES, GUIDELINES, PROTOCOLS OR OTHER CRITERIA CONSIDERED BY THE COVERAGE SOURCE, IN CONNECTION WITH ANY CLAIMS, APPEALS, OR NOTIFICATIONS RELATED TO CLAIMS OR APPEALS.

28.    The UBF's Plan document further authorizes a person covered by a Plan beneficiary "to appoint an authorized representative to act on his or her behalf with respect to a benefit claim or appeal of a denial." In the event of such an authorization, the Plan document provides that "all future communications from

the Plan will be with the representative, rather than the Covered Person, unless the Covered Person directs the Plan Administrator, in writing, to the contrary."

29.    In this case, in addition to the "Assignment of Benefit" form referenced above, on or about February 17, 2015, Patient 1's wife, on behalf of Patient 1, signed an Aetna authorization representation form in which she expressly authorized HUMC and its affiliates to appeal any adverse benefits determination on Patient 1's behalf with respect to the services that HUMC provided to Patient 1.

**D.    HUMC Exhausts All Known and Available Internal Appeals Remedies**

30.    HUMC has exhausted all known and available appeals avenues under the Plan in an effort to convince Defendants to reimburse HUMC properly on its claims for the extensive treatment that HUMC provided to Patient 1. So far, all of these appeals avenues have been unsuccessful.

31.    Specifically, by letter dated September 9, 2015 ("Appeal Letter"), in accordance with the terms of the Plan, HUMC appealed the underpayment to Aetna, with a copy to Omni and UBF. In its Appeal Letter, HUMC explained, among other things, that HUMC's reimbursement claim was substantially underpaid; that the terms of the Plan required reimbursement in accordance with the calculations set forth in CMS's PPS Pricer System; and that Aetna's contention

that the reimbursement amount of $12,907.18 represented the "reasonable and customary rate" was demonstrably false.

32.    In its Appeal Letter, HUMC also requested that the Defendants provide a detailed explanation as to the reasons for the unreasonably low payment, and it further requested documentation in support of UBF's claim that the Plan is entitled to grandfathered status under the ACA.    HUMC is entitled to this information under ERISA and the terms of the Plan, and the information is necessary in order for HUMC to determine, inter alia, whether the UBF Plan is properly entitled to assert "grandfathered" status under the ACA.

33.    Importantly, if the Plan is not entitled to assert grandfathered status under the ACA, then it is required by law to provide benefits for out-of-network emergency services in an amount equal to the greatest of three possible amounts: (1) the amount negotiated with in-network providers for the emergency service furnished; (2) the amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services, but substituting the in-network cost sharing provisions for the out-of-network cost-sharing provisions; or (3) the amount that would be paid under Medicare for the emergency service.    Here, upon information and belief, the reimbursement methodology set forth in the Plan -- calculated using CMS's PPS Pricer System, and resulting in a reimbursement amount of $789,446.88 under the Medicare rate -

- would fall far short of the reimbursement amount required by the ACA.  The reimbursement amount actually provided -- $12,907.18 for a 358-day inpatient stay -- is tantamount to complete noncompliance with the requirements of the ACA as to non-grandfathered plans.

34.    Neither Aetna, nor any of the other defendants, ever formally responded to HUMC's Appeal Letter.  Instead, by e-mail dated October 14, 2015, a representative of Omni advised HUMC, without analysis, that it believed that HUMC had been "paid in full by the plan."  This Omni representative further stated in his e-mail that Omni is not required to provide HUMC with information regarding the Plan's grandfathered status under the ACA.  Contrary to the express language of the Plan -- which requires that all appeals be sent to Omni -- the Omni representative further stated in his e-mail that his company would refuse to field any further calls or e-mails from HUMC, and that all inquiries regarding the claim for the services provided to Patient 1 should be directed to Aetna.

35.    On November 11, 2015, HUMC sent its September 9, 2015, Appeal Letter directly to Aetna by fax and certified mail.  By letter dated December 1, 2015, HUMC requested that Aetna expedite HUMC's appeal of this matter.  To date, Aetna has taken no action on HUMC's appeal.

