# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

HUMC OPCO LLC, d/b/a CAREPOINT
HEALTH - HOBOKEN UNIVERSITY
MEDICAL CENTER,

       Plaintiff,

v.

UNITED BENEFIT FUND, AETNA
HEALTH INC., and OMNI
ADMINISTRATORS INC.,

       Defendants.

Civil Action No.
2:16-cv-00168 (KM/MAH)

_____

**BRIEF OF PLAINTIFF HUMC OPCO, LLC d/b/a CAREPOINT HEALTH –
HOBOKEN UNIVERSITY MEDICAL CENTER IN OPPOSITION TO
DEFENDANT AETNA HEALTH INC.'S MOTION TO DISMISS**
_____

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*HUMC OPCO, LLC,*
*d/b/a CarePoint Health – Hoboken*
*University Medical Center*

ANTHONY P. LA ROCCO
GEORGE P. BARBATSULY
STACEY A. HYMAN
     On the Brief

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................4

    A.    Summary of HUMC's Claims.............................................................4

    B.    Aetna's Specific Actions Related to the Determination and Distribution of Plan Assets Related to Patient 1's Claims...................7

    C.    Aetna's Motion to Dismiss.................................................................9

LEGAL ARGUMENT...................................................................................11

I.     Standard of Review..............................................................................11

II.    The Court Should Not Consider the CASA And ASA On this Motion........12

III.   Even if the CASA or ASA Were Properly before the Court, Aetna's Motion Still Must be Denied .........................................................16

    A.    HUMC Sufficiently Pleads a Breach of Fiduciary Duty Claim against Aetna in Count Two .............................................................16

        1.    The Determination Of An ERISA Fiduciary Requires A Fact Specific Analysis Not Appropriate for Resolution at the Pleading Stage .....................................................18

        2.    The CASA And ASA Are Not Dispositive Of ERISA Fiduciary Status.........................................................19

    B.    HUMC Sufficiently Alleges that Aetna Violated its Duty to Provide a Full and Fair Review under ERISA ....................................24

CONCLUSION .............................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of
New Jersey Welfare Fund v. Wettlin Assoc, Inc.,
237 F.3d (3d Cir. 2001) ......................................................................17

Briglia v. Horizon Healthcare Serv's Inc.,
2005 WL 1140687 (D.N.J. May 13, 2005)..................................22, 23

Chao v. New Jersey Licensed Beverage Ass'n, Inc.,
461 F. Supp. 2d (D.N.J. 2010)............................................................18

Curcio v. John Hancock Mut. Life Ins. Co.,
33 F.3d 226 (3d Cir. 1994) .................................................................17

Dovale v. Marketsource, Inc.,
2006 WL 2385099 (D.N.J. Aug. 17, 2006) ........................................13

Edmonson v. Lincoln Nat. Life Ins. Co.,
725 F.3d 406 (2013)......................................................................17, 18

El-Bey v. Peer,
2006 WL 2805281 (D.N.J. Sept. 28, 2006)........................................13

Garlanger v. Verbeke,
223 F. Supp. 2d 596 (D.N.J. 2002)...............................................12, 13

Harold Ives Trucking Co. v. Spradley & Coker, Inc.,
178 F.3d 5233 (8th Cir. 1999) ......................................20, 21, 22, 23

Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan,
751 F.3d 740 (6th Cir. 2014) .............................................................17

In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410 (3d Cir. 1997) ...........................................................13

In re Cardinal Health, Inc. ERISA Litig.,
424 F. Supp. 2d 1002 (S.D. Ohio 2006) ............................................18

In re Schering-Plough Corp. ERISA Litig.,
    2007 WL 2374989 (D.N.J. Aug. 15, 2007) .................................................18, 20

IT Corp. v. General Amer. Life Ins. Co.,
    107 F.3d 1415 (9th Cir. 1997) .....................................................20, 21, 22, 23

Local 56, United Food v. Campbell Soup Co.,
    898 F. Supp. 1118 (D.N.J. 1995).......................................................................14

Neurosurgical Assoc. of NJ, P.C. v. QualCare Inc.,
    2015 WL 4569792 (D.N.J. July 28, 2015) ...........................................18, 19, 23

Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,
    998 F.2d 1192 (3d Cir. 1993) ...........................................................................13

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008) .............................................................................12

Premier Health Ctr. v. UnitedHealth Grp.,
    292 F.R.D. 204 (D.N.J. 2013).............................................................................25

Ramirez v. U.S.,
    998 F. Supp. 425 (D.N.J. 1998) .........................................................................13

Trump Hotels & Casinos Resorts, Inc. v. Mirage Resorts, Inc.,
    140 F.3d 478 (3d Cir. 1998) .............................................................................12

**Statutes**

29 U.S.C. § 1001 *et seq.*.......................................................................................1

29 U.S.C. § 1002..................................................................................10, 17, 26

29 U.S.C. § 1110(a) ...................................................................................20, 22

29 U.S.C. § 1133(2) .............................................................................................24

42 USC § 18011 ...................................................................................................5

**Rules**

Fed. R. Civ. P. 12 .................................................................................*passim*

