<pre>
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

HUMC OPCO LLC,                       .
                                     .
        Plaintiff,                   .
                                     .  Case No. 16-cv-00168
vs.                                  .
                                     .  Newark, New Jersey
UNITED BENEFIT FUND, et al.,         .  June 14, 2016
                                     .
        Defendants.                  .
                                     .


                  TRANSCRIPT OF TELECONFERENCE
             BEFORE THE HONORABLE MICHAEL A. HAMMER
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

 For the Plaintiff:      ANTHONY P. LA ROCCO, ESQ.
                         K&L Gates LLP
                         One Newark Center, 10th Floor
                         Newark, NJ 07102-5497
                         (973) 848-4000
                         anthony.larocco@klgates.com

                         GEORGE PETER BARBATSULY, ESQ.
                         K&L Gates LLP
                         One Newark Center, Tenth Floor
                         Newark, NJ 07102-5252
                         (973) 848-4104
                         george.barbatsuly@klgates.com

                         STACEY A. HYMAN, ESQ.
                         K&L Gates LLP
                         One Newark Center, 10th Floor
                         Newark, NJ 07102-5497
                         (973) 848-4028
</pre>

```
 1    For the Defendants      MARK GINSBERG, ESQ.
      United Benefit Fund     Gorlick Kravitz & Listhaus PC
 2    and Aetna Health        17 State Street, 4th Floor
      Inc.:                   New York, NY 10004
 3                            (212) 269-2500
                              mginsberg@gkllaw.com
 4
                              BRUCE L. LISTHAUS, ESQ.
 5                            Gorlick Kravitz & Listhaus PC
                              17 State Street, 4th Floor
 6                            New York, NY 10004
                              (212) 269-2500
 7                            blisthaus@gkllaw.com

 8
      For the Defendant       ALYCHIA LYNN BUCHAN, ESQ.
 9    Omni Administrators     Proskauer Rose LLP
      Inc.:                   One Newark Center
10                            Newark, NJ 07102-5310
                              (973) 274-3236
11                            abuchan@proskauer.com

12                            JOSEPH E. CLARK, ESQ.
                              Proskauer Rose LLP
13                            Eleven Times Square
                              (Eighth Avenue & 41st Street)
14                            New York, NY 10036-8299
                              (212) 969-3178
15
                              RUSSELL L. HIRSCHHORN, ESQ.
16                            Proskauer Rose LLP
                              Eleven Times Square
17                            (Eighth Avenue & 41st Street)
                              New York, NY 10036-8299
18                            (212) 969-3286

19

20    Audio Operator:

21    Transcription Service:      KING TRANSCRIPTION SERVICES
                                  3 South Corporate Drive, Suite 203
22                                Riverdale, NJ  07457
                                  (973) 237-6080
23
      Proceedings recorded by electronic sound recording (not all
24    parties were discernible on the record); transcript produced
      by transcription service.
25
```

1                              I N D E X

2

3     Proceeding                                        Page

4         Proceedings                                     4

5         The Court's Ruling                             19

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Commencement of proceedings at 3:05 P.M.)

2

3          THE COURT:  All right.  We are on the record HUMC

4   DBA Carepoint Health versus United Benefit Fund, Aetna, et

5   al., Civil No. 16-168 to address a discovery dispute that the

6   parties have presented in separate letters, I would note,

7   which is a direct violation of paragraph 5 of the Court's

8   scheduling order.  I'm not sure what's up with that.

9          Let me have appearances, please, beginning with

10  plaintiff.

11         MR. BARBATSULY:  Good afternoon, Your Honor, you

12  have George Barbatsuly, Stacey Hyman, and Tony La Rocco for

13  the plaintiffs, K&L Gates.

14         THE COURT:  And for the defense?

15         MR. LISTHAUS:  You have Bruce Listhaus with Gorlick

16  Kravitz & Listhaus, as well as Mark Ginsberg representing UBF

17  and Aetna.

