## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

HUMC OPCO LLC, d/b/a CAREPOINT
HEALTH - HOBOKEN UNIVERSITY
MEDICAL CENTER,

      Plaintiff,

v.

UNITED BENEFIT FUND, AETNA
HEALTH INC., and OMNI
ADMINISTRATORS INC.,

      Defendants.

Civil Action No.
2:16-cv-00168 (KM/MAH)

---

**BRIEF OF PLAINTIFF HUMC OPCO, LLC d/b/a CAREPOINT HEALTH –
HOBOKEN UNIVERSITY MEDICAL CENTER IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

---

 

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*HUMC OPCO, LLC,*
*d/b/a CarePoint Health – Hoboken*
*University Medical Center*

ANTHONY P. LA ROCCO
GEORGE P. BARBATSULY
STACEY A. HYMAN
    On the Brief

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND ........................................................................................3

A.    Summary of HUMC's Claims .........................................................3

B.    The Administrative and Supplemental Administrative Record ......................4

C.    In Patient 1's Incapacity, Patient 1's Spouse Assigns to HUMC Patient 1's Benefits Payable under the Plan ...................................................5

D.    The Plan of Benefits Authorized Patient 1's Spouse to Assign the Plan's Benefits to HUMC ............................................................8

E.    Throughout Patient 1's Hospitalization and Defendants' Processing of Patient 1's Claim, Defendants Never Objected to the Fact that Patient 1's Spouse Had Assigned HUMC Patient 1's Benefits under the Plan ...............9

F.    After Patient 1's Death, C.L. Signs Another AOB in Favor of HUMC........12

G.    The Proposed Second Amended Complaint.................................................13

LEGAL ARGUMENT .............................................................................16

POINT ONE............................................................................................16

DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED ....................16

A.    Standard of Review..........................................................................16

B.    Defendants' Purported "Facial Attack" on Subject Matter Jurisdiction Fails Because the Proposed Second Amended Complaint Sufficiently Pleads that HUMC Has Standing...................................................17

C.    Defendants' Factual Attack on Subject Matter Jurisdiction Fails Because the Record Evidence Establishes that HUMC Has Standing ..............................18

# TABLE OF CONTENTS (cont'd)

**Page**

1.   ERISA plan benefits may be assigned to a health care provider ........19

2.   As a matter of federal common law, C.L. validly assigned Patient 1's rights to benefits under the Plan to HUMC during Patient 1's incapacity and again after his death ....................................................20

3.   The Plan itself establishes that HUMC has standing .........................25

4.   An extended course of dealing further establishes that HUMC has standing.................................................................................................28

POINT TWO ...................................................................................................31

THE COURT SHOULD GRANT HUMC'S CROSS-MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT ....................................................31

A.   The Liberal Standard of Federal Rule of Civil Procedure 15(a) For Leave to Amend Governs Plaintiff's Cross-Motion.....................................................31

B.   HUMC's Proposed Second Amended Complaint is Not Futile ...................32

CONCLUSION ...................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alvin v. Suzuki,
227 F.3d 107 (3d Cir. 2000)......................................................................31

Ambulatory Surgical Center of N.J. v. Horizon Healthcare Servs. Inc.,
Civ. A. No. 07–2538, 2008 WL 8874292 (D.N.J. Feb. 21, 2008) .........................28

Bell v. Hood,
327 U.S. 678 (1946).............................................................................17

Bollman Hat Co. v. Root,
112 F. 3d 113 (3d Cir. 1997)...................................................................26

B-Sharp Musical Prods., Inc. v. Haber,
899 N.Y.S. 2d 792 (N.Y. App. Div. 2010) ..............................................22

CardioNet, Inc. v. Cigna Health Corp.,
751 F.3d 165 (3d Cir. 2014).....................................................................19

Cornell & Co. v. Occupational Safety & Health Review Comm 'n,
573 F. 2d 820 (3d Cir. 1978).....................................................................31

Cromwell v. Equicor-Equitable Hca Corp.,
944 F.2d 1272 (6th Cir. 1991).............................................................*passim*

Dole v. Arco Client Co.,
921 F.2d 484 (3d Cir. 1990).....................................................................31

Drzala v. Horizon Blue Cross Blue Shield,
Civ. A. No. 15-8392, 2016 WL 2932545 (D.N.J. May 18, 2016)..........................23

Fiala v. Bickford Senior Living Grp., LLC,
32 N.E. 3d 80 (Ill. App. Ct. 2015) ...........................................................22

Focus v. Allegheny Cnty. Court of Common Pleas,
75 F.3d 834 (3d Cir.1996).......................................................................16

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Cases**

Foman v. Davis,
371 U.S. 178 (1962)................................................................32

Four Winds Hosp. v. Keasbey,
459 N.Y.S.2d 68 (N.Y. 1983) ..............................................22

Gould Elecs. Inc. v. U.S.,
220 F.3d 169 (3d Cir. 2000)..................................................16

Gregory Surgical Servs. v. Horizon Blue Cross Blue Shield of NJ,
Civ. A. No. 06-0462, 2007 WL 4570323 (D.N.J. Dec. 26, 2007)............................28

Hallock v. New York,
474 N.E. 2d 1178 (N.Y. 1984)...............................................23

Hermann Hosp. v. MEBA Med. & Benefits Plan,
845 F.2d 1286 (5th Cir.1988) ...............................................20

Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank,
774 N.E. 696 (N.Y. 2002) .....................................................23

In re Coven, Civ. A. No. 06-4323,
2007 WL 1160332  (D.N.J. Apr. 17, 2007).............................22

Johnson v. Kindred Healthcare, Inc.,
2 N.E. 849 (Mass. 2014) ........................................................23

Keever v. NCR Pension Plan,
Case No. 3:15-cv-196,
2015 U.S. Dist. LEXIS 169019 (S.D. Oh. Dec. 15, 2015) ................................23, 33

Kehr Packages, Inc. v. Fidelcor, Inc.,
926 F.2d 1406 (3d Cir. 1991)..................................................17

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Cases**

Kiser v. Gen. Elec. Corp.,
831 F.2d 423 (3d Cir. 1987)......................................................................32

Lincoln Ben. Life Co. v. AEI Life, LLC, et al.,
800 F.3d 99 (3d Cir. 2015)........................................................................17

Merrick v. UnitedHealth Group, Inc.,
2016 WL 1229616 (S.D.N.Y. Mar. 25, 2016)...................................20, 22

Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C.,
2013 WL 4080947 (Sup. Ct. N.J., App. Div. Aug. 14, 2013) .................22

North Jersey Brain & Spine Ctr. v. Aetna, Inc.,
801 F.3d 369 (3d Cir. 2015)...........................................................19, 20, 23

Oran v. Stafford,
34 F. Supp. 2d 906 (D.N.J. 1999) .............................................................32

Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plant,
388 F.3d 393 (3d Cir. 2004)......................................................................19

Petruska v. Gannon Univ.,
462 F.3d 294 (3d Cir. 2006)......................................................................16

Premier Health Ctr., P.C. v. UnitedHealth Group,
No. 11-425, 2012 U.S. Dist. LEXIS 44878 (D.N.J. Apr. 4, 2012) .............16, 28, 29

Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell,
863 F. Supp. 135 (S.D.N.Y. 1994) ...............................................24, 25, 33

Scott v. Regions Bank,
702 F. Supp. 2d 921 (E.D. Tenn. 2010)............................................24, 33

Shane v. Fauver,
213 F.3d 113 (3d Cir. 2000)......................................................................32

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Cases**

Storino v. Borough of Point Pleasant Beach,
322 F.3d 293 (3d Cir. 2003) ........................................................................ 16

