UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUMC OPCO LLC, d/b/a CAREPOINT HEALTH - HOBOKEN UNIVERSITY MEDICAL CENTER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED BENEFIT FUND, AETNA HEALTH INC., and OMNI ADMINISTRATORS INC.,<br><br>Defendants. | Civil Action No.<br>2:16-cv-00168 (KM/MAH) |

## DECLARATION OF SEAN HAYES

I, SEAN HAYES, pursuant to 28 U.S.C. § 1746, hereby declare the following:

1. I am the Senior Vice President, Revenue Cycle, at Ensemble Health Partners, and consultant to Plaintiff HUMC OPCO LLC, d/b/a CarePoint Health – Hoboken University Medical Center "("HUMC"). I have personal knowledge of the facts set forth in this Declaration.

2. The Patient identified in the Complaint in this action as "Patient 1" (hereinafter referred to as, "Patient 1"), was admitted to HUMC on May 29, 2014.

I understand that, at the time of his admission, Patient 1 participated in a plan of health insurance benefits (the "Plan") sponsored by defendant United Benefit Fund ("UBF") through his then employer, Parker Imperial Association, Inc.

3. Patient 1's file contains an "Assignment of Benefits" ("AOB"), executed by Patient 1's spouse (hereinafter referred to as, "C.L."), on Patient 1's behalf. A true and correct copy of the AOB is attached to the Declaration of Anthony P. La Rocco, Esq. ("La Rocco Decl."), Ex. B at UBF-AETNA000927. The "unable to consent because" box on the AOB is checked and the stated reason is "CODE BAT." This term was commonly used in 2014 in the Emergency Room at HUMC for when patients could not sign an AOB due to having stroke-like symptoms.

4. In or about February 2015, during discussions with Defendant Aetna Health Inc. ("Aetna") regarding Patient 1's coverage under the UBF Plan, Aetna informed the hospital case manager, who was submitting clinicals for the patient and up until that point receiving authorization approvals, that they learned on February 10, 2015, that Patient 1's coverage under the UBF Plan of Benefits (the "Plan") had terminated. At that time I was made aware of the retroactive termination and e-mailed Jeanna Talamo, UBF's Office Manager, Administrator and Custodian of Records, in an attempt to resolve this issue. I asked Ms. Talamo why Aetna did not learn of Patient 1's coverage termination until February 10,

2015, but received no reply. A true and correct copy of the February 13, 2015 e-mail to Ms. Talamo is attached to the La Rocco Decl., Ex. H at HUMC 000481.

5. Ms. Talamo sent me a copy of the initial Plan termination notice of defendant Omni Administrators, Inc. ("Omni"), the Plan's third-party administrator. A true and correct copy of this notice is attached to the La Rocco Decl. at Ex. H, at HUMC 00171-00177. Omni dated the notice May 15, 2014, which I found to be strange because, as C.L. informed me, Patient 1 was employed by Parker Imperial Association, Inc. up until he was admitted to HUMC on May 29, 2014. C.L. further supported this contention by providing me with Patient 1's last paystubs. A true and correct copy of Patient 1's last paystubs is attached to the La Rocco Decl., Ex. H at HUMC 00179-181.

6. In its May 15, 2014, notice of termination, Omni stated that Patient 1's Plan benefits terminated as of April 30, 2014, and provided instructions for continued coverage under COBRA.

7. C.L. told me that neither she nor Patient 1, who was in a coma from the time he was admitted to HUMC and throughout his hospitalization, received the May 15, 2014 letter.

8. Initially, Ms. Talamo refused to help me resolve this issue and insisted numerous times that any appeal regarding the wrongful termination of Patient 1's benefits had to be in writing and sent directly to Omni. A true and correct copy of

the February 13, 2015 through February 16, 2015 e-mails with Ms. Talamo is attached to the La Rocco Decl., Ex. H at HUMC 00446-00453.

9. I informed Ms. Talamo that if UBF persisted in its position, HUMC would have no choice but to contact the New Jersey Department of Banking and Insurance and the Department of Labor regarding Patient 1's wrongful coverage termination. Thereafter, UBF actively worked with me and C.L. to resolve the matter.

10. On February 25, 2015, I faxed Patient 1's payroll records and other proof that Patient 1 remained an employee of Parker Imperial Association, Inc. through the date of his admission to HUMC on May 29, 2014. In response, Ms. Talamo e-mailed me that day and said that she "[r]eceived info this morning, his term date should be 5/31/2014. We will correct date and print a new COBRA letter which will be mailed certified today to C.L.." A true and correct copy of the February 25, 2015 e-mails is attached to the La Rocco Decl., Ex. H at HUMC 00471.

11. In response to Ms. Talamo's e-mail, I stated that "[s]ince I have authorization on her behalf and since you sent me the last one, do you mind emailing it to me"? Id.

12. In response to this e-mail, Ms. Talamo e-mailed me a copy of the corrected February 25, 2015 notice of termination and COBRA letter that day. A

true and correct copy of the February 25, 2015 COBRA letter is attached to the La Rocco Decl., Ex. H at HUMC 00496-502.

13. C.L. signed the COBRA documents, dated February 25, 2015, on Patient 1's behalf, and I then submitted them to UBF. A true and correct copy of the signed February 25, 2015 COBRA letter is attached to the La Rocco Decl., Ex. H at HUMC 00182-188.

14. On March 9, 2015, I received an e-mail from Michael Fowler at Omni stating that Patient 1's coverage had been retroactively reinstated through May 31, 2014 under the Plan, and under COBRA from June 1, 2014, forward. A true and correct copy of the March 9, 2015 e-mail from Michael Fowler is attached to the La Rocco Decl., Ex. H at HUMC 00182-188.

15. Throughout my extended course of dealings with Aetna, Omni, and UBF regarding Patient 1's coverage, all three defendants were well aware that Patient 1 was comatose and incapacitated when he was admitted to HUMC, and that C.L. signed the AOB on his behalf. At no time did anyone at Aetna, UBF or Omni ever advise me that the AOB that C.L. had signed was insufficient. Nor did anyone at Aetna, UBF, or Omni ever refuse to communicate with me because Patient 1 did not himself sign an assignment of benefits form or because C.L. did so instead.

Dated: August 1, 2016

By: _____  8/1/16
    Sean Hayes