<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUMC OPCO LLC, d/b/a CAREPOINT HEALTH – HOBOKEN UNIVERSITY MEDICAL CENTER<br><br>          Plaintiff,<br><br>v.<br><br>UNITED BENEFIT FUND, AETNA HEALTH INC., and OMNI ADMINISTRATORS<br><br>          Defendants. | Civil Action No. 16-168 (KM)<br><br>OPINION |

### I. INTRODUCTION

This matter comes before the Court on Plaintiff HUMC OPCO, LLC, d/b/a Care Point Health – Hoboken University Medical Center's ("HUMC") cross-motion for leave to file a Second Amended Complaint. <u>See</u> Pl.'s Cross-Mot. to Amend, D.E. 54, 55. Specifically, HUMC, having previously alleged that a former patient had assigned his rights to HUMC, now seeks to amend its Complaint to allege it was actually the patient's spouse who had assigned the patient's right to HUMC, thus giving HUMC proper statutory standing under the Employee Retirement Income Security Act, 29 U.S.C § 1002 *et seq.* ("ERISA"), to recover underpayment in benefits from Defendant insurer United Benefit Fund (UBF) for services rendered to the patient. *Id.* Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will grant Plaintiff's motion.

### II. BACKGROUND

    **A. Relevant Facts**

The Court writes for the parties' benefit. Therefore, a complete recitation of the factual allegations against each defendant in this Opinion is unnecessary. Instead, the Court will discuss only the facts relevant to the current motion.

HUMC operates a licensed general acute care hospital in Hoboken, New Jersey, doing business as CarePoint Health - Hoboken University Medical Center. Pl.'s Proposed Sec. Am. Compl. ¶ 9, Ex. A to Pl.'s Cross-mot. to Amend, D.E. 54-3.[1] Defendant UFB is an employee welfare benefit plan ("the Plan"), within the meaning of ERISA, and provides its members with medical benefits, dental benefits, and vision benefits. *Id.* at ¶ 10. Defendant Omni is the Plan Administrator for the Plan. *Id.* at ¶ 11. Aetna is the third-party claims administrator for the Plan and, along with Omni, jointly administers the Plan. *Id.* at ¶ 12.

On May 29, 2014, a patient (Patient 1), who was a member of the Plan at all relevant times,[2] was admitted to HUMC after suffering a stroke. *Id.* at ¶ 16. He continued to receive treatment for the next 358 days, until he was discharged on May 22, 2015. *Id.* at ¶ 17. When Patient 1 entered the hospital on May 29, 2014, his wife ("C.L.")[3], signed an "Assignment of Benefits" ("AOB")

---

[1] For the purposes of the motion to amend, the Court must accept as true all well pleaded allegations in the proposed amended complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[2] During Patient 1's hospitalization, there was some confusion as to when his coverage under the Plan was terminated. In February 2015, Defendant Aetna informed the HUMC case manager handling Patient 1's claim that Patient 1's benefits under the Plan had been terminated on April 30, 2014, one month prior to Patient 1's admission to HUMC. Pl.'s Proposed Sec. Am. Compl. ¶ 35-36, Ex. A to Pl.'s Cross-mot. to Amend, D.E. 54-3. Believing this date to be incorrect, HUMC informed Omni that Patient 1 had worked until the day he was admitted to the hospital, and HUMC faxed payroll records to UBF reflecting the fact that Patient 1 was employed through May 29, 2014, the day of his admission to HUMC. *Id.* at ¶ 40. UBF then sent HUMC the necessary COBRA documents, which C.L. signed and submitted to UBF. *Id.* at ¶41. On March 9, 2015, HUMC received confirmation from Omni that Patient 1's coverage was retroactively reinstated through May 31, 2014 under the Plan, and under COBRA, from June 1, 2014 onward. *Id.* at ¶42.
[3] Defendants' brief in support of their Motion to Dismiss states that it "is not at all clear" that C.L. was the wife of Patient 1 at the time Patient 1 was admitted to HUMC. Defs.' Br. in Supp. of Mot.

