**GORLICK, KRAVITZ & LISTHAUS, P.C.**
Bruce L. Listhaus (BL 2381)
Barbara S. Mehlsack (BM 1390)
17 State Street, 4th Floor
New York, New York 10004
blisthaus@gkllaw.com
bmehlsack@gkllaw.com
(212) 269-2500
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------------X

| | |
|---|---|
| HUMC OPCO LLC, d/b/a CAREPOINT HEALTH - HOBOKEN UNIVERSITY MEDICAL CENTER, | : Civil Action No.: |
| | : 2:16-cv-00168(KM)(MAH) |
| **Plaintiff,** | : |
| | : |
| - v. - | : **ANSWER TO** |
| | : **SECOND AMENDED** |
| UNITED BENEFIT FUND, AETNA HEALTH INC., and OMNI ADMINISTRATORS INC. | : **COMPLAINT AND** |
| | : **COUNTERCLAIM** |
| **Defendants** | : |
| | : |
| | : |
| UNITED BENEFIT FUND | : |
| **Counterclaimant** | : |
| - v. - | : |
| | : |
| HUMC OPCP LLC d/b/a CAREPOINT HEALTH HOBOKEN UNIVERSITY MEDICAL CENTER | : |
| | : |
| **Counterclaim Defendant** | : |
| | : |

---------------------------------------------------------------------X

Defendants UNITED BENEFIT FUND ("UBF"), AETNA HEALTH, INC. ("Aetna") and

OMNI ADMINISTRATORS, INC. ("Omni") (hereinafter jointly and severally referred to as

"Defendants"), by and through their undersigned attorneys, Gorlick, Kravitz & Listhaus, P.C., as

and for their Answer and UBF's Counterclaim to the Second Amended Complaint of Plaintiff

HUMC OPCO LLC d/b/a CAREPOINT HEALTH HOBOKEN UNIVERSITY MEDICAL CENTER ("HUMC") aver as follows:

## SUMMARY OF CLAIMS

1.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2.    Defendants admit, upon information and belief, that Patient 1 presented to HUMC's Emergency Department on May 29, 2014 and was thereafter admitted to the hospital; deny that HUMC provided "extensive emergent medical treatment" to Patient 1 throughout his stay from the date of his admission to May 22, 2015; and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2.

3.    Defendants admit that Plaintiff claims that the charges for Patient 1's hospital stay totaled $7,702,491.32; deny that the charges claimed are actual or reasonable charges for Patient 1's stay; and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3.

4.    To the extent the allegations in Paragraph 4 concerning "grandfathered status" call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations in Paragraph 4.

5.    Defendants admit that UBF has paid $12,907.18 to HUMC and deny the remaining allegations in Paragraph 5.

6.    Defendants deny the allegations in Paragraph 6.

7.    Aetna admits that it sent HUMC demands for overpayment in the amounts set forth in Paragraph 7 and otherwise denies the allegations in Paragraph 7; Defendants UBF and Omni

admit upon information and belief that Aetna sent demands for overpayment to HUMC in the amounts recited and otherwise deny the allegations in Paragraph 7.

8.    To the extent the allegations in Paragraph 8 call for a legal conclusion, no response is required by any of the Defendants; Defendants deny the remaining allegations in Paragraph 8.

## THE PARTIES

9.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9.

10.    Defendants admit that UBF is a multiemployer employee welfare benefit fund within the meaning of ERISA, that provides medical, dental and vision benefits to eligible participants under the terms of different employee benefit plans within the meaning of ERISA, with its principle place of business at the location recited, and otherwise deny the allegations in Paragraph 10.

11.    Defendants admit that Omni is named as Plan Administrator in the UBF Summary Plan Description and is a New York corporation whose principle place of business is at the location recited and otherwise aver that to the extent the allegations in Paragraph 11 call for legal conclusions, no response is required and otherwise deny the allegations in Paeagraph11.

12.    Defendants admit that Aetna is a New York corporation whose principal place of business and registered agent are at the locations recited, which functions as a third party administrator and jointly administers with Omni the medical benefits provided through the UBF benefit plans and otherwise deny the allegations of Paragraph 12.