36.    Meanwhile, on November 12, 2015, HUMC separately submitted to UBF a member grievance concerning the underpayment in accordance with the provisions of the Plan governing such grievances.

37.    By letter dated December 3, 2015, counsel for UBF advised HUMC that the grievance procedure set forth in the Plan was unavailable to HUMC, and that HUMC should pursue its claim as an appeal under the Plan.  UBF's counsel even stated that HUMC should address its appeal directly to Omni -- ignoring, of course, that HUMC had already addressed its appeal to Omni and been advised by Omni's representative on October 14, 2015, that Omni would not take any further calls or e-mails from HUMC.   UBF's counsel further claimed that the $12,907.18 paid to HUMC constituted "full payment" for Patient 1's 358-day inpatient stay at HUMC.

38.    Making matters worse, by letter dated October 31, 2015 (received by HUMC on November 10, 2015), Aetna demanded that HUMC reimburse it for an alleged "overpayment" in the amount of $4,366.44 for treatment that HUMC provided to Patient 1.  In a separate letter dated November 7, 2015 (received by HUMC on November 17, 2015), Aetna made a separate demand that HUMC reimburse Aetna for another "overpayment" in the amount of $4,270.37, for treatment that HUMC provided to Patient 1.   Aetna's "overpayment" demands

would leave the total reimbursement to HUMC in the amount of $4,270.37, for the 358-day inpatient stay.

39.    The conduct of all three Defendants in their handling of HUMC's claims on behalf of Patient 1 makes it abundantly clear that Defendants have absolutely no intention of complying with their obligations under the Plan, ERISA, or any other applicable law, and that further exhaustion efforts by HUMC would be futile.  Thus, HUMC is entitled to have this Court undertake a *de novo* review of the issues raised herein.

40.    The instant action is timely commenced well within six years after HUMC was notified by Defendants that they were rejecting HUMC's claims for reimbursement for the services that HUMC provided to Patient 1, within six years after each of Plaintiff's claims against Defendants accrued, and is otherwise timely in all respects.

## COUNT ONE
### (Violation of Section 502(a)(1)(B) – against UBF)

41.    HUMC incorporates by reference all of the foregoing allegations as if set forth at herein length.

42.    The Plan is an employee welfare benefits plan within the meaning of 29 U.S.C. § 1002(2)(A).

43.    UBF is the insurer, obligor, fiduciary, and/or relevant party-in-interest for the Plan.

44.    Omni and/or Aetna serve as the Plan Administrators of the Plan.

45.    Under the terms of the Plan, Patient 1 is entitled to coverage for the services that Patient 1 received from HUMC.

46.    Patent 1's spouse (as the subscriber of the Plan and/or acting on Patient 1's behalf), executed an "Assignment of Benefits" form, among other documents, in which she gave HUMC a complete assignment of Patient 1's right to benefits under the Plan.

47.    A healthcare provider to whom a patient assigns benefits has standing to sue as a "beneficiary" as "a person designated by a participant . . . who is or may become entitled to a benefit" under an ERISA-governed plan.   29 U.S.C. § 1002(8).   ERISA further provides that a "beneficiary" is entitled to institute litigation to collect benefits owed under a relevant ERISA-governed plan.   29 U.S.C. § 1132(a)(1)(B).

48.    When Patient 1's spouse executed the "Assignment of Benefits" form, she assigned to HUMC her and Patient 1's right to receive reimbursement from UBF under the Plan for the services that HUMC rendered to Patient 1.   This assignment of benefits confers upon HUMC the status of a "beneficiary" under

Section 502(a) of ERISA. Thus, HUMC has standing to bring this action under ERISA.

49.     As a beneficiary under Section 502(a) of ERISA, HUMC is entitled to recover benefits due to HUMC and/or its patients under the terms of the Plan.