Fed. R. Civ. P. 12(b)(6).......................................................................................2

Fed. R. Civ. P. 56 ................................................................................................13

**Regulations**

29 C.F.R. § 2560.503–1 ........................................................................................25

42 CFR § 147.140 ................................................................................................5

## PRELIMINARY STATEMENT

Plaintiff HUMC OPCO LLC, d/b/a CarePoint Health – Hoboken University Medical Center ("HUMC"), submits this brief in opposition to the motion to dismiss of defendant Aetna Health Inc. ("Aetna").  HUMC, which operates a community hospital located in Hoboken, New Jersey, brings this action based on violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  In the Amended Complaint, HUMC contends that defendants United Benefit Fund ("UBF"), Omni Administrators Inc. ("Omni") and Aetna (collectively, the "Defendants"), substantially underpaid HUMC under the UBF-sponsored Plan of Benefits ("Plan") for a claim related to a patient's ("Patient 1") very serious emergency that required 358 consecutive days of treatment at HUMC.

As set forth in the Amended Complaint, HUMC provided extensive emergency medical treatment to Patient 1, insured by UBF, for which HUMC's total charges were in excess of $7.7 million.  Of this amount, UBF, as Patient 1's insurer, is liable to HUMC, as Patient 1's assignee, for at least $789,446.88.  UBF's liability could exceed this amount if the plan is not grandfathered under the Patient Protection and Affordable Care Act ("ACA") – a fact HUMC cannot verify because Defendants refuse to supply relevant documentation.

To date, UBF, Omni (the Plan Administrator), and Aetna (the Plan third-party claims administrator or "TPA") have reimbursed HUMC less than 2% of the $789,446.00 amount. HUMC's efforts to appeal this significant underpayment to Aetna and the other Defendants have proved futile. Making matters worse, Aetna also sent HUMC two separate demands for alleged overpayments related to Patient 1's treatment provided by HUMC. Thus, HUMC asserts claims against the Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover the substantial underpayments from Defendants.

Before any discovery has taken place, Aetna seeks dismissal of HUMC's claims pursuant to Fed. R. Civ. P. 12(b)(6). Aetna argues that it is not a proper party to this action, impermissibly relying upon an alleged Customer Administrative Services Agreement between Aetna and UBF ("CASA") and Joint Administrative Services Agreement between Aetna and Omni ("ASA"). Aetna contends that these documents provide for Aetna to perform only ministerial administrative tasks for the Plan and that Aetna, therefore, cannot be held liable to HUMC as an ERISA fiduciary or administrator for HUMC's breach of fiduciary duty and denial of full and fair review claims. But HUMC is not a party to the CASA or ASA, did not rely on the CASA or ASA in its pleadings, and never even

saw the CASA or ASA until this motion was filed.  Aetna's reliance on such matters completely extraneous to the pleadings is reason alone to deny the motion.

Moreover, even if the alleged CASA and ASA were properly considered on this Rule 12(b)(6) motion, the motion still should be denied.  HUMC asserts claims against Aetna for breach of fiduciary duty and failure to provide a full and fair review based on specific discretionary actions taken by Aetna in its determination and disposition of Plan assets related to Patient 1's claim.  The CASA and ASA -- if they are authentic and currently in force (facts that HUMC is entitled to test in discovery) -- are not dispositive of Aetna's fiduciary status under ERISA.  Such a determination requires a fact intensive review by the Court, such that a Rule 12(b)(6) motion to dismiss is inappropriate at this early stage of litigation. Notwithstanding the alleged existence of the CASA and ASA, the Amended Complaint pleads ample facts from which to conclude that Aetna acted with discretionary authority related to the disposition of Plan assets and administration of the Plan when it failed to properly reimburse HUMC for Patient 1's claim and to provide a full and fair review as required under ERISA.  These facts include, among other things, an e-mail from Omni refusing further contact with HUMC and demanding that all communications related to the appeal be made directly to Aetna, Aetna's refusal to respond to HUMC's appeal, and Aetna's two separate letters advising HUMC that Aetna was recouping amounts allegedly overpaid to

3

HUMC for the treatment HUMC provided to Patient 1.  For all of these reasons and others, discussed more fully below, Aetna's motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

### A.    Summary of HUMC's Claims

The allegations of the Amended Complaint, which must be accepted as true for purposes of this motion, demonstrate that HUMC operates a licensed general acute care hospital in Hoboken, New Jersey.  From May 29, 2014, until May 22, 2015, HUMC provided extensive emergent, medically necessary medical treatment to Patient 1.  (Am. Compl., ECF Dkt. No. 4, ¶¶ 2, 17).  Patient 1 presented himself to HUMC's Emergency Department, was admitted to the hospital for a life-threatening condition, and continued to receive medically necessary treatment from HUMC for 358 consecutive days thereafter.  (Id.).  For his lengthy in-patient stay and the medically necessary care he received at HUMC, Patient 1 incurred total charges in the amount of $7,702,491.32.  (Id. at ¶ 3).  Of that amount, UBF, as Patient 1's insurer, is liable to HUMC, as Patient 1's assignee, in the total amount of at least $789,446.88, representing the benefits amounts payable under the UBF-sponsored Plan of Benefits.  (Id. at ¶ 4).  If the Plan is not a "grandfathered" plan

under the ACA[1] -- a fact that Defendants have, to date, refused to confirm, and about which the Defendants refused to supply relevant documentation -- then the amounts payable under the Plan are even higher.  (Id.).