18         THE COURT:  All right.

19         MR. HIRSCHHORN:  Good afternoon, Your Honor, for

20  defendant Omni, Russell Hirschhorn speaking, and with me is

21  Joe Clark and Alychia Buchan.

22         THE COURT:  Okay.  So as I understand it --

23  originally I had required parties to come into court for an

24  in-court conference and meet-and-confer regarding myriad

25  discovery disputes.  The parties told me yesterday they had

1    resolved all except one.  And that concerned what -- what I

2    understand to be third-party discovery that the plaintiff

3    wants to take regarding grandfathering or whether this --

4    yeah, whether the plan is grandfathered under the Affordable

5    Care Act.  Is that correct.

6              MALE SPEAKER:  That's correct, Your Honor.

7              THE COURT:  All right.  So since --

8              MR. HIRSCHHORN:  Your Honor, it's Russell

9    Hirschhorn, if I may.

10             THE COURT:  Yeah.

11             MR. HIRSCHHORN:  I don't think it's -- it's

12   accurate to say that there's -- appears to be one discovery

13   dispute, but I think, Your Honor, that there's a threshold

14   subject matter jurisdictional issue that we have to discuss

15   before -- with respect -- before getting into discovery

16   issues.  It is the contention of the defendants -- one of the

17   defendants that the plaintiff is -- that the plaintiff is

18   without subject matter jurisdiction for lack of a valid

19   assignment, and therefore has no statutory standing under

20   ERISA --

21             And we have asked plaintiff's counsel for evidence

22   that the assignment is proper.  And just -- just to clarify

23   for one big moment, the assignment of benefits is signed by

24   somebody who purports to be the wife of the participant in

25   the party.  Your Honor, as I understand the issue's about

1  whether or not the person was actually married or was married

2  to the participant.  But in any event, we've asked for and

3  have not received some sort of power of attorney that would

4  enable a -- wife to receive the authorization to then assign

5  a property right such as an assignment of benefits.

6          We have not received that, and without that, it is

7  our belief and our contention that the hospital is without

8  statutory standing, because it is neither a participant or a

9  beneficiary and -- with the proper authorization.

10          And respectfully, Your Honor, we believe that this

11  case should be put on ice subject to -- the motion to dismiss

12  for lack of subject matter jurisdiction.

13          THE COURT:  Well, let me turn to the plaintiffs.

14  Are you -- am I correct, Mr. Hirsch [*sic*], you're relying on

15  a series of decisions -- I don't have them in front of me --

16  including a few recently authored by Judge Chesler that deals

17  with this assignment issue and whether there's an assignment

18  that confers jurisdiction?  Or am I thinking of the wrong --

19          MR. HIRSCHHORN:  No, Your Honor, I -- I believe I

20  know the decision that you're referring to, Your Honor.  I

21  believe that those decisions, and there's been a lot of case

22  law, quite frankly, from multiple jurisdictions on the issue

23  of proper assignments over the past six or eight months.

24          THE COURT:  Yeah.

25          MR. HIRSCHHORN:  Those cases deal with issues about

1   whether or not an assignee has a right to bring a claim, has

2   a right to bring a lawsuit, has a right to -- payment.

3           THE COURT:  Oh, that is right, those --

4       (Simultaneous conversation)

5           MR. HIRSCHHORN:  And those -- those -- I'm sorry?

6           THE COURT:  Those are standing issues.  Right?

7           MR. HIRSCHHORN:  Well, I think some of them may be.

8   Others are what -- what is within the scope of the assignment

9   as opposed to whether there is a statutory standing.  I think

10  they are mixed issues.

11          Here, we have a purely statutory standing argument

12  that we do not believe the hospital has a proper assignment.

13  They haven't conformed with efforts to prove to us that they

14  had standing.

15          THE COURT:  All right.  Let me hear from the

16  plaintiff.

17          MR. BARBATSULY:  Your Honor, it's George Barbatsuly

18  for the plaintiff.

19          We think that the jurisdictional argument's

20  completely without merit.  First of all, this is the person

21  who signed the assignment was, in fact, the patient's spouse.

22  We do have a marriage certificate, which we -- you know, we

23  are prepared to forward to the other side.  And the

24  patient -- the patient who came in presented, was comatose.