Thompson v. Eva's Village and Sheltering Program,
Civ. A. No. 04-2548, 2006 WL 469938 (D.N.J. 2006) ........................... 32

United States ex rel. Atkinson v. Pa. Shipbuilding Co.,
473 F.3d 506 (3d Cir. 2007) ........................................................................ 17

Voilas v. Gen. Motors Corp.,
173 F.R.D. 389 (D.N.J. 1997) ...................................................................... 31

Warth v. Seldin,
422 U.S. 490 (1975) ....................................................................................... 16

Winer Family Trust v. Queen,
503 F.3d 319 (3d Cir. 2007) ........................................................................ 32

**Statutes**

29 U.S.C. § 1001 *et seq.* ............................................................................ 1, 4

29 U.S.C. § 1001(b) ...................................................................................... 19

29 U.S.C. § 1132(a)(1)(B) ............................................................................ 4

29 U.S.C. § 1133 ............................................................................................ 4

N.J.S.A 3B:5-2 through N.J.S.A 3:5-14 ................................................... 25

**Rule**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 16

## PRELIMINARY STATEMENT

Plaintiff HUMC OPCO LLC, d/b/a CarePoint Health – Hoboken University Medical Center ("HUMC" or "Plaintiff"), submits this brief in opposition to the motion to dismiss for lack of subject matter jurisdiction of Defendants United Benefit Fund ("UBF"), Aetna Health Inc. ("Aetna") and Omni Administrators Inc. ("Omni") (collectively, "Defendants"), and in support of Plaintiff's cross-motion for leave to file a Second Amended Complaint.

HUMC, which operates a community hospital located in Hoboken, New Jersey, brings this action based on violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* In the Amended Complaint and proposed Second Amended Complaint, HUMC contends that Defendants substantially underpaid HUMC under the UBF-sponsored Plan of Benefits ("Plan") for a claim related to a patient's ("Patient 1") very serious emergency that required 358 consecutive days of treatment at HUMC.

In the course of discovery in this action, it became apparent that Patient 1's wife (hereinafter referred to as "C.L."), rather than Patient 1 himself, executed the assignment of benefits ("AOB") conferring standing upon HUMC to bring this ERISA action against Defendants, as Patient 1 was incapacitated and unable to do so throughout his extended stay at HUMC. Seizing on the revelation that Patient 1 did not personally sign an assignment of benefits in his incapacity, Defendants now

seek dismissal of this entire action purportedly for lack of subject matter jurisdiction. Defendants also resist Plaintiff's request for leave to further amend its complaint to correctly allege that C.L. (rather than Patient 1) assigned Patient 1's benefits under the Plan to HUMC.

Defendants argue that C.L. was not authorized to assign Patient 1's benefits to HUMC, but this position is baseless and must be rejected. As a matter of federal common law, C.L. validly assigned to HUMC Patient 1's rights to benefits under the Plan, both during the period of Patient 1's incapacity and again following his death, as Patient 1's successor in interest. What is more, the express language of the Plan itself plainly authorized C.L. to do so. And throughout Defendants' extended course of dealing with HUMC and C.L. regarding the processing of HUMC's claim for benefits on behalf of Patient 1, Defendants never once objected to the fact that C.L. had assigned Patient 1's benefits to HUMC, even though they were fully aware she had done so. All of these facts and others confirm that C.L. properly assigned Patient 1's benefits under the Plan and that, as the result of that assignment, HUMC acquired derivative standing to sue Defendants for unpaid benefits under ERISA. Thus, for all of these reasons and others, discussed more fully below, the Court should deny Defendants' motion to dismiss and grant Plaintiffs' cross-motion for leave to file its proposed Second Amended Complaint.

# BACKGROUND

## A.    Summary of HUMC's Claims

HUMC operates a licensed general acute care hospital in Hoboken, New Jersey.  From May 29, 2014, until May 22, 2015, HUMC provided extensive emergent, medically necessary medical treatment to Patient 1.  (Declaration of Anthony P. La Rocco, Esq. ("La Rocco Decl.") at Ex. A,[1] ¶¶ 2, 17).  Patient 1 presented to HUMC's Emergency Department, was admitted to the hospital for a life-threatening condition, and continued to receive medically necessary treatment from HUMC for 358 consecutive days thereafter.  (Id.).  For his lengthy in-patient stay and the medically necessary care he received at HUMC, Patient 1 incurred total charges in the amount of $7,702,491.32.  (Id., ¶ 3).  Of that amount, UBF, as Patient 1's insurer, is liable to HUMC, as Patient 1's assignee, for at least $789,446.88, representing the benefits amounts payable under the UBF-sponsored Plan of Benefits.  (Id., ¶ 4).  Because, upon information and belief, the plan is not "grandfathered" under the Affordable Care Act, the amounts payable under the Plan are likely much higher.  (Id.).

---

[1]  A proposed Second Amended Complaint in support of HUMC's Cross-Motion Motion for Leave to File a Second Amended Complaint (the "Cross-Motion") is attached as Exhibit A to the La Rocco Declaration.

To date, UBF, through Omni and Aetna, has refused to reimburse HUMC more than $12,907.18. (Id., ¶ 5). Moreover, Defendants have refused to provide HUMC any meaningful avenue of review of UBF's underpayments. (Id.).

Even worse, Aetna sent HUMC two separate demands for alleged overpayments relating to the treatment HUMC provided to Patient 1 in the amounts of $4,366.44 and $4,270.37, which leaves the total amount reimbursed to HUMC at $4,270.37. (Id., ¶ 5; La Rocco Decl., Ex. B at UBF-AETNA000512, 000516-17; 000521-523).

HUMC brings this action under ERISA, 29 U.S.C. § 1001 *et seq*. (ECF Dkt. Nos. 1, 4; La Rocco Decl., Ex. A). In Count One of its Amended Complaint and proposed Second Amended Complaint, HUMC brings a claim against UBF for unpaid benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (ECF Dkt. No. 4, ¶¶ 41-54; La Rocco Decl., Ex. A, ¶¶ 55-68). In Counts Two and Three, HUMC alleges that all Defendants breached their fiduciary duties to HUMC under ERISA Section 404, 29 U.S.C. § 1104, and failed to provide HUMC with a full and fair review of Patient 1's claim required by ERISA Section 503, 29 U.S.C. § 1133. (ECF Dkt. No. 4, ¶¶ 55-72; La Rocco Decl., Ex. A, ¶¶ 69-86).

## B.    The Administrative and Supplemental Administrative Record

Following an initial case management conference on May 5, 2016, the Court authorized discovery, inter alia, regarding the administrative record of materials

that were before the Defendants when reviewing the benefit decision at issue in this case, and the Court directed the parties to confer on what materials are fairly within the scope of the administrative record.  (ECF Dkt. No. 38).  Pursuant to that directive, on May 26, 2016, UBF produced 1,724 pages of documents (hereinafter referred to as the "Administrative Record") that it contended were fairly within the scope of the administrative record.  (La Rocco Decl., ¶ 5).  After reviewing UBF's production, Plaintiff's counsel produced an additional 521 pages of documents (hereinafter referred to as the "Supplemental Administrative Record") that it contends were also fairly within the scope of the administrative record.  (La Rocco Decl., ¶14).[2]

### C.    In Patient 1's Incapacity, Patient 1's Spouse Assigns to HUMC Patient 1's Benefits Payable under the Plan

As reflected in the Administrative Record and Supplemental Administrative Record, Patient 1 was unconscious and comatose upon his admission to HUMC on May 29, 2014, and throughout his nearly year-long hospitalization.  Upon Patient 1's admission to HUMC on May 29, 2014, C.L., as Patient 1's spouse, signed "General Admission Consent" and "Assignment of Benefits" ("AOB") forms on Patient 1's behalf. (La Rocco Decl., Ex. B at UBF-AETNA000926-927).   The

---

[2] To date, counsel for UBF has not disputed that the documents contained within the Supplemental Administrative Record produced by HUMC are also fairly within the scope of the administrative record.  (La Rocco Decl., ¶ 14).