form on behalf of Patient 1.  Decl. of C.L. ¶ 17, Ex. F to Pl.'s Cross-mot. to Amend, D.E. 54-3.  Patient 1 did not sign the form himself because he was unconscious after having suffered a stroke.  Decl. of Sean Hayes ¶ 3, D.E. 54-7.  The AOB form assigned HUMC all of Patient 1's rights under the employee welfare benefit plan. The AOB provided, among other things, as follows:

> I HEREBY ASSIGN TO THE HOSPITAL, ALL OF MY RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTION, INTERESTS OR RECOVERY, TO ANY AND ALL RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTIONS, INTERESTS, OR RECOVERY OF ANY TYPE WHATSOEVER RECEIVABLE BY ME OR ON MY BEHALF ARISING OUT OF ANY POLICY OF INSURANCE, PLAN, TRUST, FUND, OR OTHERWISE PROVIDING HEALTH CARE COVERAGE OF ANY TYPE TO ME (OR TO ANY OTHER THIRD PARTY RESPONSIBLE FOR ME) FOR THE CHARGES FOR SERVICE RENDERED TO ME BY THE HOSPITAL. THIS INCLUDES, WITHOUT LIMITATION, ANY PRIVATE OR GROUP HEALTH/HOSPITALIZATION PLAN. AUTOMOBILE LIABILITY, GENERAL LIABILITY, PERSONAL INJURY PROTECTION, MEDICAL PAYMENTS, UNINSURED OR UNDERINSURED MOTOR VEHICLES BENEFITS, SETTLEMENTS/JUDGMENTS/VERDICTS, SELF-FUNDED PLAN, TRUST, WORKERS COMPENSATION, MEWA, COLLECTIVE, OR ANY OTHER THIRD-PARTY PAYOR PROVIDING HEALTH CARE COVERAGE OF ANY TYPE TO ME (OR TO ANY OTHER THIRD PARTY RESPONSIBLE FOR ME) FOR THE CHARGES FOR SERVICES RENDERED TO ME BY THE HOSPITAL [COLLECTIVELY, 'COVERAGE SOURCE'].
>
> I AUTHORIZE AND DIRECT PAYMENT BE MADE BY ANY AND ALL COVERAGE SOURCE DIRECTLY TO THE HOSPITAL OF ALL BENEFITS, PAYMENTS, MONIES, CHECKS, FUNDS, WIRE TRANSFERS OR RECOVERY OF ANY KIND WHATSOEVER FROM ANY COVERAGE SOURCE. I ALSO AGREE TO ASSIST THE HOSPITAL IN

---

to Dismiss at 7, D.E. 49-1.  In a letter dated June 3, 2016, Defendants made a similar assertion, claiming that C.L. was merely "purporting to be Patient 1's wife." D.E. 41.  In response to that accusation, HUMC produced the declaration of C.L. in which she certified that she was married to Patient 1 on September 28, 1985; furthermore, HUMC produced a copy of C.L.'s and Patient 1's marriage certificate.  Decl. of C.L. ¶ 17, Ex. F to Pl.'s Cross-mot. to Amend, D.E. 54-3.

PURSUING PAYMENT FROM ANY COVERAGE SOURCE. THIS INCLUDES, WITHOUT LIMITATION, SIGNING DOCUMENTS REQUESTED OR NEEDED TO PURSUE CLAIMS AND APPEALS, GETTING DOCUMENTS FROM COVERAGE SOURCE, OR OTHERWISE TO SUPPORT PAYMENT TO THE HOSPITAL. I ALSO DIRECT AND AGREE THAT ANY PAYMENTS OF ANY KIND (E.G., CHECKS, FUNDS, PAYMENTS, MONIES, BENEFITS OR RECOVERY FOR COVERAGE OF SERVICES BY THE HOSPITAL THAT IS SENT DIRECTLY TO ME (OR TO ANOTHER THIRD PARTY RESPONSIBLE FOR ME) WILL BE SENT AND TURNED OVER IMMEDIATELY BY ME TO THE HOSPITAL, THROUGH WHATEVER MEANS NECESSARY. THIS INCLUDES, WITHOUT LIMITATION, ME AND IF NEEDED ANY GUARDIAN ENDORSING OVER ANY CHECKS AND/OR OTHER DOCUMENTS TO THE HOSPITAL. I ALSO UNDERSTAND THAT IF I FAIL TO TURN OVER TO THE HOSPITAL ANY SUCH PAYMENTS SENT DIRECTLY TO ME (OR TO ANOTHER THIRD PARTY RESPONSIBLE FOR ME), I WILL BE FINANCIALLY RESPONSIBLE TO THE HOSPITAL FOR THE AMOUNT OF SUCH PAYMENTS, AND I MAY ALSO BE SUBJECT TO CRIMINAL PROSECUTION TO THE FULLEST EXTENT PERMITTED BY LAW.