## JURISDICTION AND VENUE

13.    To the extent the allegations in Paragraph 13 call for legal conclusions, no response is required by any of the Defendants; and to the extent that the Court's subject matter jurisdiction

depends on Plaintiff's standing to bring this action, Defendants deny that Plaintiff has standing to assert claims against any of them.

14.    Defendants concede the Court's personal jurisdiction in this action and otherwise deny the allegations in Paragraph 14.

15.    Defendants concede for purposes of this action that venue is proper in this District and otherwise deny the allegations in Paragraph 15.

## FACTUAL ALLEGATIONS

### A. Patient 1 Receives Extensive Inpatient Treatment at HUMC for 358 Continuous Days

To the extent that the subheading to subsection A purports to recite factual allegations, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations, except admit that Patient 1 spent 358 days in HUMC as a patient, during which time he received inpatient medical services.

16.    Defendants admit upon information and belief that Patient 1 presented to HUMC's emergency department on or about May 29, 2014 and was admitted to HUMC as an inpatient and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16.

17.    Defendants admit upon information and belief that Patient 1 was an "inpatient" at HUMC for 358 continuous days, until May 22, 2015, and admit that Plaintiff claims that Patient 1 1 incurred charges in excess of $7 million for medical care allegedly provided to Patient 1 and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17.

### B. Defendants Substantially Underpay HUMC for the Treatment it Provided to Patient 1

To the extent that the subheading to subsection B purports to recite factual allegations, Defendants deny the allegations.

18.    Defendants admit that from time to time Patient 1 was a participant in the Sterling Plan, a UBF employee welfare benefit (hereinafter at all times reference to the "Plan" means only the Sterling Plan); admit that the Plan provides for "in-network benefits" with respect to participants using Aetna's Preferred Provider Organization ("PPO Providers") and provides for out-of-network benefits with respect to participants using non-PPO providers under specific terms and conditions; admit that HUMC is an out-of-network, non-PPO provider and deny the remaining allegations in Paragraph 18.

19.    Defendants deny the allegations in Paragraph 19 and aver that: a) under the terms of the Plan, covered expenses incurred by non-PPO providers that meet the conditions of the Plan, including pre-authorization for hospital stays (hereinafter "eligible covered expenses"), up to the first $30,000 annually are payable at 100% of the "Medicare Rates developed by the Centers for Medicare and Medicaid Services used to reimburse physicians and other providers on a fee by fee basis" ( hereinafter "Plan Medicare Rates"), after which eligible covered expenses are payable at 60% of Plan Medicare Rates; b) in the case of Patient 1, Plaintiff has claimed the total amount due under the Plan terms is $484,758.03.

20.    The allegations in Paragraph 20 call for legal conclusions, as to which no response is required by any of the Defendants.

21.    Defendants deny the allegations in Paragraph 21 and aver that even if HUMC is entitled under the Plan to additional reimbursement for the medical services it provided to Patient 1, it is not in the amount alleged in Paragraph 21.

22.     The allegations in Paragraph 22 call for legal conclusions, as to which no response is required by any of the Defendants.

23.     Defendants deny the allegations in Paragraph 23.

24.     Defendants admit that UBF has not reimbursed HUMC more than $12,907.18 for the treatment allegedly provided by HUMC to Patient 1.  Defendants deny the remaining allegations in Paragraph 24.

25.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation concerning the existence of a certain EOB dated September 5, 2015 and deny the remaining allegations in Paragraph 25.

26.     Defendants deny knowledge or information sufficient to form a conclusion as to the truth of the allegations concerning a certain EOB dated September 5, 2015.

**C. HUMC Receives a Complete Assignment of Health Insurance Benefits for the Treatment Provided to Patient 1**

To the extent that the subheading to subsection C purports to recite factual allegations, Defendants deny the allegations.

27.     To the extent the allegations in Paragraph 27 allege the contents of the UBF SPD, Defendants refer the Court to the SPD, and deny the allegations to the extent that they differ from the terms of the document.

28.     Defendants deny that Patient 1's wife was a Covered Person authorized to execute an assignment on behalf of Patient 1 under the Plan.  Defendants admit that in this action HUMC has produced a form entitled an "Assignment of Insurance Benefits" form which HUMC purports was signed by Patient 1's "spouse," but deny that this form is a legally effective assignment. Defendants otherwise deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28.