50.     As a beneficiary under Section 502(a) of ERISA, HUMC is entitled to enforce the rights of HUMC and/or its patients under the terms of the Plan.

51.     As a beneficiary under Section 502(a) of ERISA, HUMC is entitled to clarify its rights to future benefits under the terms of the Plan.

52.     The Plan expressly authorized Patient 1 and his spouse to assign their rights to benefits under the Plan to HUMC, including the right of direct payment of the Plan's benefits to HUMC.

53.     In violation of ERISA, UBF failed to make payment of benefits to HUMC, as assignee of Patient 1's rights under the Plan, in the manner and amounts required under the terms of the Plan.

54.     As the result of UBF's violations of ERISA, HUMC has suffered damages and lost benefits as assignee, for which it is entitled to restitution from UBF, other declaratory and injunctive relief related to enforcement of the terms of the Plan, and to the clarification of future benefits. UBF is liable to HUMC for unpaid benefits, restitution, interest, attorneys' fees, and other penalties as this Court deems just under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

## COUNT TWO
### (Breach of Fiduciary Duty – against all Defendants)

55.    HUMC incorporates by reference all of the foregoing allegations as if set forth at herein length.

56.    As set forth more fully above, the Plan is an employee welfare benefits plan within the meaning of 29 U.S.C. § 1002(2)(A).

57.    UBF is the insurer, obligor, fiduciary, and/or relevant party-in-interest for the Plan.

58.    Omni and/or Aetna serve as the Plan Administrators of the Plan.

59.    Under the terms of the Plan, Patient 1 is entitled to coverage for the services that Patient 1 received from HUMC.

60.    As set forth more fully above, Patient 1 received health care services at HUMC.  Patient 1's spouse (as the subscriber of the Plan and/or acting on Patient 1's behalf), executed an "Assignment of Benefits" form, among other documents, in which she assigned to HUMC her and/or Patient 1's right to benefits under the Plan.

61.    UBF, Aetna, and Omni exercise discretionary authority or discretionary control relating to the management and/or administration of the Plan, and/or exercise authority and/or control respecting the management and disposition

of the Plan's assets. Accordingly, UBF, Aetna, and Omni are all fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

62.    UBF, Aetna, and Omni acted as fiduciaries to Patient 1, his spouse, and HUMC (as assignee), because they all exercised discretion in determining the nature of benefits that would be afforded to beneficiaries of the Plan, a key fiduciary function under ERISA.

63.    As fiduciaries of the Plan, UBF, Aetna, and Omni owe the Plan beneficiaries -- including HUMC as assignee of benefits – a duty to act for the exclusive purpose of providing benefits to participants and their beneficiaries; with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of an enterprise of like character; and in accordance with the Plan documents. 29 U.S.C. § 1104(a)(1)(A), (B), (D).

64.    UBF, Aetna, and Omni violated their fiduciary duties to the Plan beneficiaries – including HUMC as assignee of benefits – by, among other things: basing their reimbursement decisions on maximizing profits to Defendants rather than on the terms of the Plan and applicable statutes and regulations; failing to make decisions in the interests of beneficiaries; and failing to act in accordance with the Plan documents.

65.    In addition, UBF, Aetna, and Omni violated their fiduciary duties to the Plan beneficiaries by, among other things, failing to inform HUMC -- as

assignee of benefits -- of material information, by misrepresenting requirements for reimbursement under the Plan, and imposing unduly burdensome preconditions to payment not contemplated by the Plan.

66.    As the result of UBF's, Aetna's, and Omni's violations of their fiduciary duties to its beneficiaries – including HUMC as assignee of benefits – HUMC has suffered, and continues to suffer, substantial damages, for which it is entitled to appropriate relief under 29 U.S.C. §§1109, 1132(a)(2).

## COUNT THREE
### (Denial of Full and Fair Review in Violation of ERISA § 503 – against all Defendants)

67.    HUMC incorporates by reference all of the foregoing allegations as if set forth at herein length.

68.    As an assignee and authorized representative of the claims on behalf of Patient 1, HUMC is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Defendants; and (b) compliance by Defendants with applicable claims procedure regulations.