To date, UBF, through Omni and Aetna, has refused to reimburse HUMC more than $12,907.18, leaving an unpaid balance due under the Plan of at least $776,539.70.  (Id. at ¶ 5).  Moreover, Aetna and the other defendants have refused to provide HUMC any meaningful avenue of review of UBF's underpayments. (Id. at ¶ 5).

Even worse, Aetna has sent HUMC two separate demands for alleged overpayments relating to the treatment HUMC provided to Patient 1 in the amounts of $4,366.44 and $4,270.37, which would leave the total reimbursement amount to HUMC at $4,270.37.  (Id. at ¶ 5).

Defendants' conduct violates ERISA, 29 U.S.C. § 1001 *et seq*.  (Id. at ¶ 8). Counts Two and Three of the Amended Complaint assert ERISA-based claims against Aetna for, inter alia, breach of fiduciary duty and failure to provide HUMC

---

[1] If a health insurance plan sees certain, significant changes, it will lose its grandfathered status under the ACA and be required, by law, to provide benefits for out-of-network emergency services in an amount equal to the greatest of three possible amounts:  (1)  the amount negotiated with in-network providers for the emergency service furnished; (2) the amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services, but substituting the in-network cost sharing provisions for the out-of-network cost-sharing provisions; or (3) the amount that would be paid under Medicare for the emergency service.  42 USC § 18011; 42 CFR § 147.140.

with a full and fair review of Patient 1's Claim arising under UBF's ERISA-governed plans. (Id. at ¶¶ 55-72).

More specifically, the Amended Complaint alleges that Aetna breached its fiduciary duty under ERISA by, among other things: basing their reimbursement decisions on maximizing profits to Defendants rather than on the terms of the Plan and applicable statutes and regulations; failing to make decisions in the interests of beneficiaries; and failing to act in accordance with the Plan documents. (Id. at ¶ 64). With respect to Count Three, HUMC asserts that Aetna failed to provide HUMC with a full and fair review under ERISA by, among other actions: refusing to provide the specific reason or reasons for the substantial underpayment on HUMC's claims on behalf of Patient 1; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline, or protocol relied upon in making the decision to deny or underpay these claims; refusing to describe any additional material or information necessary to perfect a claim; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; refusing to provide a statement describing any appeals procedure available, or a description of all required information to be given in connection with that procedure; and refusing to provide information necessary to

enable HUMC to ascertain the Plan's grandfathered status under the ACA.   (Id. at ¶ 69).

## B.   Aetna's Specific Actions Related to the Determination and Distribution of Plan Assets Related to Patient 1's Claims.

Aetna issued an explanation of benefits ("EOB") dated September 5, 2015, but it provided no explanation for the low reimbursement rate other than the claim was supposedly reimbursed at the "reasonable and customary rate."  (Id. at ¶ 23). Thereafter, HUMC exhausted all known and available internal appeals from the underpayment, to no avail.  (Id. at ¶ 30).  By letter dated September 9, 2015 ("Appeal Letter"), in accordance with the terms of the Plan, HUMC appealed the underpayment to Aetna, with a copy to Omni and UBF.  (Id. at ¶ 31).  In its Appeal Letter, HUMC explained, among other things, that HUMC's reimbursement claim was substantially underpaid; that the terms of the Plan required reimbursement in accordance with the calculations set forth in CMS's PPS Pricer System; and that Aetna's contention that the reimbursement amount of $12,907.18 represented the "reasonable and customary rate" was demonstrably false.  (Id.).

In its Appeal Letter, HUMC also requested that the Defendants provide a detailed explanation as to the reasons for the unreasonably low payment.  (Id. at ¶ 32).   HUMC also requested documentation in support of UBF's claim that the Plan is entitled to grandfathered status under the ACA.  (Id.). If the Plan is not entitled to assert grandfathered status under the ACA, then it would be required to

7

pay a substantially greater amount than the reimbursement methodology set forth in the Plan -- calculated using Centers for Medicare and Medicaid Services ("CMS")  Prospective Payment System ("PPS") Pricer System, and resulting in a reimbursement amount of $789,446.88 under the Medicare rate.  (Id. at ¶ 33).