25  Patient's spouse was making all the patient -- the benefits

1   decisions, was interacting with the plan.

2           So factually, the plan has known for over a year

3   and a half that the patient's spouse was attending to these

4   matters.

5           The plan itself makes reference to a covered person

6   being able to -- to enter into an assignment as a patient's

7   spouse.  He clearly was a covered person.

8           And then thirdly as of -- you know, the patient has

9   since passed on, and the patient's spouse is still living,

10  and the case law supports the notion that the State take the

11  spouse as the successor in interest, has the ability to

12  confer standing.

13          So just -- you know, just to avoid any suspense

14  here, at the time of the admission, the patient's spouse

15  signed an assignment because the patient was physically

16  unable to.  When this was brought to our attention -- and

17  it's been a recent development, so we will be forwarding this

18  information -- the patient's spouse now, in her capacity as

19  successor in interest to the patient, has executed a new

20  assignment which -- which I think, puts this question to

21  rest.  In a case that was recently decided by Judge Vazquez,

22  you know, specifically rejected similar arguments that the

23  assignments, you know, were not valid.  We think that any

24  assignment was valid at all times, but just as a

25  belt-and-suspenders, we're prepared to present evidence of a

1   new assignment that's valid under Judge Vazquez's opinion; it

2   doesn't matter when the assignment was -- was executed.

3          And with respect to the opinions that have been

4   cited, they just -- you know, the Judge Chesler opinions

5   focus on the language.  I don't think there is any dispute

6   that the language of the assignments are sufficient, and

7   most -- and more importantly, the Third Circuit just this

8   past fall said that the language -- you know, that the

9   language didn't even need to be as broad as what

10  Judge Chesler had been finding, and as long as the assignment

11  conveys the right to payment to the hospital, that's

12  sufficient, and we -- we more than have that.

13         So, I mean, if they want to brief the issue, it's

14  their prerogative.  We think that that's going to go nowhere.

15  And we don't see any basis for holding up the rest of

16  discovery.

17         THE COURT:  All right.

18         MR. HIRSCHHORN:  Your Honor, Russell Hirschhorn

19  here.

20         The case law is clear that a spousal relationship

21  does not confer authority to assign benefits.  That -- that

22  is their contention here.  That contention is without merit.

23         And I respectfully suggest that we establish

24  a briefing schedule.  We do have a pending -- there are

25  pending motions to dismiss here on other grounds.  But as

 1   everybody is well aware, subject matter jurisdiction is not

 2   something that can be waived and should be taken up at any

 3   time.

 4          THE COURT:  Let me hear from the plaintiff, what

 5   sort of discovery are you proposing here?

 6          MR. BARBATSULY:  Well, going back to the

 7   grandfather issue, Your Honor.

 8          THE COURT:  Yeah.

 9          MR. BARBATSULY:  Because I think that's the point

10   in contention that Your Honor started with, now, Your Honor

11   has ordered that the parties engage in discovery which is

12   limited to the administrative record as well as on the

13   question of whether the plan at issue is or is not

14   grandfathered under the Affordable Care Act.  We had a

15   meet-and-confer with counsel for the benefit -- United

16   Benefits Fund and Aetna, who advised us that they were going

17   to be relying for their grandfathering position on 42 U.S.C.

18   18 -- 18011(d).  That's essentially a collective

19   bargaining -- a provision of the Affordable Care Act that

20   provides that for health insurance coverage maintained by one

21   or more collective bargaining agreements between employer

22   representatives and employers -- and this is the operative

23   language -- that was ratified before March 23rd, 2010, the

24   statute provides the plan is grandfathered until the date on

25   which the last of the CBAs who were waiting for that coverage

1    terminate.

2           So counsel for UBF had said, well, we have -- we

3    have a CBA that covers -- that -- that it was, you know --

4    pursuant to which health coverage under the UBF was

5    maintained.  It was -- it was in effect for March -- it was

6    in effect at the time of the enactment of the Affordable Care

7    Act, and it remains in effect.  And we're relying on that CBA

8    for our grandfathering position.