"unable to consent because" box on the AOB signed on May 29, 2014, is checked

and the stated reason is "CODE BAT," which was, in 2014, a commonly used term

in HUMC's Emergency Room for when patients could not sign an AOB due to

having stroke-like symptoms.  (Declaration of Sean Hayes ("Hayes Decl."), ¶3).

The AOB form executed by Patient 1's spouse on May 29, 2014, assigned to

HUMC all of Patient 1's rights under the Plan.  Among other things, it provides:

> I HEREBY ASSIGN TO THE HOSPITAL, ALL OF MY RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTION, INTERESTS OR RECOVERY, TO ANY AND ALL RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTIONS, INTERESTS, OR RECOVERY OF ANY TYPE WHATSOEVER RECEIVABLE BY ME OR ON MY BEHALF ARISING OUT OF ANY POLICY OF INSURANCE, PLAN, TRUST, FUND, OR OTHERWISE PROVIDING HEALTH CARE COVERAGE OF ANY TYPE TO ME (OR TO ANY OTHER THIRD PARTY RESPONSIBLE FOR ME) FOR THE CHARGES FOR SERVICE RENDERED TO ME BY THE HOSPITAL. THIS INCLUDES, WITHOUT LIMITATION, ANY PRIVATE OR GROUP HEALTH/HOSPITALIZATION PLAN. AUTOMOBILE LIABILITY, GENERAL LIABILITY, PERSONAL INJURY PROTECTION, MEDICAL PAYMENTS, UNINSURED OR UNDERINSURED MOTOR VEHICLES BENEFITS, SETTLEMENTS/JUDGMENTS/VERDICTS, SELF-FUNDED PLAN, TRUST, WORKERS COMPENSATION, MEWA, COLLECTIVE, OR ANY OTHER THIRD-PARTY PAYOR PROVIDING HEALTH CARE COVERAGE OF ANY TYPE TO ME (OR TO ANY OTHER THIRD PARTY RESPONSIBLE FOR ME) FOR THE CHARGES FOR SERVICES RENDERED TO ME BY THE HOSPITAL [COLLECTIVELY, 'COVERAGE SOURCE'].
>
> I AUTHORIZE AND DIRECT PAYMENT BE MADE BY ANY AND ALL COVERAGE SOURCE DIRECTLY TO THE HOSPITAL OF ALL BENEFITS, PAYMENTS, MONIES,

CHECKS, FUNDS, WIRE TRANSFERS OR RECOVERY OF ANY KIND WHATSOEVER FROM ANY COVERAGE SOURCE. I ALSO AGREE TO ASSIST THE HOSPITAL IN PURSUING PAYMENT FROM ANY COVERAGE SOURCE. THIS INCLUDES, WITHOUT LIMITATION, SIGNING DOCUMENTS REQUESTED OR NEEDED TO PURSUE CLAIMS AND APPEALS, GETTING DOCUMENTS FROM COVERAGE SOURCE, OR OTHERWISE TO SUPPORT PAYMENT TO THE HOSPITAL. I ALSO DIRECT AND AGREE THAT ANY PAYMENTS OF ANY KIND (E.G., CHECKS, FUNDS, PAYMENTS, MONIES, BENEFITS OR RECOVERY FOR COVERAGE OF SERVICES BY THE HOSPITAL THAT IS SENT DIRECTLY TO ME (OR TO ANOTHER THIRD PARTY RESPONSIBLE FOR ME) WILL BE SENT AND TURNED OVER IMMEDIATELY BY ME TO THE HOSPITAL, THROUGH WHATEVER MEANS NECESSARY.   THIS INCLUDES, WITHOUT LIMITATION, ME AND IF NEEDED ANY GUARDIAN ENDORSING OVER ANY CHECKS AND/OR OTHER DOCUMENTS TO THE HOSPITAL.   I ALSO UNDERSTAND THAT IF I FAIL TO TURN OVER TO THE HOSPITAL ANY SUCH PAYMENTS SENT DIRECTLY TO ME (OR TO ANOTHER THIRD PARTY RESPONSIBLE FOR ME), I WILL BE FINANCIALLY RESPONSIBLE TO THE HOSPITAL FOR THE AMOUNT OF SUCH PAYMENTS, AND I MAY ALSO BE SUBJECT TO CRIMINAL PROSECUTION TO THE FULLEST EXTENT PERMITTED BY LAW.

I HEREBY AUTHORIZE AND DESIGNATE THE HOSPITAL, AS MY AUTHORIZED AGENT AND REPRESENTATIVE TO ACT ON MY BEHALF WITH RESPECT TO ALL MATTERS RELATED TO ALL OF MY RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTION, INTERESTS OR RECOVERY ARISING OUT OF ANY COVERAGE SOURCE. THIS INCLUDES, WITHOUT LIMITATION, THE HOSPITAL REQUESTING VERIFICATION OF COVERAGE/PRE-CERTIFICATION/AUTHORIZATION, FILING PRE-SERVICE AND POST-SERVICE CLAIMS AND APPEALS, RECEIVING ALL INFORMATION, DOCUMENTATION, SUMMARY PLAN DESCRIPTIONS, BARGAINING AGREEMENTS, TRUST

AGREEMENTS, CONTRACTS, AND ANY INSTRUMENTS UNDER WHICH THE PLAN IS ESTABLISHED OR OPERATED, AS WELL AS RECEIVING ANY POLICIES, PROCEDURES, RULES, GUIDELINES, PROTOCOLS OR OTHER CRITERIA CONSIDERED BY THE COVERAGE SOURCE, IN CONNECTION WITH ANY CLAIMS, APPEALS, OR NOTIFICATIONS RELATED TO CLAIMS OR APPEALS.

The Supplemental Administrative Record produced by HUMC further demonstrates that C.L. signed Aetna's standard "Authorized Representative Request" ("ARR") form on February 17, 2015, in which C.L. expressly authorized HUMC and its affiliates to appeal any adverse benefits determination related to Patient 1's HUMC claim. (La Rocco Decl., Ex. H, at HUMC 00053-57).

### D. The Plan of Benefits Authorized Patient 1's Spouse to Assign the Plan's Benefits to HUMC

The Supplemental Administrative Record also contains the full Plan of Benefits related to Patient 1's claim, which authorized Patient 1's spouse to assign the Plan's benefits to HUMC. (La Rocco Decl., Ex. H, at HUMC 00058-140). Specifically, Section 12 of the Plan contains an "Assignment of Benefits" provision that states that "[b]enefits for medical expenses covered under this Plan may be assigned by a Covered Person to the provider." (Id. at HUMC 00110). "Covered Person" is defined under the Plan as "any Participant and his or her eligible Dependents when properly enrolled in the Plan as a new hire, enrolled during the open enrollment period or allowed to enroll because of a qualifying

event such a birth, marriage or adoption …" and "Dependent" is defined as "[y]our legal Spouse when residing in the United States …." (Id. at HUMC 00063-00064).