I HEREBY AUTHORIZE AND DESIGNATE THE HOSPITAL, AS MY AUTHORIZED AGENT AND REPRESENTATIVE TO ACT ON MY BEHALF WITH RESPECT TO ALL MATTERS RELATED TO ALL OF MY RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTION, INTERESTS OR RECOVERY ARISING OUT OF ANY COVERAGE SOURCE. THIS INCLUDES, WITHOUT LIMITATION, THE HOSPITAL REQUESTING VERIFICATION OF COVERAGE/PRECERTIFICATION/AUTHORIZATION, FILING PRE-SERVICE AND POST-SERVICE CLAIMS AND APPEALS, RECEIVING ALL INFORMATION, DOCUMENTATION, SUMMARY PLAN DESCRIPTIONS, BARGAINING AGREEMENTS, TRUST AGREEMENTS, CONTRACTS, AND ANY INSTRUMENTS UNDER WHICH THE PLAN IS ESTABLISHED OR OPERATED, AS WELL AS RECEIVING ANY POLICIES, PROCEDURES, RULES, GUIDELINES, PROTOCOLS OR OTHER CRITERIA CONSIDERED BY THE COVERAGE SOURCE, IN CONNECTION WITH ANY CLAIMS, APPEALS, OR NOTIFICATIONS RELATED TO CLAIMS OR APPEALS.

Ex. C. to Pl.'s Cross-mot. to Amend, 54-3.

HUMC alleges that during Patient 1's hospitalization, Defendants were fully aware that C.L. had executed the AOB form on Patient 1's behalf and had assigned Patient 1's claims for benefits to HUMC. Pl.'s Br. in Supp. of Cross-Mot. to Am. At 9, D.E. 54-1. For this proposition, HUMC points to various correspondence exchanged between HUMC and Defendants regarding Patient 1's claim and many approval and denial letters sent from Aetna to HUMC. La Rocco Decl., Ex. B, H to Pl.'s Cross-mot. to Amend. 54-3,4.

On May 30, 2015, Patient 1 died. Decl. of C.L. ¶ 12, D.E. 54-3. On June 9, 2016, C.L. executed a new AOB form in favor of HUMC, which again assigned Patient 1's rights under the Plan. Decl. of C.L. ¶ 14-15, D.E. 54-3  The second AOB included the same language as that quoted above from the May 29, 2014 AOB, but the June 9, 2016 AOB also included the following language:

> **THIS IS A DIRECT ASSIGNMENT OF ANY AND ALL OF MY RIGHTS TO RECEIVE BENEFITS ARISING OUT OF ANY COVERAGE SOURCE.** I UNDERSTAND THAT THIS ASSIGNMENT OF BENEFITS IS IRREVOCABLE. THIS ASSIGNMENT OF BENEFITS FULLY AND COMPLETELY ENCOMPASSES ANY LEGAL CLAIM I MAY HAVE AGAINST ANY COVERAGE SOURCE, INCLUDING, BUT NOT LIMITED TO, MY RIGHTS TO APPEAL ANY DENIAL OF BENEFITS ON MY BEHALF, TO REQUEST AND OBTAIN PLAN DOCUMENTS, TO PURSUE LEGAL ACTION AGAINST ANY COVERAGE SOURCE, AND/OR TO FILE A COMPLAINT WITH THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE.