29.    Defendants admit upon information and belief that Patient 1 passed away on May 30, 2015.  Defendants admit that HUMC has provided them with another "Assignment of Insurance Benefits" form which HUMC purports was signed by Patient 1's "spouse," but deny that the form creates a legally effective assignment.  Defendants otherwise deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28.

30.    Defendants admit that HUMC has produced in this action an "Assignment of Insurance Benefits" form dated May 29, 2014, which HUMC purports was signed by Patient 1's "spouse," and admit that the text quoted in Paragraph 30 is accurate as to the terms of the form, but deny that the form creates a legally effective assignment.

31.    Defendants admit that HUMC has produced in this action an "Assignment of Insurance Benefits" form dated June 9, 2016, which HUMC purports was signed by Patient 1's "spouse," and admit that the text quoted in Paragraph 31 is accurate as to the terms of this form, but deny that the form creates a legally effective assignment.

32.    To the extent the allegations in Paragraph 32 aver the contents of the UBF SPD, Defendants refer the Court to the terms of the SPD and otherwise deny the allegations to the extent that they differ from the document.

33.    Defendants admit that HUMC has provided them with an Aetna "authorized representation" form dated February 17, 2015, which HUMC purports was signed by Patient 1's "spouse," but deny that the form is a legally effective authorization or that Patient 1's "spouse" had any authority to execute the form on behalf of Patient 1.  To the extent that the allegations in Paragraph 33 allege the contents of the authorized representation form, Defendants refer the Court to the document, and deny the allegations to the extent that they differ from the terms of the document.

34.    Defendants deny the allegations in Paragraph 34.

35.    Aetna admits that it informed HUMC's case manager in February 2015 that Aetna learned of Patient 1's termination of benefits under the UBF Plan on or about February 9, 2015 and denies that HUMC inquired as to the reason; UBF and Omni deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36.    UBF admits that HUMC, purporting to represent Patient 1, communicated with UBF and admits that it provided HUMC with a copy of Omni's initial Plan termination notice, dated May 15, 2014.  To the extent that the allegations in Paragraph 36 allege the contents of the termination notice, Defendants refer the Court to the document, and otherwise deny the allegations to the extent that they differ from the terms of the document. Aetna and Omni deny knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 36.

37.    UBF and Omni admit the allegations in Paragraph 37 as to HUMC's communications with UBF and Omni; Defendants deny knowledge or information sufficient a belief as to the truth of the allegations concerning communications between Patient 1's "spouse" and HUMC and otherwise deny the allegations of Paragraph 37.

38.    UBF denies the allegations of Paragraph 38; Aetna and Omni deny knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38.

39.    UBF denies the allegations in Paragraph 39.  Aetna and Omni deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.

40.    UBF admits the allegations in Paragraph 40.   Aetna and Omni admit upon information and belief the allegations in Paragraph 40.

41.    Defendants admit that HUMC submitted to UBF a COBRA form purportedly signed by Patient 1's "spouse" on behalf of Patient 1 and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

42.    Omni admits the allegations in Paragraph 42. UBF and Aetna admit upon information and belief the allegations in Paragraph 42.

43.    Defendants deny the allegations in Paragraph 43.

**D.  HUMC Exhausts All Known and Available Internal Appeals Remedies**

To the extent that the subheading to subsection D purports to recite factual allegations, Defendants deny such allegations.

44.    Defendants deny the allegations of Paragraph 44.

45.    Defendants admit that Specialized Healthcare Partners sent a letter dated September 9, 2015 to Aetna, on behalf of HUMC, with copies to Omni and UBF, which Plaintiff now characterizes as an "Appeal Letter." To the extent that the allegations in Paragraph 45 allege the contents of the so-called "Appeal Letter," Defendants refer the Court to the document, and deny the allegations to the extent that they differ from the terms of the so-called "Appeal Letter."

46.    To the extent that the allegations in Paragraph 46 allege the contents of the so-called "Appeal Letter," Defendants refer the Court to the document and deny the allegations to the extent that they differ from the terms of the document. To the extent that the allegations in Paragraph 46 call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations in Paragraph 46.

47.    Defendants admit that $12,907.18 is the total reimbursement paid by UBF for the treatment allegedly provided by HUMC to Patient 1. To the extent that the allegations in Paragraph

47 call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations in Paragraph 47.