69.    Although Defendants are obligated to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Defendants have failed to do so by, among other actions: refusing to provide the specific reason or reasons for the substantial underpayment

on HUMC's claims on behalf of Patient 1; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline, or protocol relied upon in making the decision to deny or underpay these claims; refusing to describe any additional material or information necessary to perfect a claim; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; refusing to provide a statement describing any appeals procedure available, or a description of all required information to be given in connection with that procedure; and refusing to provide information necessary to enable HUMC to ascertain the Plan's grandfathered status under the ACA. By failing to comply with the ERISA claims procedures regulations, Defendants failed to provide a reasonable claims procedure.

70.    Because Defendants have all failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants do not acknowledge any basis for their denials and thus offer no meaningful administrative process for challenging their denials.

71.    HUMC has been harmed by Defendants' failure to provide a full and fair review of appeals submitted under ERISA § 503, 29 U.S.C. § 1133, and by Defendants' failures to disclose information relevant to appeals, to comply with applicable claims procedure regulations, and to provide information needed to ascertain the Plan's grandfathered status under the ACA.

72.    HUMC is entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals and the Plan's grandfathered status under the ACA, and to comply with applicable claims procedure regulations.

## **PRAYER FOR RELIEF**

WHEREFORE, HUMC demands judgment in its favor against Defendants as follows:

A.    Declaring that UBF has breached the terms of the Plan with regard to out-of-network benefits and awarding damages for unpaid out-of- network benefits, as well as awarding injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein that are unauthorized by the Plan;

B.    Declaring that Defendants violated their fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1106, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA;

C.      Declaring that Defendants failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Defendants' actions, as well as awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

D.      Temporarily and permanently enjoining Defendants from continuing to pursue their actions detailed herein, and ordering Defendants to pay benefits in accordance with the terms of the Plan and applicable law;

E.      Awarding restitution for reimbursements improperly withheld by Defendants;

F.      Declaring that Defendants have violated the terms of the Plan;

G.      Requiring Defendants to make full payment on all previously denied charges relating to HUMC's claims for reimbursement under the Plan for the services it provided to Patient 1;

H.      Requiring Defendants to pay HUMC the benefit amounts as required under the Plan;

I.      Awarding reasonable attorneys' fees, as provided by § 502(g) of ERISA, 29 U.S.C. § 1132(g);

J.      Awarding costs of suit;

K.      Awarding pre-judgment and post-judgment interest; and

L.      Awarding all other relief to which HUMC is entitled.

                        Respectfully submitted,

                        **K&L GATES LLP**

                        One Newark Center, Tenth Floor
                        Newark, New Jersey 07102
                        Tel:  (973) 848-4000
                        Fax:  (973) 848-4001
                        *Attorneys for Plaintiff*
                        *HUMC Opco LLC, d/b/a CarePoint Health*
                        *-- Hoboken University Medical Center*

                        By:   /s/ Anthony P. La Rocco_____
                              Anthony P. La Rocco

Dated:  January 11, 2016

## <u>CERTIFICATION UNDER L. CIV. R. 11.2</u>

I certify that the matter in controversy is not the subject matter of any other action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*HUMC Opco LLC, d/b/a CarePoint Health*
*-- Hoboken University Medical Center*

By:   /s/ Anthony P. La Rocco
        Anthony P. La Rocco

Dated:  January 11, 2016

## <u>LOCAL RULE 201.1 CERTIFICATION</u>

I certify under penalty of perjury that the matter in controversy is not eligible for compulsory arbitration because the damages recoverable by plaintiff exceed the sum of $150,000, exclusive of interest and costs.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*HUMC Opco LLC, d/b/a CarePoint Health*
*-- Hoboken University Medical Center*

By:   /s/ Anthony P. La Rocco
         Anthony P. La Rocco

Dated:  January 11, 2016