Neither Aetna nor any of the other defendants ever formally responded to HUMC's Appeal Letter.  (Id. at ¶ 34).  Instead, by e-mail dated October 14, 2015 (the "Omni E-mail"), a representative of Omni advised HUMC, without analysis, that it believed that HUMC had been "paid in full by the plan."  (Id.).  This Omni representative further stated in the e-mail that Omni is not required to provide HUMC with information regarding the Plan's grandfathered status under the ACA. (Id.).  Contrary to the express language of the Plan -- which requires that all appeals be sent to Omni -- the author of the Omni E-mail further stated that his company would refuse to field any further calls or e-mails from HUMC, and that *all inquiries regarding the claim for the services provided to Patient 1 should be directed to Aetna*.  (Id.).  (emphasis added).

On November 11, 2015, HUMC re-sent its September 9, 2015, Appeal Letter directly to Aetna by fax and certified mail.  (Id. at ¶ 35).  By letter dated December 1, 2015, HUMC requested that Aetna expedite HUMC's appeal of this matter.  (Id.). To date, Aetna has taken no action on HUMC's appeal.  (Id.).

Making matters worse, by letter dated October 31, 2015 (received by HUMC on November 10, 2015), Aetna demanded that HUMC reimburse it for an alleged "overpayment" in the amount of $4,366.44 for treatment that HUMC provided to Patient 1. (Id. at ¶ 38). In a separate letter dated November 7, 2015 (received by HUMC on November 17, 2015), Aetna made a separate demand that HUMC reimburse Aetna for another "overpayment" in the amount of $4,270.37, for treatment that HUMC provided to Patient 1. (Id.). Aetna's "overpayment" demands would leave the total reimbursement to HUMC in the amount of $4,270.37, for the 358-day inpatient stay. (Id.). The October 31, 2015, and November 7, 2015, letters (the "Recoupment Letters"), provided no explanation regarding how the overpayments were calculated and provided HUMC with only 30 days to respond to the Recoupment Letters. (Id.).

### C.    Aetna's Motion to Dismiss

HUMC's claims against Aetna are based upon Aetna's status as a fiduciary under the Plan and the administrative actions Aetna took in the course of processing HUMC's claims under the plan for the services it provided to Patient 1, including its issuance of the inadequate EOB, its refusal to respond to HUMC's pre-suit appeals or requests for information, and its issuance of the Recoupment Letters. (Id. at ¶ 5). Aetna now moves for dismissal of all of HUMC's claims against it related to Counts Two and Three of the Amended Complaint. (Mot. to

9

Dismiss, ECF Dkt. No. 23).    Aetna's primary basis for seeking dismissal of HUMC's ERISA-based claims is that Aetna is allegedly not a fiduciary pursuant to ERISA, 29 U.S.C. § 1002(21)(A) or administrator pursuant to 29 U.S.C. § 1002(16)(A).  Aetna relies for this argument on the CASA it allegedly entered into with UBF and the ASA it allegedly entered into with Omni.  Aetna contends that Section 5.1 of the CASA supports its contention that Aetna's responsibilities to the Plan are ministerial and that it has "no other fiduciary responsibility under the Plan."  (Certification of Michael C. McNamara ("McNamara Cert."), Ex. B, ECF Dkt. No. 20-3, CASA § 5.1).  Aetna further contends that this language from the CASA was integrated into the ASA, and that several more sections of the ASA support its position that UBF is the sole fiduciary under the Plan.  (McNamara Cert., Ex. A, ECF Dkt. No. 20-3, ASA, §§ 3.1, 5.1.1 and 5.1.5) ("UBF has 'discretionary authority to determine entitlement to Plan benefits as determined by the Plan Documents for each claim received . . . .'", "'Aetna shall have no responsibility for claims determinations made by [Omni] and that Omni alone is responsible for fully adjudicating claims'", and "Omni agreed to be responsible for processing and adjudicating claims in accordance with the terms of the Plan".).  Finally, Aetna contends that the "Aetna Joint Claim Workflow" section of the ASA supports its position that Omni is the named administrator of the Plan for purposes of ERISA.  (Moving Br., ECF Dkt. No. 20-2, fn. 2) ("Omni is the 'administrator'

10

under ERISA as it determines member eligibility, makes determinations on benefits and applications, and provides member customer service, correspondence, and explanation of benefits. The ASA unequivocally states that '[Omni] administers claims and provides other services to [UBF].'").

However, these documents were never a part of HUMC's pleadings, and they have no bearing on HUMC's claims in this case. While they purport to delineate responsibilities among UBF, Aetna and Omni, they do not purport to dictate Aetna's rights or responsibilities vis-à-vis the Plan beneficiaries or their assignees. See, generally, McNamara Cert., Exs. A, B. Moreover, until Aetna included these documents with its motion papers, HUMC had never seen these documents, largely because Aetna ignored HUMC's pre-suit requests for information bearing upon Aetna's processing of HUMC's claims for services it rendered to Patient 1. (Am. Compl., ECF Dkt. No. 4, ¶¶ 30-35). Thus, HUMC could not have relied upon the CASA or ASA in its pleadings even if it had wanted to.