9           It turns out that the CBA purports to have an

10   effective date or March 1, 2010, and remains in effect, but

11   there's indication on the face of the CBA that was provided

12   to us as to when it was actually ratified, and ratification

13   is what's built into the statute as the appropriate standard.

14          In our experience with CBAs, it's very common that

15   CBAs will be ratified sometime after the effective date and

16   made retroactive.  We don't know if that's the case here, but

17   what we're asking for is discovery from the parties to the

18   actual CBA, the union and the employer, basically designed to

19   elicit information on -- two minimal questions:  Number one,

20   when was the CBA ratified?  And number two, is the CBA

21   actually in effect?  Which is what the UBF has represented.

22          As -- discovery, we submit that it falls squarely

23   within the scope of what Your Honor ordered when Your Honor

24   said that we were entitled to discovery on the question of

25   grandfathering, and since the UBF has proffered this

1   collective bargaining agreement as the basis for

2   grandfathering, or at least one of the bases, we believe that

3   this limited discovery will -- is designed to test that.  And

4   we're entitled to it.

5          THE COURT:  Let me ask a follow-up question.  How

6   would you --

7          MR. HIRSCHHORN:  Your Honor, could I -- this is --

8   can I address some of the --

9          THE COURT:  No, can I ask my question first,

10  please.  Thank you.

11         How will you determine through discovery, what

12  discovery to look for to determine whether the CBA is still

13  in effect?  Are you talking about purely paper discovery

14  or -- you're not looking for depositions, are you?

15         MR. BARBATSULY:  Well -- for third parties, I think

16  that we would want some limited document discovery on the

17  issue.  In theory, we'd want some -- you know, some sort of

18  sworn testimony, if the proffer is that the CBA's in effect,

19  here are the documents that prove it, we -- you know, it

20  could be through a certification, and -- but I think we'd

21  want to serve a notice -- you know, a subpoena, you know,

22  with a deposition notice attached to it that would be limited

23  to that -- you know, well -- I mean, the threshold question

24  is the ratification date, because I think that's -- and

25  that -- that should be an easy question for both the employer

|Teleconference
|16-cv-00168, June 14, 2016

 1   and/or the union to answer.

 2        And so the -- you know, the -- we would seek

 3   documents and then presumably a limited deposition on that

 4   limited question of the ratification date, and then, you

 5   know, similarly what the effective date.  I mean, I don't

 6   expect these to be very lengthy inquiries.  They're pretty

 7   simple.  But obviously as Your Honor alluded to, it makes a

 8   huge difference to the value of the case whether it's a

 9   $776,000 case or close to $7.7 million case, and Your Honor

10   indicated that that's an important issue to resolve upfront.

11        So the limited, you know, information we're seeking

12   from third parties, we submit, is, you know -- is appropriate

13   to go to that -- for that particular issue, particularly

14   since the plan has proffered the CBA as the -- as the

15   argument for grandfathering.

16        THE COURT:  All right.  Go ahead.  Somebody else

17   wanted to say something?

18        MR. LISTHAUS:  Yes, Your Honor, this is Bruce

19   Listhaus.  For -- on counsel's point, yeah, that's -- that's

20   just one basis.  There are other bases that we're relying

21   upon.  We figure that this one -- you know, we put it to bed

22   very quickly and that is a -- it is a contract.  You know --

23   going to the statute.  The four corners of the document are

24   clear.  It's dated prior to the date of the important date of

25   the statute, prior to March 23rd.

1          And we figure, you know, that would just put the

2   whole issue to bed.

3          Now, counsel is raising this question of

4   ratification, which we don't really agree with.  First of

5   all, this particular union did not require ratifications of

6   their contracts.  So, in fact, there is no ratification of

7   the contract.  The date that it went into effect -- and by

8   the way, the statute uses the word "in effect," in addition

9   to using the language "ratify."  So in this context that -- I

10  mean, we think it's pretty clear that that was going on.

11  This contract on its face was in effect as of March 1st,

12  2010, and so we believe that, you know, that puts the

13  question to bed.