Section 12 also contains an "Appointment of Authorized Agent" provision that states:

> A Covered Person is permitted to appoint an authorized representative to act on his or her behalf with respect to a benefit claim or appeal of a denial . . . To appoint such a representative, the Covered Person must complete a form which can be obtained from the Plan Administrator or the third party administrator. *However, in connection with a claim involving urgent care, the Plan will permit a health care professional with knowledge of the Covered Person's medical condition to act as the Covered Person's authorized representative without completion of this form.* In the event a Covered Person designates an authorized representative, all future communications from the Plan will be with the representative, rather than the Covered Person, unless the Covered Person directs the Plan Administrator, in writing, to the contrary.

(Id. at HUMC 000113) (emphasis added).

## E.    Throughout Patient 1's Hospitalization and Defendants' Processing of Patient 1's Claim, Defendants Never Objected to the Fact that Patient 1's Spouse Had Assigned HUMC Patient 1's Benefits under the Plan

As reflected in the Administrative and Supplemental Administrative Record, throughout Patient 1's nearly year-long hospitalization at HUMC, Defendants were fully aware of the fact that Patient 1's spouse had executed the "General Admission Consent" and AOB forms while Patient 1 was incapacitated, and had assigned to HUMC Patient 1's claim for benefits under the Plan. Importantly, HUMC and Defendants exchanged numerous pages of correspondence regarding

9

Patient 1's claim and other non-claim related issues after Patient 1's spouse had executed the initial AOB form on May 29, 2014.  For example, the Administrative Record contains several "Explanation of Benefits" documents (La Rocco Decl., Ex. B, at UBF-AETNA000292-000471, 001840-001869), including Aetna's $12,907.18 payment for Patient 1's claim.  (Id. at UBF-AETNA001840). The Supplemental Administrative Record also contains numerous approval and denial letters from Aetna to HUMC, beginning on January 21, 2015 (La Rocco Decl., Ex. H at HUMC 00231-00327), and an e-mail between HUMC and Omni regarding HUMC's appeal of Defendants' underpayment of Patient 1's claim (Id. at HUMC 00334-00335).

The Supplemental Administrative Record also contains non-claim related correspondence and documents related to Defendants' erroneous termination, and reinstatement of Patient 1's Plan coverage.  (La Rocco Decl., Ex. H at HUMC 00171-00188, 00341-00521).  For example, in or around February 2015, Aetna informed the HUMC case manager handling Patient 1's claim, that Aetna learned on February 10, 2015, that Patient 1's coverage under the Plan had terminated. (Hayes Decl., ¶ 4).  On February 13, 2015, Sean Hayes, Senior Vice President Revenue Cycle for Ensemble Health Partners, on behalf of Patient 1, emailed Jeanna Talamo, UBF's Office Manager, Administrator and Custodian of Records, regarding the initial Plan termination notice of Omni.  (Id., ¶¶ 4-5).  Omni dated

10

the notice May 15, 2014, which purported to terminate Patient 1's Plan benefits as of April 30, 2014 – one month *prior* to his admission at HUMC, and provided instructions for continued coverage under COBRA. (Hayes Decl., ¶ 5-6). Mr. Hayes informed Defendants that the termination date was mistaken because, according to Patient 1's spouse and Patient 1's last paystubs, Patient 1 worked until the day he was admitted to HUMC. (Hayes Decl., ¶ 5). Mr. Hayes, on behalf of Patient 1, worked with Defendants to reinstate Patient 1's COBRA coverage. (La Rocco Decl., Ex. H at HUMC 00341-00521, 00178-00188; Hayes Decl., ¶¶ 4-14). While UBF initially refused to help Mr. Hayes resolve the issue, UBF began to cooperate with Mr. Hayes and C.L. to resolve the matter after Mr. Hayes threatened to involve the New Jersey Department of Banking and Insurance and U.S. Department of Labor. (Hayes Decl., ¶¶ 8, 9).

On February 25, 2015, Mr. Hayes faxed Patient 1's payroll records and other proof that Patient 1 remained actively employed through the date of his admission to HUMC on May 29, 2014. (Id., ¶ 10). Later that day, Ms. Talamo of UBF wrote Mr. Hayes stating that she "[r]eceived info this morning, his term date should be 5/31/2014. We will correct date and print a new COBRA letter which will be mailed certified today to [Patient 1's spouse]." (Id.). In response, Mr. Hayes stated that "[s]ince I have authorization on her behalf and since you sent me the last one, do you mind emailing it to me"? (Id., ¶ 11). Ms. Talamo replied by e-

mailing Mr. Hayes a copy of the corrected notice of termination and COBRA letter that day.  (Id., ¶ 12).  C.L., on Patient 1's behalf, executed the corrected COBRA documents, dated February 25, 2015, which were then submitted by Mr. Hayes to UBF.  (Id., ¶ 13).  Patient 1's coverage was then retroactively reinstated from November 1, 2012, through May 31, 2014, under the Plan, and then under COBRA from June 1, 2014, onward.  (Id., ¶ 14).

Throughout their extended course of dealings with Mr. Hayes and C.L. regarding Patient 1's coverage, Defendants were well aware that Patient 1 was comatose and incapacitated when he was admitted to HUMC, and that his spouse, C.L., signed the AOB on his behalf.  (Id., ¶ 14).  At no time did anyone at Aetna, UBF or Omni ever advise Mr. Hayes that the AOB that Patient 1's spouse had signed was insufficient, nor did they ever refuse to communicate with Mr. Hayes because Patient 1 did not himself sign an AOB or because Patient 1's spouse did so instead.  (Id.).

**F.    After Patient 1's Death, C.L. Signs Another AOB in Favor of HUMC**

Patient 1 died on May 30, 2015.  After Patient 1's death, C.L. executed a new AOB form in favor of HUMC on June 9, 2016.  The new AOB that Patient 1's spouse signed on June 9, 2016, like the AOB she executed on May 29, 2014, again assigned to HUMC all of her rights under the Plan.  In addition to the above-

quoted language contained in the May 29, 2014, AOB, the AOB that C.L. executed

on June 9, 2016, also stated as follows:

> **THIS IS A DIRECT ASSIGNMENT OF ANY AND ALL OF MY RIGHTS TO RECEIVE BENEFITS ARISING OUT OF ANY COVERAGE SOURCE.** I UNDERSTAND THAT THIS ASSIGNMENT OF BENEFITS IS IRREVOCABLE. THIS ASSIGNMENT OF BENEFITS FULLY AND COMPLETELY ENCOMPASSES ANY LEGAL CLAIM I MAY HAVE AGAINST ANY COVERAGE SOURCE, INCLUDING, BUT NOT LIMITED TO, MY RIGHTS TO APPEAL ANY DENIAL OF BENEFITS ON MY BEHALF, TO REQUEST AND OBTAIN PLAN DOCUMENTS, TO PURSUE LEGAL ACTION AGAINST ANY COVERAGE SOURCE, AND/OR TO FILE A COMPLAINT WITH THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE.

(ECF Dkt. No. 49-3 ("C.L. Decl."), Lopez Cert., Ex. 4) (emphasis in original).

## G.    The Proposed Second Amended Complaint

During a telephone meet and confer on May 16, 2016, counsel for HUMC

agreed to produce to Defendants the assignment of benefits in HUMC's favor. (La

Rocco Decl., ¶ 7).  On May 24, 2016, HUMC produced what it understood to be

the AOB at issue.  (La Rocco Decl., Ex. C).  However, by letter dated June 2,

2016, counsel for UBF pointed out that the AOB that HUMC had produced (and

upon which HUMC had relied in preparing the Amended Complaint) related to a

different patient with the same name as Patient 1.  (La Rocco Decl., Ex. D).  When

counsel for UBF pointed out this error, HUMC promptly supplied the correct

AOB, which was actually executed by Patient 1's spouse rather than Patient 1 due

to Patient 1's incapacitation at the time of his admission and throughout his hospitalization.  (La Rocco Decl., Ex. E).