Decl. of C.L. ¶ 12, D.E. 54-3., emphasis in original.

HUMC alleges that this almost year-long hospital stay resulted in charges totaling $7,702,491.32. Pl.'s Proposed Sec. Am. Compl. ¶ 3., D.E. 54-3. Of that amount, HUMC, as the assignee of Patient 1's rights, claims that UBF, as Patient 1's insurer, is liable for at least $789,446.88. *Id.* at ¶ 4. HUMC alleges that to date, UBF has paid $12,907.18, and refuses to make

5

any further payments, thus leaving an unpaid balance of $776,539.70. *Id.* at ¶ 24.

On January 1, 2016, HUMC brought this action in the District Court of New Jersey to collect on the unpaid medical bills under ERISA.[4] D.E. 1. On February 1, 2016, HUMC filed an Amended Complaint. D.E. 4. The Amended Complaint alleged that "[i]n connection with Patient 1's treatment at HUMC, Patient 1 executed an 'Assignment of Benefits' form, in which he assigned to HUMC the right to benefits under the Plan for the services that HUMC provided to Patient 1." Am. Compl. ¶ 26, D.E. 4. On May 24, 2016, HUMC produced what it understood to be the AOB at issue (the same version on which it allegedly relied to draft the Amended Complaint). Ex. C. to Pl.'s Cross-mot. to Amend, D.E. 54-3. By a letter dated June 2, 2016, however, counsel for UBF indicated that HUMC had produced an AOB signed by a different patient who coincidentally had the same name as Patient 1. Ex. D to Pl.'s Cross-mot. to Amend, D.E. 54-3. When HUMC learned of this error it supplied UBF with the correct AOB, which was signed by C.L., Patient 1's spouse. Ex. E to Pl.'s Cross-mot. to Amend, D.E. 54-3. Upon discovering that C.L. actually signed the AOB, UBF filed a motion to dismiss on July 8, 2016, arguing that because Patient 1 did not sign the AOB, the assignment was invalid, and therefore HUMC did not have standing to sue under ERISA. Defs.' Mot. to Dismiss, D.E. 49-1. On August 1, HUMC filed a brief in opposition to Defendant's motion to dismiss and in support of its cross motion for leave to file a second amended complaint. Pl.'s Cross-mot. to Amend, D.E. 54.

---

[4] All complaints filed in this action by HUMC allege the following three counts: Count One: A claim for benefits under the Plan pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) against UBF only; Count Two: A claim under Section 502(a)(2) of ERISA, 29 U.S.C.§ 1132(a)(2), that all Defendants breached their fiduciary duty by denying HUMC's claim for benefits – against all Defendants; and Count Three: A claim that HUMC was denied a full and fair review of its claims for benefits in violation of Section 503 of ERISA, 29 U.S.C. § 1133. - against all Defendants. D.E. 1, 4, 54-3.

### III. SUMMARY OF THE ARGUMENTS

HUMC moves to amend its First Amended Complaint to allege that C.L., acting on Patient 1's behalf, assigned Patient 1's rights under the Plan to HUMC. Pl.'s Cross-mot. to Amend at 1, D.E. 54. Defendants oppose HUMC's motion, arguing that allowing the amendment would be futile, meaning that if the Court were to approve the amendment, the complaint as amended would certainly be dismissed upon Defendants' pending 12(b)(6) motion. Defs.' Mot. to Dismiss at 1, D.E. 49.

In support of its motion, HUMC argues that as a matter of federal common law interpreting ERISA, an AOB to a health care provider is considered valid when an AOB is signed by a spouse of an incapacitated patient who is covered under a welfare benefits plan within the meaning of ERISA. Pl.'s Br. in Supp. of Cross-Mot. to Amend at 20, D.E. 54-1. HUMC also claims that under both federal and New Jersey intestacy laws, a surviving heir can be deemed to have derivative standing to sue on a decedent's behalf, even if that heir lacks statutory standing under ERISA. *Id.* at 24. Lastly, HUMC places great emphasis on language of the Summary Plan Description ("SPD") itself to boost its argument that C.L. was authorized to assign Patient 1's benefits to a health care provider. *Id.* at 25. According to the SPD, "[b]enefits for medical expenses under this Plan may be assigned by a Covered Person to the provider." Pl.'s Proposed Sec. Am. Compl. ¶ 27. A "Covered Person" is defined under the SPD as "any Participant and his or her eligible Dependents when properly enrolled in the Plan as a new hire, enrolled during the open enrollment period or allowed to enroll because of a qualifying event such as a birth, marriage or adoption." Pl.'s Br. in Supp. of Cross-Mot. at 25, D.E. 54-1. A "Dependent," according to the SPD, is defined as "[y]our legal Spouse when residing in the United States." *Id.* at 26.