48.      To the extent the allegations of Paragraph 48 recite the terms of an Omni e-mail, Defendants refer the Court to the email and deny the allegations to the extent they differ from the terms of the email and otherwise deny the allegation that HUMC did not receive a response to its so-called "Appeal Letter" and aver that to the extent that the allegations call for legal conclusions no response is required by any of the Defendants.

49.      Defendants admit upon information and belief the allegations in Paragraph 49 that HUMC sent a November 11, 2015 communication to Aetna along with the so-called "Appeal Letter;" Defendants deny that HUMC did not receive any response to its so-called "Appeal Letter" and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

50.      UBF denies that the alleged November 12, 2015 "grievance" submitted to UBF by HUMC was a member grievance under the Plan provisions governing grievances.  To the extent that the allegations in Paragraph 50 allege the contents of the so-called "member grievance," UBF refers the Court to the document, and otherwise denies the allegations to the extent that they differ from the document.  Aetna and Omni deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

51.      UBF admits that its counsel sent a letter dated December 3, 2015 to a representative of HUMC.  To the extent that the allegations in Paragraph 51 allege the contents of the letter, UBF refers the Court to the document, and otherwise denies the allegations to the extent that they differ from the terms of the document.  Aetna and Omni deny knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 51.

52.     Aetna admits that it sent letters dated October 31, 2015 and November 7, 2015 to HUMC demanding reimbursement for overpayment in the amounts of $4,366.44 and $4,270.37, respectively, and that the overpayment demands would leave the total reimbursement to HUMC for treatment allegedly provided to Patient 1 at $4,270.37.  UBF and Omni admit upon information and belief that Aetna sent letters dated October 31, 2015 and November 7, 2015 to HUMC demanding reimbursement for overpayment in the amounts of $4,366.44 and $4,270.37, respectively, and that the demands would leave the total reimbursement to HUMC for treatment allegedly provided to Patient 1 at $4,270.37.  Defendants deny the remaining allegations in Paragraph 52.

53.     To the extent that the allegations of Paragraph 53 call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations of Paragraph 53.

54.     To the extent the allegations in Paragraph 54 call for legal conclusions, no response is required by any of the Defendants; otherwise Defendants admit the allegations of Paragraph 54.

## COUNT ONE
### (Violation of Section 502(a)(1)(B) – against UBF)

55.     UBF repeats and re-alleges its answers to Paragraphs 1 through 54 as if fully set forth herein.

56.     UBF admits that the Plan is an ERISA-covered employee welfare benefits plan.

57.     To the extent the allegations in Paragraph 57 call for legal conclusions, no response is required; UBF denies the remaining allegations in Paragraph 57.

58.     To the extent the allegations in Paragraph 58 call for legal conclusions, no response is required; UBF denies the remaining allegations of Paragraph 58.

59.     UBF denies the allegations in Paragraph 59.

60.     UBF admits that HUMC provided it with an "Assignment of Insurance Benefits" form which HUMC purports was signed by Patient 1's "spouse," but denies that this form creates a legally effective assignment and denies the remaining allegations in Paragraph 60.

61.     To the extent the allegations in Paragraph 61 call for legal conclusions, no response is required; UBF denies the remaining allegations.

62.     UBF admits that HUMC provided it with an "Assignment of Insurance Benefits" form which HUMC purports was signed by Patient 1's "spouse," but denies that this form creates a legally effective assignment.  To the extent that the allegations in Paragraph 62 otherwise call for legal conclusions, no response is required; UBF denies the remaining allegations of Paragraph 62.

63.     To the extent the allegations in Paragraph 63 call for legal conclusions, no response is required; UBF denies the remaining allegations in Paragraph 63.

64.     To the extent the allegations in Paragraph 64 call for legal conclusions, no response is required; UBF denies the remaining allegations in Paragraph 64.

65.     To the extent he allegations in Paragraph 65 call for legal conclusions, no response is required; UBF denies the remaining allegations in Paragraph 65.

66.     UBF denies the allegations in Paragraph 66.

67.     To the extent that the allegations in Paragraph 67 call for legal conclusions, no response is required; UBF denies the remaining allegations in Paragraph 67.