## LEGAL ARGUMENT

## AETNA'S MOTION TO DISMISS MUST BE DENIED

### I.   Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts all well-plead, material allegations in the complaint as true and any

reasonable inferences that can be drawn therefrom. <u>Garlanger v. Verbeke</u>, 223 F. Supp. 2d 596, 600 (D.N.J. 2002).    The complaint is construed in the light most favorable to the plaintiff. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  Dismissal of claims under 12(b)(6) should be granted "only if, after accepting as true all facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint." <u>Trump Hotels & Casinos Resorts, Inc. v. Mirage Resorts, Inc.</u>, 140 F.3d 478, 483 (3d Cir. 1998).

Here, as discussed further below, the Amended Complaint pleads ample facts to establish that Aetna is an ERISA fiduciary under the Plan and has breached its duties to HUMC as an assignee of Patient 1.  The Amended Complaint also pleads ample facts to establish that, because Aetna has discretionary authority regarding the administration of the plan, it violated ERISA by failing to provide HUMC with a full and fair review of Patient 1's claim.  Thus, dismissal of HUMC's claims against Aetna under Fed. R. Civ. P. 12(b)(6) is inappropriate.

## II.    The Court Should Not Consider the CASA And ASA On this Motion

As a threshold matter, the motion must be denied because Aetna impermissibly relies upon matters outside the pleadings.  The law is well-settled that a court's review regarding the legal sufficiency of a litigant's complaint under Rule 12(b)(6) may not include, as a general matter, consideration of materials

beyond the allegations contained in the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). An exception to this rule allows a court to consider "indisputably authentic documents that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document." Id. (citation and internal quotation marks omitted). Matters of public record and exhibits attached to, "explicitly relied upon," or "integral to" the complaint may also be taken into account. Garlanger, 223 F. Supp. 2d at 600-601 (citing Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also Dovale v. Marketsource, Inc., 2006 WL 2385099, at * 5 (D.N.J. Aug. 17, 2006); El-Bey v. Peer, 2006 WL 2805281, at * 2 (D.N.J. Sept. 28, 2006).

If any further matters outside of the pleadings are presented and not excluded by the Court, the Court shall convert the motion into one for summary judgment. Fed. R. Civ. P. 12(d); see also Pension Benefit Guar. Corp., 998 F.2d at 1196-1197; Dovale, 2006 WL 2385099, at *5. In that event, the parties must be given a reasonable opportunity to conduct discovery in order to present all materials pertinent to such a motion under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(d); see also Ramirez v. U.S., 998 F. Supp. 425, n.2 (D.N.J. 1998); Dovale, 2006 WL 2385099, at *5.

Here, Aetna claims that it is not a proper party to this action based on contract language contained in extraneous documents outside the pleadings, the

CASA and ASA.  Aetna contends that the Court may consider the CASA and ASA because HUMC's claims are based on in part on the Plan, and the CASA and ASA are "plan documents."  (Moving Br. at 3).  They are not.  "A formal plan document is one which a plan participant could read to determine his or her rights or obligations under the plan."  Local 56, United Food v. Campbell Soup Co., 898 F. Supp. 1118, 1136 (D.N.J. 1995).  Documents such as the CASA and ASA are not plan documents.  See id. ("the ASA is more properly understood as contract for services with [a summary plan document] as an exhibit attached rather than a plan document").  The CASA purports to dictate Aetna's rights and responsibilities vis-a-vis UBF, and the ASA purports to dictate Aetna's rights and responsibilities vis-a-vis Omni.  Neither purports to dictate their rights and responsibilities with respect to plan beneficiaries (such as Patient 1) or their assignees (such as HUMF).  Cf. Local 56, 898 F. Supp. at 1124 ("While the ASA characterized the relationship between the Company and Provident as plan administrator and provided that it could be terminated upon written notice, the document did not further describe the rights of the Company or Provident vis-a-vis the program beneficiaries namely retirees.").  Thus, HUMC's allegations under the Plan do not entitle Aetna to rely on the CASA or ASA.

Moreover, in addition to HUMC's claims arising under the Plan, HUMC's well-pleaded allegations are based on Aetna's own actions, including Aetna's

14

issuance of an inadequate EOB dated September 5, 2015; Aetna's failure to respond to HUMC's Appeal Letter dated September 9, 2015, or HUMC's follow-up correspondence dated November 11, 2015; the Omni E-Mail dated October 14, 2015, directing further appeal efforts to Aetna; and Aetna's Recoupment Letters. These allegations in no way depend upon the purported existence of the CASA or ASA.

Importantly, HUMC did not even see the CASA or the ASA until they were filed with Aetna's Motion to Dismiss on March 9, 2016. While HUMC, in the Appeal Letter and its follow-up letter dated November 11, 2015, specifically requested documentation from Aetna regarding the determination of Patient 1's claim, Aetna never responded. Thus, not only are HUMC's claims not based upon the CASA or ASA, HUMC could not have relied on the CASA or ASA in its pleadings because Aetna never provided these documents to HUMC as requested.