14         But leaving that aside, let's assume for argument's

15  sake that counsel would be able to knock off that argument.

16  So first of all, we believe it's -- we -- as far as --

17  contracts that would satisfy that.  We just presented this

18  one because, as I said, I thought that would be the easiest

19  way to go.

20         But in addition to that, we provided them with a --

21  an independent basis under the statute, which is that if the

22  plan continues to exist with -- in line with the statutory

23  requirements, then regardless of the collective bargaining

24  agreement exemption, it's still considered to be

25  grandfathered.  So there is that second basis.

1          So let's assume they knock down basis number one,

2    so then you're going to allow, you know, unfettered discovery

3    with regard to basis number two?

4          And then even assuming that all the -- knocked out,

5    the only -- you know, I think more has been made of the

6    grandfathering issue in this litigation than perhaps needed

7    to be, because even assuming that we go down the

8    nongrandfathered route -- approve one of these things, so

9    then the only time that the -- becomes relevant is if we're

10   dealing with emergency care.

11         Now, their position that this is a patient who was

12   in the emergency room, in the emergency room for about a

13   year, would suggest -- emergency care.  We totally object to

14   that as well, you know, under the definition of the statute.

15         So there is so many layers of this onion that need

16   to be peeled that we believe just the why -- you know, is the

17   person -- again, we thought that we would be able to just

18   satisfy the issue at the outset and then move on.

19         The last point I want to make is that even assuming

20   all of that were -- were to come to pass, the -- counsel is

21   saying that there's a difference there between $700,000 and

22   $7 million.  That's not the case.  The statute under the

23   emergency care out-of-network situation would require that

24   the plan pay the greater of in essence, the Medicare rate or

25   what the in-network rate would be under this plan.

1          Now, we don't know exactly what the in-network rate

2    of -- of compensation would be, but it's nowhere near the

3    number that the other side is talking about.  We believe that

4    the Medicare rate is about $13,000 or so.  The opposition

5    believes that's it's about $750-, or $800,000 or so.

6          There's no way that they'd get up to their -- you

7    know, million dollar number or anywhere near that number,

8    based upon in-network compensation rate.

9          So, again, we believe that the -- they're making a

10   lot more out of it.

11         And certainly, in light of the two motions to

12   dismiss that are currently pending, as well as now the third

13   issue, the subject matter jurisdictional issue, which clearly

14   is in the threshold -- it doesn't make sense to allow -- to

15   start doing things until we resolve those -- preliminary

16   issues.

17         THE COURT:  Let me turn back to Mr. Barbatsuly.

18         So what of defense counsel's point that even if --

19   even if you could show the ratification, it wouldn't matter

20   under the -- their alternative theory that if the plan

21   continues to exist basically in line with that provision of

22   the Affordable Care Act, it would still be grandfathered.

23   Why are we going down this ratification road if there's still

24   an alternate basis that knocks out your claim?

25         MR. BARBATSULY:  So I mean, first of all, the

1    argument, as we just heard it, the first time that it was

2    clearly articulated to us and, you know, obviously we didn't

3    articulate in the letter, but we -- I mean, basically what we

4    understand the fund is relying on for this alternative

5    argument is they produced to us a handful of documents

6    purporting to describe what's labeled as sterling plan.

7    They're minimal on their face.  We don't answer the question

8    whether the plan meets the grand- -- the separate independent

9    grandfathering requirements under the -- under the regulation

10   45 C.F.R. 147.140.  And in particular is there series of

11   things that can result -- each independently can result in

12   the loss of grandfathering, one of which is the elimination

13   of benefits.  Another is change in cost sharing and there --

14   there are a number of them.  And in particular what the

15   documents that we've been provided to this point do not

16   indicate is whether all or substantial all the benefits have

17   been eliminated to diagnose or treat a particular condition.