On June 3, 2016, counsel for UBF sent Plaintiff's counsel a letter threatening to file Rule 11 sanctions if Plaintiff did not immediately withdraw the Amended Complaint.  (La Rocco Decl. Ex. F).  The June 3 letter argued that Plaintiff failed to provide a "valid assignment by Patient 1" because Patient 1's spouse, rather than Patient 1, executed the AOB during Patient 1's incapacity. (Id.).  The June 3 letter even went so far as to question Patient 1's marital status, stating that the AOB provided by Plaintiff was signed by someone "who purports to be [Patient 1's] wife" and "we have no proof that she is even [Patient 1's] wife." (Id.).  By letter dated June 24, 2016, HUMC's counsel forwarded Defendants' counsel a copy of a declaration of Patient 1's spouse and including a copy of their marriage certification, dispelling any suggestion that Patient 1 and C.L. were not married.  (ECF Dkt. No. 49-3).[3]

On June 14, 2016, counsel for the parties participated on a telephone status conference call with the Honorable Michael A. Hammer, U.S.M.J.  (Declaration of Mark H. Ginsberg ("Ginsberg Decl."), Ex. C).  During this call, Defendants argued

_____

[3] Footnote 1 of the June 3 letter also stated that "UBF terminated coverage of [C.L.] in 2012 for her failure to provide an auditor with proof of her alleged marriage to [Patient 1]."  (Id.).  By letter dated June 24, 2016, HUMC's counsel requested that UBF provide proof of this assertion.  (La Rocco Cert., Ex. G). Defendants have not responded to this request.  (La Rocco Decl., ¶ 12).

that HUMC lacked statutory standing because they did not possess a valid AOB signed by Patient 1.  (Id. at 5:13-6:9).  Counsel for HUMC replied that HUMC intended to move for leave to file a Second Amended Complaint to correctly allege that the AOB was signed by Patient 1's wife, but it was still a valid assignment from Patient 1 to HUMC.  (Id. at 7:19-9:2; 26:2-12).  On June 14, 2016, Magistrate Judge Hammer authorized HUMC to file a cross-motion for leave to file a Second Amended Complaint.  (ECF Dkt. No. 46 at 2).

Among other things, the proposed Second Amended Complaint correctly alleges that the AOB forms signed on May 29, 2014 and June 9, 2016, were executed by Patient 1's spouse.  (La Rocco Decl., Ex. A). It also corrects the typographical errors discussed in Plaintiff's Opposition to Omni's Motion to Dismiss (ECF Dkt. No. 30, at 10 n.5), and adds additional facts from the Administrative Record and Supplemental Administrative Record describing Defendants' extended course of dealing with HUMC and C.L. relating to HUMC's claim for benefits under the Plan.  (See, generally, La Rocco Decl., Ex. A).

# LEGAL ARGUMENT

## POINT ONE

## DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

**A.    Standard of Review**

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court must distinguish between facial and factual attacks.  <u>See</u> <u>Petruska v. Gannon Univ.</u>, 462 F.3d 294, 302 (3d Cir. 2006).  On a facial challenge to the District Court's subject matter jurisdiction, the Court "consider[s] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  <u>Gould Elecs. Inc. v. U.S.</u>, 220 F.3d 169, 176 (3d Cir. 2000); <u>Premier Health Ctr., P.C. v. UnitedHealth Group</u>, No. 11-425, 2012 U.S. Dist. LEXIS 44878, *7 (D.N.J. Apr. 4, 2012) ("Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.") (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>Storino v. Borough of Point Pleasant Beach</u>, 322 F.3d 293, 296 (3d Cir. 2003)).   A facial attack challenges the sufficiency of the pleadings, accepting the Plaintiff's allegations as true.  <u>Focus v. Allegheny Cnty. Court of Common Pleas</u>, 75 F.3d 834, 838 (3d Cir.1996).  Dismissal is proper under a facial Rule 12(b)(1) attack only when "the claim clearly appears to be immaterial and made solely for the purpose of

obtaining jurisdiction or . . . is wholly insubstantial and frivolous." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

When a defendant launches a factual attack on subject matter jurisdiction, the Court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. See United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007); Lincoln Ben. Life Co. v. AEI Life, LLC, et al., 800 F.3d 99, 105 (3d Cir. 2015) ("The Court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and then the Court must decide the jurisdictional issue by weighing the evidence").

Here, Defendants' Motion purports to assert facial and factual challenges to subject matter jurisdiction. Both challenges fail.

**B.    Defendants' Purported "Facial Attack" on Subject Matter Jurisdiction Fails Because the Proposed Second Amended Complaint Sufficiently Pleads that HUMC Has Standing**

While Defendants purport to launch a "facial attack" on this Court's subject matter jurisdiction, they do not base their facial challenge on the allegations of the Amended Complaint currently on file. Instead, they base their claim on the purported "futility" of the proposed Second Amended Complaint which is premised on an AOB executed by C.L. rather than Patient 1. However, as

demonstrated in Point I.B, <u>infra</u>, C.L.'s execution of the AOB forms was sufficient to confer standing upon HUMC.  Moreover, as demonstrated in Point II.B, <u>infra</u>, the proposed Second Amended Complaint more than sufficiently pleads as much.  Thus, Defendants' purported facial attack on subject matter jurisdiction fails.

## C.   Defendants' Factual Attack on Subject Matter Jurisdiction Fails Because the Record Evidence Establishes that HUMC Has Standing

In support of their factual attack on subject matter jurisdiction, Defendants assert that the AOBs that C.L. executed on May 29, 2014, and June 9, 2016, are invalid and do not confer standing upon HUMC under ERISA Section 502(a). (Moving Br. at 7).  This argument fails.  Patient 1 was comatose and incapacitated throughout his extended stay at HUMC, and C.L., as Patient 1's spouse, validly executed an AOB on Patient 1's behalf in Patient 1's incapacity on May 29, 2014. Moreover, after Patient 1 died, C.L., as Patient 1's widow and successor in interest, validly executed another AOB on his behalf on June 9, 2016.[4]  Defendants have not shown otherwise.

---

[4] Defendants complain that the AOBs are not dated.  This is irrelevant.  C.L. declared that she signed the AOBs on May 29, 2014 and June 9, 2016, respectively.  Moreover, as additional proof of date, the May 29, 2014 AOB was submitted by UBF and Aetna as part of Patient 1's voluminous file ordered on October 31, 2014, (UBF-AETNA 000891-000895, 001131, 0001133-0001135, 001139, 0001142-0001145, 0001393-0001396), and signed along with a dated May 29, 2014 General Admission Consent (UBF-AETNA000926-000927). Accordingly, there is no question that Defendants possessed a valid AOB during

### 1.    ERISA plan benefits may be assigned to a health care provider

At the outset, it is well-established that benefits under an ERISA plan are assignable to a health care provider.  Section 502(a) of ERISA provides that a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan."  See North Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369, 372 (3d Cir. 2015) (quoting Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plant, 388 F.3d 393, 400 (3d Cir. 2004)). While a healthcare provider does not have direct standing to bring a claim for benefits under ERISA, every Court of Appeals to have addressed the issue, including the Third Circuit, has recognized that a valid AOB confers upon a healthcare provider derivative standing to the provider under ERISA.  North Jersey Brain & Spine Ctr., 801F.3d at 372-73.  The Third Circuit explained that recognizing that a provider, like HUMC, may sue to enforce a claim under ERISA upon receipt of a valid AOB is guided by Congress's intent that ERISA "protect ... the interests of participants in employee benefit plans," (29 U.S.C. § 1001(b)), and that the assignment of ERISA claims to providers "serves the interests of patients by increasing their access to care."  North Jersey Brain & Spine Ctr., 801 F.3d at 373 (quoting CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 179 (3d Cir.