Defendants, on the other hand, insists that C.L. was not a "Covered Person" under the Plan,

7

and that even if she was "covered," such persons can assign only his or her own benefits under the Plan, but not those of a participant. Defs.' Br. in Supp. of Mot. to Dismiss at 11-12, D.E. 49-1. Therefore, Defendants argue, C.L. had no authority to make the assignment, and thus HUMC had no basis to claim standing in this case.

## IV. DISCUSSION

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC*, No. 10–1283(NBF), 2011 WL 5170445, at *2 (W.D.Pa. Oct.31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445, at *2 (citing Fed.R.Civ.P. 16(b)(4)). There is "tension" between the standards of the two Rules, which the Third Circuit Court of Appeals has not resolved directly. *Id.* at *2 n. 3 (citing *Assadourian v. Harb*, 430 Fed. App'x 79 (3d Cir.2011)). However, Third Circuit courts "have consistently reached the same conclusion: a party seeking to amend the pleadings after the deadline set by the Court must satisfy the requirements of Rule 16(b)(4)—i.e., they must show 'good cause.'" *Id.* (citations omitted). Therefore, if a party has filed a motion to amend "after the deadline set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15." *Id.* at *2. In this case, on July 12, 2016, the Court extended the deadline for HUMC to file its cross motion to amend the complaint until August 1, 2016. Text Order, D.E. 53. Because HUMC filed its cross motion for leave to file a Second Amended Complaint on August 1, 2016,

8

its motion to amend is governed by the more liberal Rule 15 standard, rather than the Rule 16(b) "good cause" standard. Pl.'s Cross-mot. to Amend, D.E. 54.

Under Rule 15, a plaintiff may amend his complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). The Court may deny leave to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir.2004) ("We have held that motions to amend pleadings [under Rule 15(a) ] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint ... such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment."). Here, Defendants allege that the Court should deny Plaintiff's motion for leave to file a Second Amended Complaint because of the futility of Plaintiff's proposed amendment. Defendants argue that HUMC has not stated a prima facie claim for any of its claims because HUMC does not have standing to sue under ERISA. Defs.' Br. in Supp. of Mot. to Dismiss at 1, D.E. 49-1. Because Defendants do not argue that there is undue delay, bad faith on the part of HUMC, undue prejudice, or that HUMC has failed repeatedly to cure deficiencies, the Court bases its determination on whether to grant HUMC's motion to amend solely on whether it would be "futile" to allow HUMC's proposed new counts to proceed. *See Assadourian v. Harb*, No. 06–896 (JAG), 2008 WL 4056361, at *3 ("The futility of amendment, or the failure of the plaintiff to articulate a claim, may also serve as a basis for denying a motion to amend.").

9

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J.1990) (citations omitted) (internal quotations marks omitted). A proposed amendment is deemed futile if the plaintiff in the amended complaint lacks standing. *Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, No. 07-cv-3827, 2009 WL 2568199, at *6 (D.N.J. 2009). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Harrison Beverage*, 133 F.R.D. at 468 (" 'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. *Fowler*, 578 F.3d at 210 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 629, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler*, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n. 6 (3rd Cir.2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions,"

a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. As the Supreme Court instructed in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task ... requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Further, a court may consider only a limited record when evaluating whether a proposed amendment is futile. Specifically, a court may consider only the proposed pleading, exhibits attached to that pleading, matters of public record, and undisputedly authentic documents provided the claims are based on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir.1999). Accordingly, the Court will consider only HUMC's proposed Second Amended Complaint, the declaration of Anthony La Rocco, and the corresponding exhibits and documents that La Rocco incorporates explicitly by reference and relies upon in support of its motion to amend. D.E. 54