68.     To the extent that the allegations in Paragraph 68 call for legal conclusions, no response is required; UBF denies the remaining allegations in Paragraph 68.

## COUNT TWO
### (Breach of Fiduciary Duty – against all Defendants)

69.    UBF repeats and re-alleges its answers to Paragraphs 1 through 68 as if fully set forth herein.  Aetna and Omni repeat and re-allege their answers to Paragraphs 1 through 54 and UBF's answers to Paragraphs 54 through 68 as if fully set forth herein.

70.    Defendants admit that the Plan is an ERISA covered employee welfare benefit plan.

71.    To the extent the allegations in Paragraph 71 call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations.

72.    To the extent the allegations in Paragraph 72 call for legal conclusions, no response is required by any of the Defendants; Defendants admit that Omni is a plan administrator and Aetna is a third party plan administrator and they jointly administer the Plan and deny the remaining allegations in Paragraph 72.

73.    Defendants deny the allegations in Paragraph 73.  Defendants admit that Patient 1 received healthcare services at HUMC.  Defendants admit that HUMC provided them with an "Assignment of Insurance Benefits" form and other documents which HUMC purports were signed by Patient 1's "spouse," but deny that the form or any other document created a legally effective assignment.

74.    To the extent the allegations in Paragraph 75 call for legal conclusions, no response is required by any of the Defendants; Aetna and Omni each denies the remaining allegations; UBF admits that through its Trustees it has discretionary authority regarding management and administration of the Plan and the management and disposition of UBF assets, some of which it delegates to other fiduciaries.

75.    To the extent the allegations in Paragraph 76 call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations of Paragraph 76.

76.     To the extent Paragraph 77 calls for legal conclusions, no response is required by any of the Defendants; Omni and Aetna deny the remaining allegations of Paragraph 77 and UBF denies it owes any duty to HUMC as a Plan beneficiary but otherwise admits its duties as a fiduciary.

77.     Defendants deny the allegations in Paragraph 77.

78.     Defendants deny the allegations in Paragraph 78.

79.     Defendants deny the allegations in Paragraph 79.

80.     Defendants deny the allegations in Paragraph 80.

### COUNT THREE
**(Denial of Full and Fair Review in Violation of ERISA §503 - against all Defendants)**

81.     Defendants repeat and re-allege their joint and several answers to Paragraphs 1 through 80 as if fully set forth herein.

82.     To the extent that the allegations in Paragraph 82 call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations in Paragraph 82.

83.     To the extent that the allegations in Paragraph 83 call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations in Paragraph 83.

84.     To the extent that the allegations in Paragraph 84 call for legal conclusions, no response is required by any of the Defendants; Defendants deny the remaining allegations in Paragraph 84.

85.     Defendants deny the allegations of Paragraph 85.

86.     Defendants deny the allegations of Paragraph 86.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief requested in Paragraphs A through L.

## FACTS SUPPORTING DEFENDANTS AFFIRMATIVE DEFENSES AND UBF's COUNTERCLAIMS

Defendants allege the following facts in support of their affirmative defenses and counterclaims:

87.    UBF is a self-insured multiemployer employee benefit fund subject to ERISA.

88.    UBF provides health benefit coverage to employees of employers who contribute to the Fund.

89.    The Plan is a health plan offered by UBF and funded by employer contributions.

90.    Medicaid is a secondary payer for the Plan.

91.    Patient 1 was an employee of an employer that contributed to UBF and was, from time to time, a participant in the Plan.

92.    If medical providers base claims against UBF on unreasonable charges for medical care such claims deplete the Fund's resources and may result in reduced benefits to all participants or increases in contributions from employers.

93.    Employer contributions to UBF are a form of "compensation" to employees and any increases in contributions that may result from an increase in healthcare costs has the potential to have an adverse effect on participant wages.

94.    Upon information and belief, HUMC is a private, for-profit hospital, which has been owned by CarePoint Health ("CarePoint") since 2011.

95.    Upon information and belief, CarePoint also owns Bayonne Medical Center and Christ Hospital, two other for-profit hospitals operating in New Jersey.

96.     Upon information and belief, under CarePoint's ownership, Bayonne Medical Center has become one of the most expensive hospitals in the United States, artificially inflating its charges with billing rates over four times the national average and over 23 times the Medicare reimbursement rate for some medical procedures.