Finally, even if the Court deems the CASA or ASA relevant to this motion, HUMC should be permitted to conduct discovery so that it has an opportunity to present all relevant material related to the motion. See Fed. R Civ. P. 12(d). HUMC should be permitted to test, among other things, whether the CASA or ASA that Aetna includes with its motion papers are authentic documents and are currently in force and, if so, whether the parties to those agreements routinely

15

comply with them.[2]   These are matters not appropriate for disposition at the pleading stage.  Aetna's reliance on matters wholly extraneous to the pleadings is reason alone to deny its motion.

## III.  Even if the CASA or ASA Were Properly before the Court, Aetna's Motion Still Must be Denied

Even if the CASA and ASA were properly considered, however, Aetna's motion still should be denied.  Aetna contends that these documents demonstrate that Aetna is not a fiduciary or administrator under ERISA and, therefore, dismissal of HUMC's claims against Aetna in Counts Two and Three is appropriate.  To the contrary, HUMC sufficiently alleges that Aetna is a fiduciary and administrator under Aetna, and the CASA and ASA do not demonstrate otherwise.

### A.  HUMC Sufficiently Pleads a Breach of Fiduciary Duty Claim against Aetna in Count Two

Under ERISA, a person is a fiduciary with respect to a plan to the extent:

(i)     he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets . . . .or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

---

[2]  For example, the ASA provides that Omni is responsible for issuing the Explanation of Benefits ("EOB"). McNamara Cert., Ex. B, ECF Dkt. No. 20-3, CASA § 5.1.7.  Yet in this case, Aetna issued the EOB.  (Am. Compl., ECF Dkt. No. 4, ¶ 23).  This calls into question whether the ASA attached to Aetna's motion papers is currently in effect and, if so, whether the parties routinely waive or disregard its provisions.

29 U.S.C. § 1002(21)(A); Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 413 (2013). The term "person" is defined broadly to include a corporation such as Aetna. Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan, 751 F.3d 740, 744 (6th Cir. 2014). ERISA defines fiduciary not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan. Edmonson, 725 F.3d at 413 (citations omitted). Accordingly, fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions. Id.; see also Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assoc, Inc., 237 F.3d 270, 273 (3d Cir. 2001) ("any control over disposition of plan money makes the person who has the control a fiduciary") (internal quotations omitted). Thus, if Aetna, as the Plan's third-party administrator, acts as a fiduciary with respect to the Plan, the claims asserted against it in Counts Two and Three of the Amended Complaint are permissible. See Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226 (3d Cir. 1994) (plaintiff may bring a claim against a third-party plan administrator under ERISA if the third-party plan administrator is a fiduciary).

As demonstrated below, the Amended Complaint sufficiently alleges that Aetna acted as a fiduciary under the Plan when it exercised discretionary authority and control over the disposition of Plan assets related to HUMC's claim for services it provided to Patient 1.

### 1. The Determination Of An ERISA Fiduciary Requires A Fact Specific Analysis Not Appropriate for Resolution at the Pleading Stage

It is well-settled in this Court that the determination of whether an entity is an ERISA fiduciary is fact-based and dependent upon the tasks performed by an individual or entity. Thus, "rulings on this issue have tended to occur after discovery rather than at the pre-discovery motion to dismiss stage." Neurosurgical Assoc. of NJ, P.C. v. QualCare Inc., 2015 WL 4569792, at *2 (D.N.J. July 28, 2015); see also In re Schering-Plough Corp. ERISA Litig., 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) ("Fiduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early stage where the complaint sufficiently pleads defendants' ERISA fiduciary status."); Edmonson, 725 F.3d at 423 (holding that an insurer was an ERISA fiduciary on a motion for summary judgment); Chao v. New Jersey Licensed Beverage Ass'n, Inc., 461 F. Supp. 2d (D.N.J. 2010) (citing In re Cardinal Health, Inc. ERISA Litig., 424 F. Supp. 2d 1002, 1030 (S.D. Ohio 2006) (noting that "fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss.").

Here, HUMC plead sufficient detail to support its contention that Aetna, as the Plan's third-party administrator, acted as an ERISA fiduciary under the Plan. First, Aetna issued the EOB purporting to explain that the paltry reimbursement of HUMC for the services that it provided to Patient 1 represented the "reasonable

and customary rate." Second, in accordance with the terms of the Plan, HUMC appealed the initial reimbursement related to Patient 1's claim directly to Aetna and received no response. Third, the Omni E-mail expressly stated that Omni would refuse to field any further calls or e-mails from HUMC, and that *all inquiries regarding the claim for the services provided to Patient 1 should be directed to Aetna.* Finally, Aetna sent not one, but two separate recoupment letters to HUMC, in October and November 2015, alleging overpayments of the reimbursement paid related to Patient 1's claim. These well-pleaded facts support a reasonable inference that Aetna had discretionary authority over the disposition of Plan assets beyond the initial claim determination and for any appeals decisions related to Plan 1's claim. These facts alone demonstrate that HUMC properly alleged that Aetna acted as a fiduciary with respect to HUMC's claims under the Plan for the extensive medical treatment that HUMC provided to Patient 1.