18          And we are also relying on the fact that just by

19   virtue of the dramatic underpayment that has occurred in our

20   case, it's indisputable evidence that they -- all or

21   substantially all of the benefits to diagnose particular

22   condition for the treatment for which Patient 1, that

23   Patient 1 received.

24          So our view is that the documents they provided

25   don't answer the question, number one.  And even if they did

1   answer the question, they've since lost grandfathering status

2   by the position they've taken in our case, which is that

3   essentially I -- you know, the overwhelming majority of the

4   treatments that was provided to Patient 1 for his almost

5   year-long stay while he was in -- you know, in distress is

6   not covered.

7           So that loses -- and on top of that, Aetna has told

8   us that they want -- of the 12,000, they want 8,000 back.  So

9   that's, you know, separately -- so all of these things that

10  have happened, we submit, you know, completely eviscerate the

11  grandfathering under the -- under the alternative prong that

12  they're relying on, 45 C.F.R. 147.40, which is why, you know,

13  we -- we suspected they were relying so heavily at the outset

14  on the CBA section, because we -- we assumed they just -- be

15  grandfathering under the alternative prong.

16          So it certainly matters, the status of the CBA

17  matters, and now we're being told on this call for the first

18  time that in addition to what they've presented, they may

19  have other CBAs that they're going to try to dig out to

20  further their grandfathering argument.  You know, so

21  that's -- that's just tells us that, you know, Your Honor was

22  absolutely right to order discovery on this question of

23  grandfathering, and that just tells us that discovery is,

24  indeed, needed on this question.

25          MR. HIRSCHHORN:  Your Honor, Russell Hirschhorn, if

1    I may be heard?

2              THE COURT:  Yeah.

3              MR. HIRSCHHORN:  I'm listening to the

4    back-and-forth between counsel for UBF and Aetna, and for

5    plaintiffs, and recognizing that Your Honor ordered --

6    previously ordered some discovery and what scope of -- what

7    at Court had in mind as pertains to the scope of that

8    discovery, I think the Court knows.

9              But -- but what we're talking about here

10   potentially is the scope of damages.  And to engage in

11   third-party discovery -- or any discovery for that matter --

12   at a time when there are mo- -- dispositive motions pending

13   and a -- a subject matter jurisdictional issue that is more

14   than plausible, that should be based, I think it's a waste of

15   resources on behalf of all parties -- the Court, I

16   respectfully request again that it we set some sort of

17   briefing schedule on that motion.

18             THE COURT:  All right.  I have carefully considered

19   the parties' submissions and of course carefully considered

20   their arguments today.

21             I'm going to allow the discovery that the plaintiff

22   seeks, and here's why.  I certainly appreciate, Mr. Hirsch's

23   [*sic*] that the defense perceives there may be a subject

24   matter challenge.  I also, though, at this point am in no

25   position to assess the relative merits or not of it.

1    Clearly, the plaintiff believes that it would be ready,

2    willing, and able to mount a significant challenge to it.

3          Stays in this district are heavily disfavored, in

4    any event, but I certainly recognize that subject matter

5    jurisdiction stands in something of a separate and unique

6    foot compared to other Rule 12 motions in that the Court must

7    always assess whether it has jurisdiction.

8          My problem is at this point, absent a motion, which

9    I will allow the defense to make, of course, I'm not in any

10   position to assess it, much less determine whether good cause

11   exists to stay discovery in light of it.

12         Moreover, I have already dealt with at the May 5th,

13   2016, conference the defendants' application to stay

14   discovery pending the resolution of the outstanding

15   Rule 12(b)(6) motions.

16         So I'm going to allow the discovery to go forward.

17         I appreciate the defendants' argument that (A) this

18   pertains to damages and that (B) there may be alternative

19   bases that may to some degree render the grandfathering issue

20   vis-à-vis the CBA moot.  But the defendants have put the

21   issue of the CBA and grandfathering into play, and the

22   plaintiff is fairly entitled to discovery on that, even if

23   there may be some alternate basis, which the plaintiff

24   disagrees there is, that would knock out the plaintiff's or

25   severely the plaintiff's claims.