---

Patient 1's hospitalization, where he remained comatose and incapacitated, and another after Patient 1 died.

2014)).  "The value of such assignments lies in the fact that providers, confident in their right to reimbursement and ability to enforce that right against insurers, can treat patients without demanding they prove their ability to pay up front."  North Jersey Brain & Spine Ctr., 801 F.3d at 373.  Further, "[p]atients increase their access to healthcare and transfer responsibility for litigating unpaid claims to the provider, which will ordinarily be better positioned to pursue those claims."  Id. (citing Hermann Hosp. v. MEBA Med. & Benefits Plan, 845 F.2d 1286, 1289 n. 13 (5th Cir.1988)).  Recognizing HUMC's standing to pursue its ERISA claims against Defendants is entirely consistent with these principles.

> **2.    As a matter of federal common law, C.L. validly assigned Patient 1's rights to benefits under the Plan to HUMC during Patient 1's incapacity and again after his death**

The validity of an AOB related to an ERISA plan is controlled by federal common law.  See Merrick v. UnitedHealth Group, Inc., 2016 WL 1229616, *4 (S.D.N.Y. Mar. 25, 2016).  As a matter of federal common law, C.L. validly assigned Patient 1's right to benefits under the Plan to HUMC during Patient 1's incapacity and again after Patient 1's death.

In Cromwell v. Equicor-Equitable Hca Corp., 944 F.2d 1272, 1274 (6th Cir. 1991), the Sixth Circuit upheld the validity of an AOB signed by the spouse of an incapacitated patient.  There, the patient's spouse signed an "Assignment of Insurance Benefits" clause on behalf of his wife who had suffered a stroke,

authorizing payment under his group insurance policy (the "Beckman Plan") to the home health care provider for services provided to his wife.  In upholding the validity of the assignment, the Sixth Circuit reasoned:

> Appellants' complaint also indicated that they had standing to bring the ERISA claim. . . . Appellants alleged that they received a valid assignment of benefits.  If the assignment of benefits did actually convey rights under the plan, appellants clearly would have had standing to sue under ERISA. There was nothing in appellants' complaint indicating that the assignment of benefits was invalid or ineffective. To the contrary, appellants repeatedly relied on the assignment of benefits and their rights "standing in the shoes" of the Reinkes vis-a-vis the health insurance contract.
>
> Appellants alleged that Equicor informed them their claims were being denied because of a dispute between Reinke and his employer regarding coverage.  This in no way indicates that the assignment of benefits clause was invalid or ineffective . . . Appellants clearly claimed to be entitled to benefits due them from the Beckman plan as beneficiaries by virtue of the assignment of benefits clause. Thus, appellants have alleged standing sufficient to allow removal.

Id. at 1277-78.

Here, like the patient in Cromwell, Patient 1 suffered a stroke.  Upon presenting to the Emergency Department at HUMC, he was unconscious and comatose, and remained in that condition throughout his 358 day stay at HUMC. (La Rocco Cert., Ex. A., ¶ 28).  Accordingly, Patient 1's wife,[5] on his behalf,

---

[5] Defendants' Moving Brief states that "[b]oth AOBs allegedly were signed by [C.L.], a person who HUMC contends was the wife of now deceased Patient 1. . . . Even assuming that [C.L.] was the wife of Patient 1 – which is not at all clear . . . . " (Moving Br. at 7).  In response to this and a similar accusation asserted by Defendants in their June 3, 2016 letter, Plaintiff produced the "C.L. Decl.," in

executed an AOB on May 29, 2014, in which she assigned all of Patient 1's rights to benefits under the Plan to HUMC for the services they provided to Patient 1. Like the appellants in <u>Cromwell</u>, HUMC "stepped in the shoes of Patient 1" related to Patient 1's contract with Defendants.

In an effort to avoid a finding of standing, Defendants cite a series of off-topic state law agency and apparent authority cases. (Moving Br. at 7-10). These cases are irrelevant because, as noted above, the validity of an AOB related to an ERISA plan is controlled by federal common law. <u>See</u> <u>Merrick</u>, 2016 WL 1229616, *4. Moreover, the state law cases Defendants cite are completely inapposite, as they do not involve a scenario in which one spouse is either incapacitated or deceased, nor do they involve an AOB related to an ERISA plan.[6]

---

which C.L. declared that she was married to Patient 1 on September 28, 1985, and to which she attached a copy of their marriage certificate. (C.L. Decl., ¶ 4). The C.L. Decl. and marriage certificate are the only record evidence on this point and leave no doubt that C.L. was Patient 1's wife.

[6] <u>See</u> <u>B-Sharp Musical Prods., Inc. v. Haber</u>, 899 N.Y.S. 2d 792, 794 (N.Y. App. Div. 2010) (husband could not bind wife through apparent authority to be libel under liquidated damages clause under contract for Bar Mitzvah band); <u>Four Winds Hosp. v. Keasbey</u>, 459 N.Y.S.2d 68, 69 (N.Y. 1983) (father's oral promise to pay daughter's hospital bill could not bind wife); <u>Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C.</u>, 2013 WL 4080947, *8 (Sup. Ct. N.J., App. Div. Aug. 14, 2013) (in medical malpractice action, wife could not force husband to arbitrate); and <u>In re Coven</u>, Civ. A. No. 06-4323, 2007 WL 1160332, *10 (D.N.J. Apr. 17, 2007) (in bankruptcy action, husband's fraudulent acts could not be imputed upon wife as his agent where she was unaware of his fraudulent activity); <u>Fiala v. Bickford Senior Living Grp., LLC</u>, 32 N.E. 3d 80 (Ill. App. Ct. 2015)

The Third Circuit has made clear that under ERISA, "practical concerns," combined with "Congress's intent to protect plan participants, the interests of increasing patients' access to healthcare, and the interest in uniform interpretation of ERISA," counsel in favor of a broad interpretation of assignments of benefits. See North Jersey Brain & Spine Ctr., 801 F.3d at 374. Thus, none of the state law agency cases cited by Defendants has any bearing on the validity of the AOBs that C.L. executed in this case.

Moreover, even if the AOB that C.L. executed on May 29, 2014, was invalid (which it was not), following Patient 1's death on May 30, 2015, C.L. acquired the status of Patient 1's successor-in-interest by operation of federal common law and New Jersey's intestacy laws. (See C.L. Decl., Ex. 4). As such, she could independently execute another AOB on Patient 1's behalf, and she did so on June 9, 2016.[7] Cf. Keever v. NCR Pension Plan, Case No. 3:15-cv-196, 2015 U.S. Dist.

---

(resident's agent and attorney-in-fact was able to bind resident to contract containing arbitration clause); see also Johnson v. Kindred Healthcare, Inc., 2 N.E. 849, 857 (Mass. 2014) (agent could not bind principal to arbitration agreement pursuant to healthcare proxy); Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank, 774 N.E. 696 (N.Y. 2002) (Netherlands bank brought action against Russia money due in connection with currency exchange transfer); Hallock v. New York, 474 N.E. 2d 1178 (N.Y. 1984)(action was brought seeking rescission of settlement agreement in eminent domain proceeding).