Section 502(a) of ERISA enables "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. 1132(a). See *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (citing 29 U.S.C. § 1132(a)(1)(B)). ERISA defines a "participant" as "any employee or former employee

of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C § 1002(8). "'Beneficiary'" in the context of the various provisions of ERISA carries the connotation of a person, other than the employee-participant, who is covered by the plan's provisions -- e.g., a spouse or dependent." *Cameron Manor, Inc. v. United Mine Workers*, 575 F. Supp. 1243, 1245 (W. D. Pa. 1983).

The first question to consider in this case is whether ERISA permits the assignment of benefits under an ERISA-regulated welfare-benefit plan.[5] In *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825 (1988), the Supreme Court considered whether ERISA allowed or prohibited the garnishment of benefits under ERISA-regulated welfare plans. The Court explained that although Congress explicitly prohibited the assignment or alienation of benefits under pension plans, 29 U.S.C. § 1056(d)(1), Congress declined to include such a ban on the assignment of benefits under welfare plans. *Id.* at 837-38. The Court concluded that "Congress'

---

[5] The definition of an employee welfare benefit plan under ERISA includes any plan or program:

> established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

12

decision to remain silent … 'acknowledged and accepted the practice, rather than prohibiting it.'" *Id.* (quoting *Alessi v. Raybestos Manhattan*, Inc., 451 U.S. 504, 516, 68 L. Ed. 2d 402, 101 S. Ct. 1895 (1981)).

The Court's decision in *Mackey* comports with the policy aims behind ERISA. Congress prohibited the assignment of pension benefits in order to "further ensure that the employee's accrued benefits are actually available for retirement purposes." *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 226 (1st Cir. 1998) (citations omitted). However, the assignment of benefits under welfare benefit plans actually serves to further ERISA's goals by "promot[ing] the interests of employees and beneficiaries in employee benefit plans." *Id.* The assignment of benefits to a health care provider actually "facilitates rather than hampers the employee's receipt of health benefits." *Hermann Hosp. v. MEBA Med. and Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988). If health care providers could not obtain standing through a valid assignment from their patients, then the providers would have to "rely on the [patient] to maintain an ERISA suit, or they would have to sue the [patient]." *Spine Surgery Assocs. & Discovery Imaging, P.C. v. INDECS Corp.*, 50 F. Supp. 3d 647, 654 (D.N.J. 2014). Such alternate recourse would neither be practical for the providers nor would it serve ease the patient's ability to receive health benefits, considering that the "providers are better situated and financed to pursue an action for benefits owed for their services." *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 Fed. Appx. 169, 175 (3d Cir. 2015) (quoting *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352-53 (11th Cir. 2009)).

The Third Circuit has also specifically recognized the assignability of health benefits under an ERISA welfare benefit plan to health care providers. In *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015), the Court held that "as a matter of federal common law,

13

when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." The Third Circuit recognized that "[e]very United States Court of Appeals to have considered this question has found, as we do, that an assignment of benefits is sufficient to confer ERISA standing." *Id.* at 373. We can therefore conclude that health care providers such as HUMC who are "neither participants nor beneficiaries in their own right may obtain derivative by assignment from a plan participant or beneficiary." *Id.* at 372.

Although the cases cited above make clear that it is permissible for a health care provider to obtain derivative standing from a plan participant or beneficiary,[6] there is little federal precedent addressing whether a beneficiary can assign benefits on behalf of a plan participant. Thus, the Court looks to the language of the SPD to determine the validity of an assignment made by a beneficiary on behalf of her spouse, a plan participant. *See Blackshear v. Reliance Standard Ins. Co.,* 509 F.3d 634 (4th Cir. 2010) (finding that while ERISA plans are regulated by federal statute, the Court should apply established principles of contract law when interpreting ERISA plan language).