97.     Upon information and belief, the billing rates at CarePoint's other hospitals, including HUMC, are similarly artificially inflated.

98.     UBF uses a Preferred Provider Network through Aetna in order to hold the medical costs incurred by its participants to reasonable levels, which it accomplishes as a result of agreements negotiated between Aetna and participating providers.

99.     Nonetheless, UBF also provides limited coverage for participants' use of out-of-network providers, like HUMC.

100.    However, to encourage its participants to use in-network providers and help control plan costs, UBF makes it clear to its participants that by using an out-of-network provider a participant may expect to pay more money out of his/her own pocket than by using an in-network provider.

101.    Upon information and belief, CarePoint has caused its member hospitals to withdraw from most if not all provider networks managed by private insurers like Aetna. By way of example, most recently HUMC exited from the Blue Cross Blue Shield of New Jersey's network.

102.    Upon information and belief, HUMC, like Care Point's other out-of-network hospitals, charge rates well above those of hospitals participating in insurers' networks like the one maintained by Aetna.

103.    Upon information and belief, HUMC has severed contracts with most private insurers and is now an out-of-network hospital for most insurance plans.

104.    HUMC is an out-of-network hospital for the Plan provided by UBF.

105.    Upon information and belief, HUMC and other CarePoint Hospitals are pursuing an out-of-network strategy with a profit motive in mind by taking advantage of patients who seek emergency services at HUMC and other CarePoint Hospitals.

106.    Upon information and belief, as part of its strategy, HUMC advertises on its network that for any patient who has visited its emergency room who has a medical necessity to be admitted to the hospital, in most cases the patient's "insurance carrier" must limit the patient's responsibility to the same amount the patient would have to pay an in-network provider.

107.    While state law limitations on so called "balance billing" do not apply to ERISA covered plans, upon information and belief, in the instant case, HUMC has pursued its overall strategy by inducing Patient 1's "spouse" to keep Patient 1 as an inpatient at HUMC, notwithstanding its artificially inflated costs, by promising not to "balance bill" Patient 1 or his "spouse" for any care that HUMC has rendered to Patient 1.

108.    Upon information and belief, HUMC has never billed Patient 1's "spouse" for any care it delivered to Patient 1, notwithstanding that HUMC is aware that under the terms of the Plan, a participant is responsible for costs above the appropriate Plan Medicare Rate.

109.    Upon information and belief, by artificially inflating its costs for the care it rendered to Patient 1, HUMC may have the ability to artificially inflate the calculation of the Medicare Rate under certain circumstances for services rendered by out-of-network providers.

110.    In the instant case, HUMC's strategy is consistent with the out-of-network strategy pursued by CarePoint to maximize profits throughout its hospitals.

111.    The Plan requires that pre-certification be obtained for hospital admission.

112.    HUMC did not seek pre-certification for Patient 1's admission to the hospital.

113.    As HUMC did not seek pre-certification for Patient 1's admission it is not entitled to recover any reimbursement for care rendered outside of its emergency room.

114.    HUMC does not allege that the care provided to Patient 1 after his admission was necessary to stabilize him.

115.    Upon information and belief, to the extent that HUMC cannot recover from UBF, HUMC is required to bill Medicaid as the secondary payer.

116.    Upon information and belief, HUMC has never submitted a demand for payment to Medicaid.

117.    By inducing Patient 1's "spouse" to consent to Patient 1 remaining unnecessarily at an out-of-network hospital, HUMC has exploited emergency care regulations to circumvent the cost-control mechanisms put in place by UBF.

118.    By demanding that UBF reimburse HUMC based upon its artificially inflated billing, HUMC will cause significant harm to UBF and its participants and beneficiaries.

119.    Upon information and belief, at some point in time after May 29, 2014 and prior to July 1, 2014, HUMC succeeded in stabilizing Patient 1 within the meaning of the Social Security Act, 42 USCS § 1395dd(e)(3)(A), and HUMC had by then ceased to provide any kind of emergency medical care to Patient 1 under applicable law.

120.    Upon information and belief, CarePoint has used HUMC and its other member hospitals as instruments in its for-profit scheme, including its artificially inflated charges and its misrepresentations to Plan participants, to attempt to induce UBF to enter into a special

relationship with HUMC and its other member hospitals to provide reimbursement to HUMC based on unreasonably high medical costs.