### 2. The CASA And ASA Are Not Dispositive Of ERISA Fiduciary Status.

The alleged CASA and ASA that Aetna impermissibly attaches to its motion papers do not alter this analysis. Courts in many jurisdictions, including this one, have consistently held that terms in an Administrative Services Agreement, such as the CASA and ASA, are not dispositive of fiduciary status. See e.g., Neurosurgical Assoc. of NJ, P.C., 2015 WL 4569792, n.2 ("While the terms of the Administrative Services Agreement highlighted by Defendant suggest that Defendant is not an

ERISA fiduciary, these terms are not dispositive because '[w]hile ERISA requires the written plan document to name at least one fiduciary . . . other individuals not named in the written plan document may still qualify as fiduciaries of the plan if they have discretionary authority'") (quoting In re Schering-Plough, 2007 WL 2374989, at *7); IT Corp. v. General Amer. Life Ins. Co., 107 F.3d 1415, 1418 (9th Cir. 1997); Harold Ives Trucking Co. v. Spradley & Coker, Inc., 178 F.3d 5233, (8th Cir. 1999).  In these cases, despite the existence of contract language that stated otherwise, the courts held that the core to a fiduciary status determination is whether an administrator had discretionary authority over the management and disposition of plan assets.  See id.  Indeed, with certain exceptions not applicable here, ERISA provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a); IT Corp., 107 F.3d at 1418.

Thus, even if Aetna could exonerate itself from fiduciary responsibilities to UBF and Omni, it could not exonerate itself from its duties to participants and beneficiaries of the Plan.  Patient 1, and HUMC as Patient 1's assignee, are not signatories to the CASA and the ASA, and are entitled to have the Plan administered in their interest.

IT Corp. and Harold Ives Trucking are particularly instructive.  In both

20

cases, administration contracts provided that the plan administrator was not a fiduciary under the plan, and that the administrator was responsible only for performing ministerial acts.  Despite the presence of this contractual language, however, the IT Corp. and Harold Ives courts held that the administrator's actions were the determining factor of ERISA fiduciary status and not the contract language.  For example, in IT Corp., the court reversed the dismissal of claims against a plan administrator because of questions regarding the administrator's discretionary authority and control over plan assets.  The court noted that the administration contract language was not dispositive of the administrator's status as an ERISA fiduciary: "putting the magic words in the contract, 'purely ministerial duties,' does not avoid fiduciary responsibility, if the characterization, 'purely ministerial duties, is not correct.  The issue is not just how the duties are characterized, but what they are." Id. at 1420.  Regarding discretionary authority, the court noted that without more information, it could not determine that the administrator did not have discretionary authority when it paid $600,000 on a non-covered medical claim, not because of a clerical error, but because it had considerable discretion and made a misjudgment about plan interpretation.  Id. at 1421.

Similarly, in Harold Ives Trucking Co., the court noted that the administration contract expressly provided that the third-party administrator would

21

have no discretionary authority and would provide only ministerial services.  The court stated, however, that "the contract is controlling only to the extent that [the administrator] actually carried out its responsibilities in a manner consistent with its provisions.  In other words, [the administrator] was not a fiduciary so long as it performed only ministerial duties."  <u>Id.</u>  The court concluded that, despite the contract language, the third-party administrator's actions assumed discretionary authority when it reversed the initial decision to not cover the patient under the plan when the insurance carrier had adamantly refused to cover the patient's charges.  <u>Id.</u>

Aetna relies on <u>Briglia v. Horizon Healthcare Serv's Inc.</u>, 2005 WL 1140687 (D.N.J. May 13, 2005), but <u>Briglia</u> is to the contrary.  In <u>Briglia</u>, the court merely noted that the administrative services agreements at issue in that case were "the most logical starting point of the analysis" to determine the insurer's fiduciary status in that case.  <u>Id.</u> at *6.[3]  However, those agreements were not the end of the court's analysis.  The <u>Briglia</u> court distinguished <u>Harold Ives Trucking</u> on the grounds that in <u>Briglia</u>, unlike in <u>Harold Ives Trucking</u>, the plaintiff "has not sufficiently alleged that [the insurer] assumed any discretionary authority or acted

---

[3] There is no indication that the court in <u>Briglia</u> was presented with the argument that agreements purporting to relieve a fiduciary of fiduciary responsibility under ERISA are void as contrary to public policy under 29 U.S.C. § 1110(a).

outside the express limitations of the plan documents which gave all final decision-making to the plan." Id. at *9.