1    So nothing I have heard persuades me that this is

2    not anything less than relevant discovery, and, in fact,

3    arguably is already covered by the scope of the Court's

4    May 5th, 2016, order which provided for discovery on the

5    question of whether the plan at issue is or is not

6    grandfathered under the Affordable Care Act.

7    Now, the concern I have is that this not turn into

8    runaway discovery on what should be a relatively narrow

9    question.  I would certainly anticipate, though, on the

10   question of ratification, unless I'm significantly mistaken,

11   which is always possible, I would expect that to be

12   answerable on the face of documents.  Either there would be

13   an actual ratification and minutes -- whether it's a board

14   meeting or a union trustees meeting that ratified it or some

15   other actual notice -- memorialization of ratification, I

16   would think that that would be sufficient on that issue.

17   Regarding the issue of when the CBA went into

18   effect, I'm going to authorize the written discovery that the

19   plaintiff seeks, but limited to not more than five document

20   requests to be served on each of the parties articulated in

21   plaintiff's June 3rd memo, and one notice of deposition for

22   each of the employers and the union.

23   I'm also going to impose a 90-day deadline to

24   complete that.  So the plaintiff is going to serve those

25   document production requests by June 28th, responses due

1   within 30 days, and this is going to be done on this point by

2   September 14th.  We'll have a status phone conference before

3   then, so if there are any particular difficulties, you folks

4   can apprise me of that.

5           Regarding the motion for -- to dismiss for lack of

6   subject matter jurisdiction, Mr. Hirsch, you tell me when you

7   think you can have that in.

8           MR. HIRSCHHORN:  My understanding, Your Honor, is

9   that motions are due 24 days before a motion date, which I

10  think realistically I think -- I think we need to get it in

11  by the July 8th date to -- the August 1st motion date.

12          THE COURT:  Correct.

13          MR. HIRSCHHORN:  Which is more than doable.

14          THE COURT:  Okay.  So July 8th.  Opposition then

15  due July 18th.  And reply July 25th.

16          Okay.

17          MR. HIRSCHHORN:  Your Honor, can -- Russell

18  Hirschhorn.  May I ask a point of clarification on

19  Your Honor's order?

20          THE COURT:  Mm-hmm.  Go ahead.

21          MR. HIRSCHHORN:  With respect to the document

22  requests, I represent defendant Omni -- which is plan

23  administrator.  We have no relevant relating to this issue as

24  to whether plaintiff is grandfathered, and I just would like

25  clarification -- one to make clear that the document requests

 1  are not intended for defendant Omni.

 2            THE COURT:  No, I mean although you were quite

 3  vocal during this conference, which is all fair advocacy,

 4  Mr. Barbatsuly, do you agree that Omni does not really

 5  have -- on this issue of the grandfathering, doesn't really

 6  have a -- a horse in the race.  Right?

 7            MR. BARBATSULY:  Well, I don't know the answer to

 8  that question, and, you know, we -- we, you know, as the

 9  designated plan administrator that's specifically --

10            THE COURT:  They would have ratify- -- as the plan

11  administrator, though, they wouldn't have ratified it.  They

12  don't -- if I -- unless my understanding of ERISA is

13  seriously mistaken, and they become relevant after the plan

14  has actually been ratified to administer the now-ratified

15  plan.

16            MR. HIRSCHHORN:  It's -- Your Honor, it's Russell

17  Hirschhorn, the collective bargaining agreement that gets

18  ratified --

19            THE COURT:  I'm sorry.  --

20            MR. HIRSCHHORN:  -- it's not --

21            THE COURT:  Right.  It's -- that's right.  I'm

22  sorry, I misspoke.

23            Yeah, I mean, look, no, I don't see -- if

24  Mr. Barbatsuly, if you want to come back to me and make an

25  argument as to why you think either (A) the discovery that

1  you got was insufficient or (B) why you think it's

2  insufficient and Omni is going to have that relevant

3  discovery, quite honestly, I'd be really surprised by that as

4  the plan administrator wouldn't -- as Mr. Hirsch points out,

5  what you're really talking about is ratification of the CBA.

6  But you can come back and let know why you would need

7  discovery from them.