[7] In Drzala v. Horizon Blue Cross Blue Shield, Civ. A. No. 15-8392, 2016 WL 2932545, *4 n. 7 (D.N.J. May 18, 2016), the Court noted that contract rights and duties are generally assignable and delegable and that an assignment of benefits

LEXIS 169019 (S.D. Oh. Dec. 15, 2015) (noting that patient's surviving heirs "could be deemed to have derivative standing to sue," and "even if Plaintiffs lacked statutory standing to pursue claim for benefits under § 1132(a)(1)(B), this would not necessarily deprive the federal court of subject matter jurisdiction."); Scott v. Regions Bank, 702 F. Supp. 2d 921, 929-30 (E.D. Tenn. 2010) (holding that granting derivative standing to successor-in-interest to the plan participant or beneficiary promotes ERISA's goal of protecting the interests of participants and their beneficiaries).

The facts of this case are analogous to those in Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell, 863 F. Supp. 135, 137 (S.D.N.Y. 1994).  There, the decedent's son assigned the decedents health insurance benefits to the plaintiff hospital.  Prudential, the insurer, argued that the decedent's son lacked capacity to assign the benefits payable to his mother's estate.  The Court disagreed, stating that "as Vivian Trussell's only child and sole heir, Earl Trussell had an assignable expectancy interest."  Id. at 138 (internal citations omitted).  The Court held that the son became entitled, as sole heir, to the proceeds from his mother's estate upon her death and, at that time, the plaintiff hospital stepped into the patient's son's

---

made even after the claims review process began was valid where, as here, the insurer had not been prejudiced by the post-claims review assignment, and the assignee was actively involved in the claims review process from the outset.

"shoes" and became entitled to the insurance proceeds.  Id.  The Court concluded that once Prudential was put on notice of the assignment, it was liable for any money paid to the decedent's son to which the hospital was entitled.  Id.

Here, just as in Trussell, C.L. had an assignable expectancy interest in the benefits under the Plan following his May 30, 2015, death as Patient 1's sole heir.[8] Thus, even if the AOB that C.L. signed on May 29, 2014, while Patient 1 was alive, was invalid, the AOB she signed on June 9, 2016, after his death, separately conferred standing upon HUMC to bring this ERISA claim against Defendants.

### 3.    The Plan itself establishes that HUMC has standing

What is more, the plain language of the Plan itself establishes that HUMC has derivative standing to sue under ERISA.  Specifically, the Plan's AOB provision states that "*[b]enefits for medical expenses covered under this Plan may be assigned by a Covered Person to the provider*."  (La Rocco Decl., Ex. H at HUMC 00110) (emphasis added).  "Covered Person" is defined under the Plan as "any Participant and his or her eligible Dependents when properly enrolled in the Plan as a new hire, enrolled during the open enrollment period or allowed to enroll

---

[8] The property owned by a decedent, who dies a resident of the State of New Jersey, that is not disposed of by a will passes by intestate succession to the decedent's heirs as prescribed in N.J.S.A 3B:5-3 through N.J.S.A 3:5-14.  N.J.S.A. 3B:5-2.  Because Patient 1, a resident of New Jersey, died intestate and his only four children were from his marriage to C.L., C.L. Decl. ¶¶ 2-4, his entire estate passed directly to C.L. by operation of law.  See N.J.S.A. 3B:5-3.

because of a qualifying event such as a birth, marriage or adoption . . ." and "Dependent" is defined to include "[y]our legal Spouse when residing in the United States . . ." (Id.)  Thus, by the plain language of the Plan, C.L., as a "Covered Person" under the Plan, was authorized to assign the benefits under the Plan to HUMC.[9]

Defendants argue that an interpretation of the term, "Covered Person," to allow C.L. to assign Plan benefits to HUMC would somehow lead to an "absurd result" because "a Covered Person could assign benefits due to any other Covered Person regardless of whether there was any relationship between the two Covered Persons."  (Moving Brief at 11).  However, "the policies underlying ERISA generally counsel reliance on unambiguous plan language." Bollman Hat Co. v. Root, 112 F. 3d 113, 118 (3d Cir. 1997).  In any event, the definition of "Covered Person" under the Plan to include "any Participant and his or her eligible Dependents when properly enrolled in the Plan" ensures that the "Covered Person" has a relationship with the Participant.  Thus, no absurd result follows by allowing

---

[9] Defendants argue C.L. was not a Covered Person under the Plan because her coverage allegedly was terminated during an eligibility audit in 2012 for failure to provide proof of marriage.  (See La Rocco Decl., Ex. F; Moving Br. at 4 and 11). Plaintiff requested proof of Defendants' allegations in its June 24, 2016, letter and received no response.  (See La Rocco Decl., Ex. G).  Defendants then repeated their bald assertion in their Moving Brief at 11, but again provided no factual support for their claim that C.L.'s coverage was terminated.  Thus, the Court should disregard Defendants' unsupported claim.

a "Covered Person" to sign an AOB on the patient's behalf, particularly where, as here, the Covered Person is the patient's spouse and the patient is incapacitated.

HUMC's interpretation is further confirmed by the Plan's "Appointment of Authorized Agent" provision, which permits a "Covered Person" to appoint an authorized representative to act on his or her behalf with respect to a benefit claim or appeal of a denial by completing a form which can be obtained from the Plan Administrator or the third party administrator, in this case Aetna. (La Rocco Decl., Ex. H at HUMC 00113).[10] In fact, in claims involving urgent care, such as the present case, the Plan does not even require a Covered Person to sign the authorized representative form: "*in connection with a claim involving urgent care, the Plan will permit a health care professional with knowledge of the Covered Person's medical condition to act as the Covered Person's authorized representative without completion of this form.*" (Id.) (emphasis added). This further underscores the design of the Plan to allow others to act on the patient's behalf where (as was the case here) exigent circumstances require that someone other than the patient do so.

---

[10] Patient 1's wife, on behalf of Patient 1, executed an "Authorized Representative Request" (ARR) form on February 17, 2015. (La Rocco Decl., Ex. H at HUMC 00053-00057).

### 4.    An extended course of dealing further establishes that HUMC has standing

HUMC's standing to pursue this claim is further evidenced by an extended course of dealings between Defendants, HUMC, and C.L.  Cf. Premier Health P.C., 2012 2012 WL 1135608, *17, n. 3 ("Defendants cannot act as though valid assignments exist through course of conduct and then challenge the assignment's very existence in litigation"); Ambulatory Surgical Center of N.J. v. Horizon Healthcare Servs. Inc., Civ. A. No. 07–2538, 2008 WL 8874292, *3 (D.N.J. Feb. 21, 2008); Gregory Surgical Servs. v. Horizon Blue Cross Blue Shield of NJ, Civ. A. No. 06-0462, 2007 WL 4570323, *4 (D.N.J. Dec. 26, 2007) (course of dealing including "regular interaction between [insurer] and [provider] prior to and after claim forms are submitted, without mention of [insurer's] invocation of the anti-assignment clause," prevented defendant from relying on anti-assignment provisions to challenge plaintiff's standing under ERISA).

In Premier Health Center, P.C., the amended complaint alleged a course of conduct beyond direct reimbursement for medical services, including:

> regular interaction between the [insurer] and [provider] prior to and after claim forms were submitted, without mention of [insurer's] invocation of the anti-assignment clause, including:  letters from [plan administrator] notifying [provider] of overpayments, demanding a refund, and notifying [provider] of the proper procedure to dispute [plan administrator's] decision; telephone calls between [plan administrator] and [provider] about [provider's] appeals; and

28

communications with[provider] via e-mail regarding recoupments for the overpayments.

(internal citations omitted).   2012 WL 1135608, *10. The Court concluded that such actions prevented the insurer and plan administrator's reliance on the anti-assignment provision to challenge the provider's standing.  Id.