---

[6] Defendants dispute C.L.'s status as a beneficiary under the Plan. In their Motion to Dismiss, Defendants assert that C.L.'s "coverage under the Plan was terminated during an eligibility audit in 2012 because she failed to produce proof of marriage to a participant in the Plan." Defs.' Br. in Supp. of Mot. to Dismiss at 4. However, Defendants failed to provide any factual support for this allegation in their brief in support of their Motion to Dismiss. The Defendants' reply brief included the declaration of Jeanna Talamo, the Assistant Director of the Plan, who certified that C.L.'s coverage was terminated in October 2012 for failing to produce proof of her marriage to Patient 1. Defs.' Reply Br. Defendants have not produced any further proof in this regard. Because the Rule 12(b)(6) standard mandates that all well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, we will accept HUMC's contention that C.L. was a covered person under the Plan at the time she assigned the benefits to HUMC. Pl.'s Prop. Am. Compl. at ¶ 29.

The SPD provides in pertinent part: "Benefits for medical expenses covered under this plan may be assigned by a Covered Person to the provider." HUMC contends the Court should interpret that language to allow covered persons to assign benefits on behalf of a patient participant. Pl.'s Br. in Supp. of Cross-mot. to Am. At 23-27, D.E. 54-1. Defendants on the other hand, argue that this provision should be interpreted to mean that a covered person can only assign his or her own benefits, not those of a someone else covered within the plan, such as a spouse participant. Defs.' Br. in Supp. of Mot. to Dismiss at 11, D.E. 49-1.

When it comes to interpreting ERISA plans, the Third Circuit applies the principle of contra proferentem, which means that "if, after applying the normal principles of contractual construction, [an] insurance contract is fairly susceptible of two different interpretations, . . . the interpretation that is most favorable to the insured will be adopted." *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257 (3d Cir. 1993) ((quoting *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990) (internal quotations omitted). The Third Circuit in *Heasley* explained the reasoning behind adopting this policy as follows:

> "Insurance policies are almost always drafted by specialists employed by the insurer. In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence."
>
> *Id.* (quoting *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir. 1990).

The *Heasely* court reasoned that not applying contra proferentem would "'afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted,' a result that would be at odds with the congressional purposes of promoting the interests of employees and

beneficiaries and protecting contractually defined benefits.'" *Id.* (quoting *Masella v. Blue Cross & Blue Shield*, 936 F.2d 98, 107 (2d Cir. 1991)). Given the ambiguity of the clause at issue ("Benefits for medical expenses covered under this Plan may be assigned by a Covered Person to the provider"), interpreting it in such a way that would restrict the right of covered persons to assign benefits on behalf of patient participants would run counter to the rule of contra proferentem.

Furthermore, such a restrictive interpretation would run counter to ERISA's requirement that SPDs "adequately inform participants of circumstances in which their claim may be denied." *Precopio v. Bankers Life & Cas. Co.*, 2004 WL 5284512 at *26 (D.N.J. 2004). The SPD must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The SPD must also contain a description of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Finally, the SPD must "not have the effect of misleading, misinforming or failing to inform participants . . . with respect to pertinent provisions of the plan." 29 C.F.R. § 2520.102-2(b). As the Third Circuit expressed in *Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. and Research Fund*, 334 F.3d 365, 378 (3d Cir. 2003), "the ERISA provision governing summary plan descriptions expresses Congress's desire that the SPD be transparent, accurate, and comprehensive."  Defendants' position, that covered persons are not permitted to assign benefits on behalf of patient participants covered under the same plan, is inconsistent with these ERISA requirements regarding the "transparency, accuracy, and comprehensiveness" of SPDs.

Accordingly, because the principles of ERISA contract interpretation favor an interpretation in which C.L. was permitted to assign her husband's benefits under the Plan, HUMC has set forth "enough facts to state a claim to relief that is plausible on its face" insofar as HUMC has standing to pursue its claim under ERISA. *Bell Atl. Corp.,* 550 U.S. at 570. Therefore, HUMC's cross motion to amend its complaint is granted.

*s/ Michael A. Hammer*
**United States Magistrate Judge**

Dated:  October 25, 2016