## AFFIRMATIVE DEFENSES

121.    Defendants assert the following defenses based on information that is presently available to them.  As such, Defendants reserve the right to amend these defenses as additional information becomes available.  In support of these defenses, Defendants repeat and re-allege their answers in Paragraphs 1 through 86 and the facts alleged in Paragraphs 87 through 120 as if set forth fully herein. As and for their Affirmative Defenses, Defendants respectfully aver as follows:

## FIRST DEFENSE

122.    The Complaint fails to state a claim upon which relief may be granted against any Defendants, including specifically but not limited to any claims under §§ 502(a)(3) and 503.

## SECOND DEFENSE

123.    Plaintiff does not have standing to assert claims against any Defendants.

## THIRD DEFENSE

124.    The Complaint is barred, in whole or in part, by the doctrine of waiver.

## FOURTH DEFENSE

125.    The Complaint is barred, in whole or in part, by the doctrine of estoppel.

## FIFTH DEFENSE

126.    The Complaint is barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH DEFENSE

127.    The Complaint is barred, in whole or in part, by Plaintiff's failure to exhaust administrative and/or contractual remedies and to perform all conditions precedent.

## SEVENTH DEFENSE

128.    Plaintiff has failed to mitigate any damages it allegedly sustained.

## EIGHTH DEFENSE

129.    No privity of contract exists between Plaintiff and the Defendants.

## NINTH DEFENSE

130.    HUMC did not receive the pre-certification or any other authorization required under the Plan for the inpatient treatment provided to Patient 1 upon and after his admission to the hospital from the emergency room.

## COUNTERCLAIM BY UBF
### (for declaratory and equitable relief under ERISA §502 (a) (3)

In support of is  counterclaim, Defendant UBF repeats and re-alleges the answers in Paragraphs 1 through 86 and the facts alleged in Paragraphs 87 through 120 as if set forth fully herein.

131.    UBF is entitled to a declaratory judgment that:

A) CarePoint's out-of-network for-profit scheme by artificially inflating its medical charges, promising not to balance bill Patient 1's "spouse," and inducing her to keep Patient 1 at HUMC after he was stabilized, is intended to artificially inflate the reimbursement to which it would be entitled to recover from UBF for both emergency and non-emergency care; and causes harm to UBF and its participants;

B) HUMC bears the burden of proof and persuasion that care delivered by it after Patient 1 was admitted to the hospital still constituted emergency care under applicable law; and

C) for purposes of any applicable inputs to the calculation of the Medicare Rate, HUMC is required to reprice its costs for Patient 1's care at the usual and customary rates of hospitals in the vicinity, exclusive of CarePoint hospitals;

D) HUMC failed to obtain necessary pre-approvals for Patient 1's admission and medical treatment after his admission;

E) UBF is entitled to recover the overpayments, as the only HUMC care covered by the Plan was treatment in the emergency room.

## WHEREFORE

Defendants are entitled to relief cumulatively or in the alternative as follows:

1.    Dismissing the Complaint in its entirety against all Defendants;

2.    Ordering Plaintiff to return any payments received from Defendants to the extent that such payments were received for care other than that rendered in HUMC's emergency room;

3.    Declaring that (i) UBF is entitled to a declaratory judgment that HUMC's conduct in artificially inflating its costs and promising not to bill Patient 1's "spouse" constitutes an unlawful scheme to extract money from UBF which it could not otherwise claim under the Plan; and (ii) HUMC must reprice its claims at the usual and customary rates of hospitals in the vicinity exclusive of CarePoint Hospitals before making any claims against UBF; and

4.    Awarding Defendants their reasonable attorneys' fees and costs of this action under 29 U.S.C. § 1132(g)(1).

Dated:        New York, NY
              December 2, 2016

                                        Respectfully submitted,

                                        GORLICK, KRAVITZ &
                                        LISTHAUS, P.C.


                                        By: _____
                                             Barbara S. Mehlsack
                                             Bruce L. Listhaus
                                             17 State Street
                                             New York, NY 10004
                                             (212) 269-2500
                                             bmehlsack@gkllaw.com
                                             blisthaus@gkllaw.com

                                        *Attorneys for Defendants*