In this case, unlike in Briglia (and similar to the plaintiffs in Neurosurgical Assoc. of NJ, IT Corp. and Harold Ives), HUMC alleges that Aetna exercised discretionary authority under the Plan, notwithstanding the alleged contract language in the CASA and ASA. As noted more fully in Point II.A above, HUMC's well-plead, specific factual allegations permit the reasonable inference that Aetna acted as a fiduciary with respect HUMC's claims for the services it provided to Patient 1 under the Plan. Among other things, Aetna: issued the EOB purporting to explain that the reimbursement for the treatment to Patient 1 was the "reasonable and customary rate"; ignored HUMC's Appeal Letter and follow-up correspondence; and sent two separate recoupment letters alleging overpayments of the reimbursement paid related to Patient 1's claim. Moreover, the Omni E-Mail instructed HUMC to make all appeals to Aetna and expressly stated that it refused any further contact with HUMC regarding Patient 1's claim. This e-mail left HUMC with only one possible avenue to determine its appeal under the Plan and confirmed, despite the CASA and ASA language, that Aetna is tasked with sole authority regarding Patient 1's claim appeals under the Plan. These well-plead factual allegations more than sufficiently support a reasonable inference that Aetna is an ERISA fiduciary who breached its duty to HUMC when it substantially

underpaid Patient 1's claim reimbursement and failed to provide HUMC with a full and fair review of Patient 1's claim.  For this additional reason, Aetna's motion to dismiss should be denied.

### B.    HUMC Sufficiently Alleges that Aetna Violated its Duty to Provide a Full and Fair Review under ERISA

For the same reasons, Aetna's request that the Court dismiss HUMC's claims against it in Count Three also should be denied.  In this claim, HUMC alleges that Aetna violated its duty to provide a full and fair review under ERISA. 29 U.S.C. § 1133(2) mandates that a plan beneficiary be afforded an opportunity for "a full and fair review by the appropriate named fiduciary of the decision denying the claim."   HUMC sufficiently alleges that Aetna violated this duty by, among other things, providing an EOB that failed to properly explain the basis for the underpayment of HUMC for the extensive life-saving treatment that HUMC provided to Patient 1; ignoring HUMC's Appeal Letter and follow-up correspondence; and sending HUMC not one but two separate recoupment letters, stating that HUMC had been overpaid $4,366.44, and $4,270.37, respectively, of the $12,907.18 HUMC was initially reimbursed – an amount which was less than 2% of the minimum reimbursement amount to which HUMC is entitled to under the Plan.

In particular, these recoupment notification letters, determined and administered by Aetna, violate ERISA's full and fair review requirements in a

24

number of respects.  The letters (i) fail to provide "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of [ERISA] following an adverse benefit determination on review" (29 C.F.R. § 2560.503–1(g)(1)(iv)); (ii) fail to indicate that HUMC, "upon request and free of charge, [will have] reasonable access to, and copies of, all documents, records, and other information relevant to the" overpayment determination (29 C.F.R. § 2560.503–1(h)(2)(ii)); and (iii) fail to "[p]rovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination" (29 C.F.R. § 2560.503–1(h)(3)(i)).  This Court has found that letters administered under plans similar to those which Aetna sent to HUMC violate ERISA's requirements in the same respects.  See Premier Health Ctr. v. UnitedHealth Grp., 292 F.R.D. 204, 224 (D.N.J. 2013).

Aetna argues that it cannot be liable to HUMC on this count "because Aetna is not the Plan Fiduciary or Administrator for any review of denied claims." (Moving Br. at p. 6).  This conclusory argument fails because, as demonstrated more fully in Point II above, HUMC pleads ample facts to demonstrate that Aetna is a fiduciary with respect to HUMC's claims for the treatment it provided to Patient 1.  Thus, Aetna's separate argument that it is not the plan "administrator" is of no moment.

In any event, HUMC also sufficiently pleads that Aetna is the plan "administrator."  29 U.S.C. § 1002(16)(A) defines "administrator" under ERISA as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the Plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."

Aetna claims that because the ASA provides that Omni is the named "administrator" for "determinations on benefits and applications, and provides member customer service, correspondence and explanation of benefits . . . [Omni] administers claims and provides other services to [UBF]," (Moving Br. ECF Dkt. No. 20-2, fn. 2), "Aetna's function with regard to provider appeals for reconsideration of medical necessity determinations made by Omni is limited to coordinating with Omni and relaying Omni's determination to the provider." (Moving Br., ECF Dkt. No. 20-2, p. 7).   Aetna and Omni's actions, however, belie Aetna's argument.   Aetna's EOB and Recoupment Letters alone demonstrate that it does more than simply coordinate with Omni and rely Omni's determination to the provider.  What is more, in the Omni E-mail, Omni unequivocally stated that it would have no further communications with HUMC regarding Patient 1's claims and ***all inquiries regarding the claim for the services provided to Patient 1 should***

26

***be directed to Aetna***.  Thus, whether Aetna says it is not acting as an administrator or not is of no import.  Aetna's actions say otherwise.

In short, because Aetna is a fiduciary or administrator of the Plan under ERISA, HUMC is entitled to bring its full and fair review claim against Aetna.  For this additional reason, Aetna's motion to dismiss should be denied.

## CONCLUSION

For all of the foregoing reasons, HUMC respectfully requests that the Court deny Aetna's motion to dismiss in its entirety.

Respectfully submitted,

**K&L GATES LLP**
*Attorneys for HUMC OPCO LLC, d/b/a CarePoint Health - d/b/a Hoboken University Medical Center*

By:   /s/ Anthony P. La Rocco
        Anthony P. La Rocco
        Member of the Firm

Dated:  April 4, 2016

27