8         But at least for now, I'm excluding Omni from the

9  discovery on this issue.

10         MR. BARBATSULY:  Thank you, Your Honor.

11         THE COURT:  All right.  What I'm going to do is I'm

12  going to ask you folks to please hold on.  What I would

13  suggest we do is talk again in or around the second week of

14  September, right around the end date for this limited

15  discovery that we're talking about.  So let me do this, I'm

16  going to put you -- go ahead, did somebody want to say

17  something?

18         MR. LISTHAUS:  Yes, please, Your Honor, Bruce

19  Listhaus is speaking here.  One point that I -- from --

20  addressed is that plaintiffs concede that they need to amend

21  their complaint at this point, second amended complaint.  And

22  in order to do that, they really need to put in a motion to

23  amend complaint.  And, you know -- so we're talking about now

24  I believe another motion that has to go in there before they

25  can even pretend that they've got subject matter jurisdiction

1    here.

2              THE COURT:  Well, this is the first I'm hearing of

3    this.

4              So, Mr. Barbatsuly, do you want to respond?

5              MR. BARBATSULY:  Well, as you know, you can -- in

6    the letter that the assignment that we provided to the -- to

7    defense was actually signed by the -- by the wife.  We had

8    been operating under, you know, a misimpression that the

9    assignment had been signed by the patient because of the name

10   and it had been -- the name had been -- was the name.

11             We -- you know, and in response to the -- you know,

12   the early information exchange in the meet-and-confers, we

13   provided the -- the correct -- we provided assignment,

14   counsel for UBF said that was not -- didn't pertain to the

15   patient and they were correct, and we promptly supplied the

16   actual assignment, which is the -- was the one that was

17   executed by -- by the spouse.

18             So the only change that we would contemplate, if

19   needed, by way of amendment would be to actually edit the

20   complaint to reflect that the assignment was signed by the

21   spouse.  It doesn't impact the jurisdictional argument that

22   counsel for Omni has identified and so insofar as that --

23   yeah, I would submit that that jurisdictional issue be, you

24   know, to the extent obviously, if they consented to our

25   amendments, that would moot this issue, but to the extent

1    they do not consent, the jurisdictional argument be done by

2    way of -- you know, that our motion for leave would be by way

3    of cross-motion in response to jurisdiction.  So I think it

4    can be all briefed at the same time.

5         The only argument that I would anticipate that

6    would be made in response would be to utility, because they

7    would argue that the wife signing the assignment, you know --

8    meant that there was no jurisdiction, so I don't think it

9    changes the analysis that's going to be required to be made

10   by the Court.  So, you know, to the extent that there needs

11   to be a motion, you know, it ought to be part of the same

12   round of briefing that Your Honor just identified.

13         MR. LISTHAUS:  Well, at this moment we do not have

14   a complaint that confers jurisdiction upon the Court.  And

15   counsel is quite correct, as he pointed out in the joint

16   letter submitted on Friday, that we will absolutely be

17   opposing that motion to amend as being futile.

18         THE COURT:  Well, we could do that --

19       (Simultaneous conversation)

20         THE COURT:  You could do that and present it as a

21   cross-motion.  I don't see -- I don't see why it can't be

22   disposed of most efficiently that way.

23         All right, counsel, please hold, we'll get you a

24   date for that phone conference.

25              (Conclusion of proceedings at 3:42 P.M.)

1                          Certification

2         I, SARA L. KERN, Transcriptionist, do hereby certify

3    that the 27 pages contained herein constitute a full, true,

4    and accurate transcript from the official electronic

5    recording of the proceedings had in the above-entitled

6    matter; that research was performed on the spelling of proper

7    names and utilizing the information provided, but that in

8    many cases the spellings were educated guesses; that the

9    transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11        I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   S/ *Sara L. Kern*                    17th of June, 2016

19   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
     Signature of Approved Transcriber              Date

20

21

     Sara L. Kern, CET**D-338
22   King Transcription Services
     3 South Corporate Drive, Suite 203
23   Riverdale, NJ  07457
     (973) 237-6080

24

25