Here, Defendants' course of dealing with HUMC is nearly identical to that of the parties' in Premier Health.  First, UBF and Omni engaged in a lengthy e-mail communication and exchange of documents in February 2015, related to the resolution of Patient 1's erroneous termination of COBRA benefits.  (La Rocco Decl., Ex. H at HUMC 00341-00521).  During this discussion, Mr. Hayes from HUMC, expressly stated was authorized to receive documents on behalf of Patient 1's wife.  (Id. at HUMC 00471).  In response, Jeanna Talamo of UBF interacted with and sent Sean Hayes of HUMC documents regarding Defendants' wrongful termination and reinstatement of Patient 1's Plan benefits, without questioning the validity of Patient 1's AOBs.  (Id.).  In one email exchange, Mr. Hayes expressly stated that he was authorized to receive documents related to Patient 1's coverage and, without hesitation, Ms. Talamo sent him the documents that day.  (Hayes Decl., ¶¶ 10-12).

29

Moreover, in October and November 2015, Aetna sent not one, but two overpayment letters to HUMC, demanding reimbursement.  (La Rocco Decl., Ex. B at UBF-AETNA000512, 000516-000517, 000521-000523).

Further, Omni and HUMC engaged in an e-mail discussion in October 2015, whereby Omni's representative, Michael Fowler, and later, in December 2015 with Omni's attorney, purported to provide HUMC with the proper procedure to appeal Defendants' underpayment of Patient 1's claim.  (La Rocco Decl., Ex. H at HUMC 00332-00335).  Moreover, Mr. Fowler's e-mail to HUMC stated that he would not speak to HUMC further regarding this issue because "it was in breach of contract with Omni's contract with Aetna." (Id. at HUMC 00332-00333).

At no time did anyone at Aetna, UBF or Omni ever advise Mr. Hayes that the AOB signed by C.L. was inadequate or ever refuse to communicate with Mr. Hayes because Patient 1 did not himself sign an AOB or because C.L. did so instead.  (Hayes Decl., ¶ 15).   Accordingly, Defendants' own course of dealing with HUMC and C.L. provides further evidence that HUMC had standing to pursue its ERISA claims against Defendants.

## POINT TWO

## THE COURT SHOULD GRANT HUMC'S CROSS-MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

### A.    The Liberal Standard of Federal Rule of Civil Procedure 15(a) For Leave to Amend Governs Plaintiff's Cross-Motion

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be "freely given when justice so requires."  In this Circuit, the Court of Appeals has instructed lower courts to apply a liberal standard in considering whether to grant leave to amend.  Dole v. Arco Client Co., 921 F.2d 484 (3d Cir. 1990).  This holding is consistent with the policy of seeking, where possible, to resolve disputes comprehensively and on the merits.  Absent a clear reason such as delay, bad faith, or prejudice, it is an abuse of discretion for a district court to deny leave to amend.  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citations omitted).  Prejudice to the non-moving party is the touchstone for the denial of an amendment.  Voilas v. Gen. Motors Corp., 173 F.R.D. 389, 396 (D.N.J. 1997) (citing Cornell & Co. v. Occupational Safety & Health Review Comm 'n, 573 F. 2d 820, 823 (3d Cir. 1978)).

The general rule is that in the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. -- the leave sought should, as the rules require, be "freely

given." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Thus, "great liberality in allowing an amendment of an initial pleading is often appropriate, especially when an amendment will further the ends of justice, effectuate presentation of a suit's merits and not prejudice the opposing party." <u>Kiser v. Gen. Elec. Corp.</u>, 831 F.2d 423, 427 (3d Cir. 1987).

Defendants oppose Plaintiff's Cross-Motion solely on the basis of futility. However, as shown below, the proposed Second Amended Complaint sufficiently states valid claims for relief under ERISA and is not futile.

## B.    HUMC's Proposed Second Amended Complaint is Not Futile

The Third Circuit has instructed that futility can only be asserted if the "complaint, as amended, would fail to state a claim upon which relief could be granted." <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000); <u>see</u> <u>also</u> <u>Oran v. Stafford</u>, 34 F. Supp. 2d 906, 914 (D.N.J. 1999) ("Futility is governed by the same standard of legal insufficiency that applies under Rule 12(b)(6)"); <u>Thompson v. Eva's Village and Sheltering Program</u>, Civ. A. No. 04-2548, 2006 WL 469938, *3 (D.N.J. 2006). Whether Plaintiff's filing of a Second Amended Complaint would be futile requires the Court to apply a Rule 12(b)(6) standard, which limits the Court's review to the pleadings and requires that Plaintiffs' factual allegations be construed by the Court as true and in a light most favorable to Plaintiff. <u>Winer Family Trust v. Queen</u>, 503 F.3d 319, 330-31 (3d Cir. 2007)).

Here, the Second Amended Complaint is not futile. Defendants argue that the AOBs that C.L. signed on May 29, 2014, and June 9, 2016, do not establish HUMC's standing to sue defendants because the "relationship between a husband and wife does not in and of itself raise a presumption that the wife is the husband's agent with power to execute an AOB." (Moving Br. at 7). But as shown in Point I.C.2 above, as a matter of federal common law, C.L. validly assigned Patient 1's rights to benefits under the Plan to HUMC during Patient 1's incapacity, see In Cromwell, 944 F.2d at 1277-78, and again as Patient 1's successor in interest after Patient 1's death, see, e.g., Keever, 2015 U.S. Dist. LEXIS 169019, Scott, 702 F. Supp. 2d at 929-30, Pro Cardiaco, 863 F. Supp. at 137. And the proposed Second Amended Complaint adequately alleges that the May 29, 2014, and June 9, 2016 AOBs, signed by Patient 1's wife, are valid assignments of Patient 1's right to benefits under the Plan for the emergency medical services provided by HUMC to Patient 1. (See, e.g., La Rocco Decl., Ex. A, ¶¶ 27-31).

Defendants further argue that HUMC failed to sufficiently plead facts that establish Patient 1's wife had authority to act on his behalf in signing the May 29, 2014 and June 9, 2016 AOBs, or that Defendants relied on any appearance of authority. (Moving Br. at 9-10). To the contrary, as demonstrated more fully above in Point I.C.2, I.C.3 and I.C.4, federal common law, the plain language of the Plan, and Defendants' extended course of dealing with HUMC and C.L, all

33

demonstrate that C.L. had authority to assign Patient 1's benefits to HUMC. Importantly, Defendants were well aware that Patient 1 was comatose and incapacitated during the entirety of his hospitalization at HUMC and that C.L. signed many documents on Patient 1's behalf, including: a "Medical Consent Form" (signed on May 29, 2014); an AOB (executed on May 29, 2014); and "Authorized Representative Request" (executed on February 17, 2015); and COBRA documents (executed on February 25, 2015). (See, e.g., La Rocco Decl., Exs. B and H, Hayes Decl. ¶ 15). These facts are all sufficiently pled in the proposed Second Amended Complaint. (See, e.g., La Rocco Decl., Ex. A, ¶¶ 27-43).

Accordingly, as the proposed Second Amended Complaint sufficiently establishes that C.L. validly assigned Patient 1's benefits under the Plan to HUMC, it is not futile. Consequently, HUMC should be granted leave to file its proposed Second Amended Complaint.

## <u>CONCLUSION</u>

For all of the foregoing reasons, HUMC respectfully requests that the Court deny Defendants' motion to dismiss in its entirety and grant Plaintiff's cross-motion for leave to file a Second Amended Complaint.

Respectfully submitted,

**K&L GATES LLP**
*Attorneys for HUMC OPCO LLC, d/b/a CarePoint Health - d/b/a Hoboken University Medical Center*

By:    <u>/s/ Anthony P. La Rocco</u>
       Anthony P. La Rocco
       Member of the Firm

Dated:  August 1, 2016